ANTHONY J. NAPOLITANO (SBN: 227691)
anapolitano@buchalter.com
BUCHALTER LLP
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

Attorneys for Defendant
RANDALL MILLER

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| In re:<br><br>RANDALL DAVID MILLER,<br><br>Debtor. | Case No. 4:26-bk-40698<br><br>Chapter 7 |
| SANDSTONE GROUP, LLC, a California limited liability company,<br><br>Plaintiff,<br>v.<br><br>RANDALL MILLER, an individual; RAD URBAN INC., a Delaware corporation; ROBERT MILLER, individually and in his capacity as trustee of the 63 Holdings Trust; 63 REALTY HOLDINGS, LLC, a Wyoming limited liability company; ALEXIS MILLER, an individual; R2 BUILDING, LLC, a Delaware limited liability company; R2 BUILDING INC., a Delaware corporation; and DOES 1-20, inclusive,<br>Defendant. | Adv. No. 4:26-ap-04037<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY UNDER 11 U.S.C. §§ 523(a)(2) AND (a)(6), FRAUDULENT TRANSFERS, AND STATE LAW CLAIMS**<br><br>[FED. R. BANKR. P. 7012 and FED. R. CIV. P. 12(b)(6)]<br><br>[Notice and Motion concurrently filed.]<br><br>**Hearing:**<br>Date: November 18, 2026<br>Time: 10:30 a.m. PST<br>Place: United States Bankruptcy Court<br>Courtroom 220<br>1300 Clay Street<br>Oakland, California 94612 |


Case: 26-04037 Doc# 14-1 Filed: 09/14/26 Entered: 09/14/26 19:06:54 Page 1 of 22

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ..... 1

II. JURISDICTION AND VENUE ..... 3

III. FACTS ALLEGED IN THE AMENDED COMPLAINT ..... 3

A. Mr. Miller Enters into a Guaranty for the Benefit of the Plaintiff. ..... 3

B. The Plaintiff's Fraud and Fraudulent Concealment Allegations Against Mr. Miller, RAD Urban and the Non-Debtor Defendants. ..... 3

C. The Amended Complaint Relies on Mr. Miller's Asset Transfers and Unspecified RAD Urban Transfers. ..... 4

IV. LEGAL STANDARD ..... 6

V. ARGUMENT ..... 7

A. A Summary of the Claims Asserted in the Amended Complaint that are the Subject of this Motion. ..... 7

B. The Plaintiff Failed to Plead the Fraud-Based Claims with the Particularity Required by Civil Rule 9(b). ..... 8

1. Pleading "On Information and Belief" and by Supposition Does Not Satisfy Rule 9(b). ..... 9

2. The Amended Complaint Pleads Fraud in Vague and Conclusory Terms. ..... 9

C. The Court Should Dismiss the Fifth Claim (§ 523(a)(2)(A)) Because It Depends on Statements Respecting Financial Condition. ..... 10

D. The Sixth Claim (§ 523(a)(6)) Must Be Dismissed Because the Facts Do Not Plausibly Establish a "Willful and Malicious" Injury. ..... 13

E. The Seventh Through Tenth Claims Fail to Identify a Transfer Supporting Personal Liability or Nondischargeability. ..... 14

F. The State-Law Fraud and Concealment Claims Independently Fail to State a Claim. ..... 15

1. The "Fraud" Claim Is a Breach-of-Guaranty Claim in Tort Clothing. ..... 15

2. The Fraudulent Concealment Claim Fails for Lack of any Duty to Disclose. ..... 15

3. The First Claim (Breach of Guaranty) Cannot Independently Except Any Debt From Discharge. ..... 16

VI. CONCLUSION ..... 17



Case: 26-04037 Doc# 14-1 Filed: 09/14/26 Entered: 09/14/26 19:06:54 Page 2 of 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................ 6, 8, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................ 6

*Boschma v. Home Loan Center, Inc.*,
198 Cal. App. 4th 230 (2011) ............................................................ 16

*Bosse v. Crowell Collier and MacMillan*,
565 F.2d 602 (9th Cir. 1977) ............................................................ 8

*Cowen v. Kennedy (In re Kennedy)*,
108 F.3d 1015 (9th Cir. 1997) ............................................................ 17

*Husky Int'l Elecs., Inc. v. Ritz*,
578 U.S. 355 (2016) ............................................................ 14

*In re Jercich*,
238 F.3d 1202 (9th Cir. 2001) ............................................................ 13

*Kawaauhau v. Geiger*,
523 U.S. 57 (1998) ............................................................ 13, 14

*Kleidman v. Pearlman (In re Pearlman)*,
2026 Bankr. LEXIS 1558 (B.A.P. 9th Cir. June 22, 2026) (Lafferty, J.) ............................ 12

*In re Kubick*,
171 B.R. 658 (B.A.P. 9th Cir. 1994) ............................................................ 8

*Lamar, Archer & Cofrin, LLP v. Appling*,
584 U.S. 709 (2018) ............................................................ 11, 16

*Lazar v. Superior Court*,
12 Cal.4th 631 (1996) ............................................................ 15

*LiMandri v. Judkins*,
52 Cal. App. 4th 326 (1997) ............................................................ 16

*Markus v. Gschwend (In re Markus)*,
313 F.3d 1146 (9th Cir. 2002) ............................................................ 12

*In re Montgomery*,
310 B.R. 169 (Bankr. C.D. Cal. 2004) ............................................................ 6



Case: 26-04037 Doc# 14-1 Filed: 09/14/26 Entered: 09/14/26 19:06:54 Page 3 of 22

*Moore vs. Kayport Package Express, Inc.*,
885 F.2d 531 (9th Cir.1989) ... 8

*Neubronner v Milken*,
6 F.3d 666 (9th Cir. 1993) ... 8, 9

*Rattagan v. Uber Techs., Inc.*,
17 Cal.5th 1 (2024) ... 15

*Sasson v. Sokoloff (In re Sasson)*,
424 F.3d 864 (9th Cir. 2005) ... 17

*Semegen v. Weider*,
780 F.2d 727 (9th Cir.1985) ... 8, 9

*Sprewell v. Golden State Warriors*,
266 F.3d 979, 988 (9th Cir. 2001) ... 6

*In re Su*,
290 F.3d 1140 (9th Cir. 2002) ... 13, 14

*Tenzer v. Superscope, Inc.*,
39 Cal.3d 18 (1985) ... 15

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ... 6

**Statutes**

11 U.S.C. § 101(31)(A)(iv) ... 11

11 U.S.C. § 523 ... 3, 12, 17

11 U.S.C. § 523(a)(2) ... 1, 17

11 U.S.C. § 523(a)(2)(A) ... *passim*

11 U.S.C. § 523(a)(2)(B) ... 2, 10, 11

11 U.S.C. § 523(a)(6) ... *passim*

11 U.S.C. § 523(c)(1) ... 16, 17

11 U.S.C. § 524(a) ... 17

28 U.S.C. § 157(a) ... 3

28 U.S.C. § 157(b)(2)(I) ... 3

28 U.S.C. § 157(b)(2)(A) ... 3



Case: 26-04037 Doc# 14-1 Filed: 09/14/26 Entered: 09/14/26 19:06:54 Page 4 of 22

28 U.S.C. § 157(b)(2)(J) ..... 3
28 U.S.C. § 1409(a) ..... 3
Cal. Civ. Code § 3439.08(b)(1)(A) ..... 12
Cal. Civ. Code § 3439.08(b)(1)(B) ..... 14

**Other Authorities**

Bankruptcy Rule 7015 ..... 12
Civil Rule 15(c) ..... 17
Fed. R. Bankr. P 15(c) ..... 12
Fed. R. Bankr. P. 7009 ..... 6, 8
Fed. R. Bankr. P. 7012 ..... 1
Fed. R. Civ. P. 8 ..... 14
Fed. R. Civ. P. 9(b) ..... *passim*
Fed. R. Civ. P.(a)(2)(A) ..... 11

**TO THE HONORABLE WILLIAM J. LAFFERTY, III, UNITED STATES BANKRUPTCY JUDGE AND ALL INTERESTED PARTIES:**

Randall Miller, debtor in the chapter 7 bankruptcy case and defendant in the above-captioned adversary proceeding (the "Defendant" or "Mr. Miller")[1], by and through his undersigned counsel, respectfully submits this Memorandum of Points and Authorities concurrently filed with his *Motion to Dismiss Per Rule 7012 of the Federal Rules of Bankruptcy Procedure Plaintiff's Adversary Proceeding Complaint* (the "Motion") seeking the dismissal with prejudice of the *First Amended Complaint to Determine Dischargeability of Debt Under 11 U.S.C. §§ 523(a)(2) and (a)(6) and for: (1) Breach of Guaranty; (2) Fraud; (3) Fraudulent Concealment; (4) Aiding and Abetting Fraud; (5) Common Law Fraudulent Transfer; and (6) UVTA Voidable Transfer* [Adv. Docket No. 12] (the "Amended Complaint") filed by Sandstone Group, LLC, the plaintiff in the above captioned adversary proceeding (the "Plaintiff").

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

1. The Amended Complaint alleges three primary wrongs across ten claims for relief: (i) the fraudulent inducement of a March 2019 loan, (ii) transfers of Mr. Miller's assets after that loan matured, and (iii) transfers of RAD Urban's assets through two "R2 Building" entities to either Mr. Miller or his wife, Alexis. Having realized the lack of standing to pursue many of the claims asserted in the original Complaint, the Plaintiff's Amended Complaint attempts to manufacture the requisite standing by recharacterizing the transfers at issue to be transfers "to, rather than by, the Debtor." But, the Plaintiff must plead facts establishing Mr. Miller's liability as a transferee. A label supplies neither an identifiable transfer nor a nondischargeable debt.

2. The gravamen of the Amended Complaint still alleges fraudulent transfers originating by Mr. Miller. While the Plaintiff alleges that RAD Urban was a "transferor," it provides no facts whatsoever related to such transfers. Yet, the Plaintiff does not have standing to pursue these newly added fraudulent transfer claims that form the basis for non-dischargeability in

[1] Throughout this Memorandum of Points & Authorities, debtor Randall Miller shall be referred to as Mr. Miller, and his brother, Robert Miller, shall be referred to as Robert Miller.


Case: 26-04037 Doc# 14-1 Filed: 09/14/26 Entered: 09/14/26 19:06:54 Page 6 of 22

the Ninth and Tenth Claims for Relief. As acknowledged in Footnote 1 of the Amended Complaint, those claims belong to Mr. Miller's Bankruptcy Estate.

3. Further, the allegations in the Amended Complaint still do not meet the particularity requirement for fraud as required under Rule 9(b) of the Federal Rules of Civil Procedure. The Plaintiff neglects to provide the requisite who, what, when, where and how for any fraud-based allegation. Most significantly, the Plaintiff in its newly added Seventh through Tenth Claims for Relief for determination of non-dischargeability with respect to the fraudulent transfers alleged in the Seventh and Eighth Claims for Relief provided no details related to the alleged transfers to illustrate that the transfers were potentially fraudulent. By way of example, paragraph 46 of the Amended Complaint supplies the entire basis for supporting the alleged fraudulent transfers in the Seventh and Eighth Claims for Relief:

> 46. After forming the R2 Entities, Debtor transferred significant assets from RAD Urban to them, and the R2 Entities have in turn transferred funds to Debtor and Alexis Miller. The R2 Building enterprise—which includes both R2 Entities and appears to be a continuation, successor-in-interest, and/or alter ego of RAD Urban—is thus another vehicle through which Debtor has attempted to mulct creditors.

Amended Compl., ¶ 46. This paragraph is devoid of any information related to a potential or alleged transfer of assets by RAD Urban.

4. Finally, the Amended Complaint does not state meritorious claims against Mr. Miller upon which relief can be granted. The Plaintiff's theories based on affirmative statements of financial condition fall outside section 523(a)(2)(A) and must be pursued under section 523(a)(2)(B) with the requirement of providing a writing. The Plaintiff recites intent to injure without facts supporting the subjective injury requirement necessary for a "willful and malicious" claim under section 523(a)(6). The Plaintiff fails to plead actionable fraud beyond the unpaid contractual obligations. As discussed in further detail below, the Plaintiff's claims are deficient and subject to dismissal on the merits. Accordingly, Mr. Miller moves to have the challenged claims against him dismissed with prejudice.


Case: 26-04037 Doc# 14-1 Filed: 09/14/26 Entered: 09/14/26 19:06:54 Page 7 of 22

## II. JURISDICTION AND VENUE

5. The Plaintiff initiated this adversary proceeding asserting various claims for relief against Mr. Miller under section 523 of title 11 of the United States Code (the "Bankruptcy Code"). These section 523 claims involve a core proceeding pursuant 28 U.S.C. § 157(a) and (b)(2)(A), (I), and (J). However, the state-law claims against Mr. Miller are not within this Court's core jurisdiction. At best, these claims are related to Mr. Miller's pending bankruptcy case.

6. Pursuant to 28 U.S.C. § 1409(a), venue for the section 523 claims asserted in this adversary proceeding against Mr. Miller is appropriate as this is the court in which Mr. Miller's bankruptcy case is pending. At this time, Mr. Miller consents to jurisdiction of this Bankruptcy Court as to matters within the Court's core jurisdiction.

## III. FACTS ALLEGED IN THE AMENDED COMPLAINT

### A. Mr. Miller Enters into a Guaranty for the Benefit of the Plaintiff.

7. The Amended Complaint alleges that on March 25, 2019, the Plaintiff and NGI East Bay Portfolio, LLC ("NGI") entered into a $2 million loan memorialized by a promissory note (the "NGI Note"). Amended Compl., ¶ 17 and Exh. A. On March 25, 2019, Mr. Miller and RAD Urban executed a written guaranty (the "Guaranty") of the NGI Note. *Id.*., ¶ 19 and Exh. B.

8. The loan matured on or about March 31, 2020 and NGI filed bankruptcy thereafter, ultimately paying roughly $500,000 on the NGI Note through the bankruptcy. Amended Compl., ¶ 23. As of the date that the Plaintiff commenced this Adversary Proceeding roughly $2.98 million in principal and interest were still owing under the NGI Note. *Id.*, ¶ 24.

9. As a result of NGI's failure to perform under the NGI Note and Mr. Miller's and RAD Urban's alleged failure to perform under the Guaranty, the Plaintiff alleges that Mr. Miller "did not intend to honor his obligations under the Guaranty, nor did he intend that . . . RAD Urban would honor [its] obligations under the . . . Guaranty . . . ." Amended Compl. ¶ 25.

### B. The Plaintiff's Fraud and Fraudulent Concealment Allegations Against Mr. Miller, RAD Urban and the Non-Debtor Defendants.

10. In support of the Plaintiff's theory that Mr. Miller's and RAD Urban's conduct prior to the execution of the Note and Guaranty was fraudulent, the Plaintiff alleges the following:


Case: 26-04037 Doc# 14-1 Filed: 09/14/26 Entered: 09/14/26 19:06:54 Page 8 of 22

a. Mr. Miller intentionally failed to disclose RAD Urban's alleged insolvency and instead represented it was in good financial condition, Amended Compl., ¶ 28;

b. Mr. Miller downplayed NGI's financial position as a "temporary financial squeeze" and represented that Westbrook would lend on matching terms, Amended Compl. ¶ 29;

c. Mr. Miller's other financing transaction with "Westbrook" evidences a lack of intent to perform under the Guaranty, Amended Compl. ¶ 30; and

d. Mr. Miller offered RAD Urban as a guarantor despite his knowledge that RAD Urban was insolvent, Amended Compl., ¶ 32.

11. Based upon these allegations, the Plaintiff alleges the following claims for relief: (1) Breach of Guaranty Agreement against Mr. Miller and RAD Urban; (2) fraud against Mr. Miller and RAD Urban, and (3) fraudulent concealment against Mr. Miller and RAD Urban. *See, e.g.*, Amended Compl., ¶¶ 54 (alleging that Mr. Miller and RAD Urban have failed to perform their obligations under the Guaranty); ¶¶ 60-65 (alleging that pre-execution representations by Mr. Miller and RAD Urban were false and, thus, constitute fraud); ¶¶ 70-73 (tying all fraudulent concealment claims to failure to disclose RAD Urban's financial condition at the time of execution of the NGI Loan and Guaranty).

12. The Amended Complaint also alleges that "Debtor and RAD Urban are liable to Plaintiff for fraud and/or fraudulent concealment[,]" and that the Non-Debtor Defendants "knew that Debtor, RAD Urban, and the R2 Entities were committing fraud and/or fraudulent concealment against Plaintiff." Amended Compl., ¶¶ 78-79 (presumably tying aiding and abetting claims to "fraud and/or fraudulent concealment" claims set forth in the second and third causes of action).

### C. The Amended Complaint Relies on Mr. Miller's Asset Transfers and Unspecified RAD Urban Transfers.

13. The remainder of the amendments focuses on actions that occurred after execution of the Guaranty and, thus, do not relate to the fraud or fraudulent concealment allegations asserted in the Second and Third Claims for Relief, but presumably relate to the new fraudulent transfer claims set forth in the Seventh and Eighth Claims for Relief and *a fortiori* the Ninth and Tenth Claims for Relief seeking to impose non-dischargeability on Mr. Miller for the same transfers.


Case: 26-04037 Doc# 14-1 Filed: 09/14/26 Entered: 09/14/26 19:06:54 Page 9 of 22

14. The Plaintiff's original complaint rightly conceded that claims based on transfers by Mr. Miller belonged to Mr. Miller's bankruptcy estate. *See* Docket No. 1 at p. 10, n. 1. The Plaintiff has now added a Seventh Claim for common law fraudulent transfer and an Eighth Claim under the Uniform Voidable Transactions Act. *See* Amended Compl. ¶¶ 94-113. Those claims are asserted only against RAD Urban, the "R2 Entities," Mr. Miller, his wife, Alexis Miller, and the "Doe" defendants. The Amended Complaint attempts to reconcile these new claims with the estate's exclusive ownership of the Debtor's transfers by adding to Footnote 1 the assertion that "the fraudulent / voidable transfer claims asserted herein are based on . . . transfers . . . to, rather than by, the Debtor." Amended Compl., ¶ 49 n.1.

15. The Amended Complaint continues to describe the original transfers "by the Debtor" that the Plaintiff conceded belonged to the bankruptcy estate. The Plaintiff alleges the following post-execution actions and transfers that the Plaintiff describes as fraudulent transfers:

a. Mr. Miller formed 63 Realty and established the 63 Trust with Robert Miller as trustee "apparently for the purpose of assisting Mr. Miller in obscuring and shielding his assets from [the Plaintiff] and other creditors and furthering its fraudulent scheme," Amended Compl., ¶ 34;

b. After Mr. Miller's alleged default under the Guaranty, Mr. Miller and Alexis Miller transferred their home to the 63 Trust before its subsequent sale, *Id.*, ¶ 35;

c. "On information and belief," Alexis Miller and Mr. Miller received money from the sales of assets and "on information and belief, disburs[ed] funds to affiliated entities and persons[,]" *Id.*, ¶ 36;

d. In 2021, the 63 Trust obtained additional real property, "presumably" with funds provided by Mr. Miller, *Id.*, ¶ 37; and

e. Mr. Miller diverted cash from the Dwight Property to NGI and other entities, including RAD Urban, *Id.*, ¶¶ 38-43.

16. The Plaintiff summarizes these post-execution events as follows:

> In sum and substance, [Mr. Miller] transferred assets out of his own name, including real property and monies. These transfers included [Mr. Miller] and Alexis Miller's transfer of their personal residence to a trust of which [Mr. Miller]'s brother was the trustee, which then sold the residence almost a year later, all with the knowing assistance of Robert Miller and Alexis Miller. [Mr. Miller] also refused to pay his debts in order to extract concessions to which he was not entitled


Case: 26-04037 Doc# 14-1 Filed: 09/14/26 Entered: 09/14/26 19:06:34 Page 10 of 22

> (like a release from the Guaranty, which he never intended to honor). And he threatened to abuse the bankruptcy process to lock in his ill-gotten gains.

Amended Compl., ¶ 48.

17. For the separately alleged RAD Urban transfers, the factual basis supporting the Plaintiff's newly added Seventh Claim for Relief for common law fraudulent transfers and Eighth Claim for Relief for the Uniform Voidable Transactions Act claim rests entirely on one paragraph that vaguely states that "Debtor transferred significant assets from RAD Urban to [the R2 Entities]" who then "transferred funds to Debtor and Alexis Miller." Amended Compl., ¶46.

## IV. LEGAL STANDARD

18. To survive dismissal, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory allegations and "threadbare recitals of the elements of a cause of action" are disregarded. *Iqbal*, 556 U.S. at 678. Exceptions to discharge are construed strictly against the creditor and in favor of the debtor. *In re Montgomery*, 310 B.R. 169, 175 (Bankr. C.D. Cal. 2004) ("Objections to the dischargeability of a debt are to be literally and strictly construed against the objector and liberally construed in favor of the debtor in order to promote the debtor's fresh start."). As discussed in further detail below, a plaintiff must plead fraud with particularity. FED. R. BANKR. P. 7009 (incorporating FED. R. CIV. P. 9(b)).

19. In deciding this Motion, the Court may consider the Note and the Guaranty attached to and forming the basis of the Amended Complaint in addition to the Amended Complaint's own allegations, and the Court need not accept characterizations that the underlying documents or the pleading contradict. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).



Case: 26-04037 Doc# 14-1 Filed: 09/14/26 Entered: 09/14/26 19:06:54 Page 11 of 22

## V. ARGUMENT

### A. A Summary of the Claims Asserted in the Amended Complaint that are the Subject of this Motion.

20. Mr. Miller provides the following chart of the claims asserted in the Amended Complaint to assist the Court in its analysis. The claims for relief applicable to Mr. Miller that are the subject of this Motion are in bold text.

| Claim | Basis | Defendant(s) |
|---|---|---|
| **First** | **Breach of Guaranty** | **Randall Miller (Debtor)**[2]<br>RAD Urban<br>R2 Building LLC<br>R2 Building, Inc. |
| **Second** | **Fraud** | **Randall Miller (Debtor)**<br>RAD Urban<br>R2 Building, LLC<br>R2 Building Inc. |
| **Third** | **Fraudulent Concealment** | **Randall Miller (Debtor)**<br>RAD Urban<br>R2 Building, LLC<br>R2 Building Inc. |
| Fourth | Aiding and Abetting Fraud | 63 Realty Holdings, LLC<br>Alexis Miller<br>Robert Miller, individually<br>Robert Miller, as trustee<br>R2 Building, LLC<br>R2 Building, Inc. |
| **Fifth** | **Section 523(a)(2)(A) for Fraud and Guaranty** | **Randall Miller (Debtor)** |
| **Sixth** | **Section 523(a)(6) for Fraud and Guaranty** | **Randall Miller (Debtor)** |
| **Seventh** | **Common Law Fraudulent Transfer** | **Randall Miller**<br>Alexis Miller<br>RAD Urban<br>R2 Building, LLC<br>R2 Building, Inc.<br>DOES 1 through 20 |

[2] For the avoidance of doubt, this Motion does not seek dismissal of the First Claim for Relief (Breach of Guaranty) as against Mr. Miller. His alleged liability on that claim, if any, arises from his own signature on the Guaranty. Mr. Miller reserves and does not waive any and all defenses to that claim to be raised by responsive pleading in due course. Nothing in this Motion should be construed as an admission of liability under the Guaranty or as a concession that the First Claim is adequately pleaded.


Case: 26-04037 Doc# 14-1 Filed: 09/14/26 Entered: 09/14/26 19:06:54 Page 12 of 22

| Claim | Basis | Defendant(s) |
|---|---|---|
| **Eighth** | **Uniform Voidable Transactions Act Claim** | **Randall Miller (Debtor)**<br>Alexis Miller<br>RAD Urban<br>R2 Building, LLC<br>R2 Building, Inc.<br>DOES 1 through 20 |
| **Ninth** | **Section 523(a)(2)(A) for Fraudulent Transfer** | **Randall Miller (Debtor)** |
| **Tenth** | **Section 523(a)(6) for Fraudulent Transfer** | **Randall Miller (Debtor)** |

### B. The Plaintiff Failed to Plead the Fraud-Based Claims with the Particularity Required by Civil Rule 9(b).

21. As a threshold matter, the Plaintiff failed to plead the fraud-based claims with the requisite particularity. Rule 9(b) of the Federal Rules of Civil Procedure, made applicable to this Adversary Proceeding by Rule 7009 of the Federal Rules of Bankruptcy Procedure provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b); *see also In re Kubick*, 171 B.R. 658, 660 (B.A.P. 9th Cir. 1994) (citing *In re Schwartzman*, 63 B.R. 348, 355 (Bankr. S.D. Ohio 1986)). Rule 9(b) permits intent and knowledge to be alleged generally, but does not excuse conclusory allegations of either. The pleaded facts must still support a plausible inference of the required mental state. *Iqbal*, 556 U.S. at 686-87.

22. Civil Rule 9(b) requires the identification of specific circumstances constituting fraud so the defendant can prepare an adequate answer to the allegations. *See Moore vs. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir.1989). To properly allege fraud with particularity, the "pleader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Semegen v. Weider*, 780 F.2d 727, 731 (9th Cir.1985); *see also Bosse v. Crowell Collier and MacMillan*,565 F.2d 602, 611 (9th Cir. 1977).

23. The "particularity" requirement serves to provide defendants with adequate notice of both the nature and grounds of the claim, to protect defendants from the reputational harm associated with fraud claims, and to prevent the filing of claims merely to discover unknown wrongs. *See Neubronner v Milken*, 6 F.3d 666, 671 (9th Cir. 1993). The fraud allegations must be specific enough to give the defendant notice of the particular misconduct which is alleged to


Case: 26-04037 Doc# 14-1 Filed: 09/14/26 Entered: 09/14/26 19:06:54 Page 13 of 22

constitute the fraud, so that they can defend against the charge and not just deny that they have done anything wrong. *See Semegen*, 780 F.2d at 731; *see Neubronner*, 6 F.3d at 671. Allegations that are vague or conclusory are insufficient to satisfy the "particularity" requirement of Civil Rule 9(b). *See Moore*, 885 F.2d at 540.

24. Throughout its Amended Complaint, the Plaintiff failed to plead with particularity the details of Mr. Miller's and the Non-Debtor Defendants' alleged fraudulent conduct or actions.

*1. Pleading "On Information and Belief" and by Supposition Does Not Satisfy Rule 9(b).*

25. Averments of fraud made on information and belief are insufficient under Rule 9(b) unless the underlying facts are peculiarly within the opposing party's knowledge and the complaint states the facts on which the belief is founded. *Neubronner,* 6 F.3d at 672. The Plaintiff supplies no such foundation and instead invites the Court to infer fraud from supposition.

26. For example, the Amended Complaint's central allegations rest on conjecture and unsupported allegations. For example, the Plaintiff pleads that Mr. Miller formed 63 Realty "apparently for the purpose" of shielding assets. Amended Compl., ¶ 34. The Plaintiff alleges that the 63 Trust acquired property "presumably with the funds provided by Debtor." *Id.* ¶ 37. Similarly, the Plaintiff claimed that the R2 Building enterprise "appears to be" a continuation of RAD Urban. *Id.*, ¶ 46. The Plaintiff further alleges that "[o]n information and belief" Mr. Miller and Alexis Miller received sale proceeds, and "on information and belief, disburs[ed] [such] funds to affiliated entities or persons. *Id.*, ¶ 36.

*2. The Amended Complaint Pleads Fraud in Vague and Conclusory Terms.*

27. Rule 9(b) demands specifics (*i.e.*, who made each representation, to whom, when, and by what means). The Amended Complaint omits essential circumstances. It alleges only that, at some unspecified point during "the negotiation of the NGI Note and Guaranty," Mr. Miller "represented" that RAD Urban "was in good financial condition" and that an unidentified "Westbrook" entity would lend "on the same terms." Amended Compl., ¶¶ 28-29. It never identifies when any statement was made, who at Sandstone received it, whether it was written or

oral, or the actual communication in which the assurance appeared. *Id.* Allegations that are neither particularized nor specific as to the circumstances of the fraud cannot survive.

28. The concealment claim is equally threadbare: the Plaintiff alleges Mr. Miller "concealed" NGI's and RAD Urban's financial condition, Amended Compl. ¶¶ 70-73, but does not identify the particular negotiations or disclosures that allegedly created and breached a duty to disclose.

29. Similarly, the sole factual basis for supporting two fraudulent transfer claims (*i.e.*, Seventh and Eighth Claims for Relief) and *a fortiori* the Ninth and Tenth Claims for relief seeking to impose non-dischargeability on Mr. Miller for the same transfers rely solely on the following paragraph:

> 46. After forming the R2 Entities, Debtor transferred significant assets from RAD Urban to them, and the R2 Entities have in turn transferred funds to Debtor and Alexis Miller. The R2 Building enterprise—which includes both R2 Entities and appears to be a continuation, successor-in-interest, and/or alter ego of RAD Urban—is thus another vehicle through which Debtor has attempted to mulct creditors.

Amended Compl, ¶ 46.

30. This allegation contains no specificity as to what was transferred, when, how, or to whom. The disjunctive framing compounds the defect. R2 Building Inc. and R2 Building, LLC are separately named defendants formed in different years, and an unspecified payment from one of them is not necessarily the proceeds of an unspecified asset once held by RAD Urban. The allegation that "Debtor and/or Alexis Miller" received something, Amended Compl. ¶¶ 98 and 108, thus fails to identify which entity was the alleged first transferee, which individual received anything, or how any outbound payment connects to any inbound RAD Urban asset.

### C. The Court Should Dismiss the Fifth Claim (§ 523(a)(2)(A)) Because It Depends on Statements Respecting Financial Condition.

31. The Fifth Claim for Relief seeking non-dischargeability under section 523(a)(2)(A) should be dismissed with prejudice because its financial-condition statements are excluded and its remaining fraud theories are inadequately pleaded. Section 523(a)(2)(A) excepts from discharge

debts obtained by "false pretenses, a false representation, or actual fraud, ***other than a statement respecting the debtor's or an insider's financial condition***." 11 U.S.C. § 523(a)(2)(A) (emphasis added). The term "insider" includes where the debtor is an individual a "corporation of which the debtor is a director, officer, or person in control." *Id.* § 101(31)(A)(iv).

32. Since financial-condition statements are categorically excluded under section 523(a)(2)(A), such statements are actionable only under section 523(a)(2)(B), which requires that the statement be "in writing." The Supreme Court has held that a statement is one "respecting" financial condition—and thus outside section 523(a)(2)(A)—whenever it "has a direct relation to or impact on the debtor's overall financial status," even a statement about a single asset or liability. *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 720-25 (2018). An oral statement respecting financial condition, therefore, cannot support nondischargeability.

33. The Plaintiff's fraud claims allege precisely the kind of financial-condition statements that section 523(a)(2)(A) excludes. The Plaintiff alleges Mr. Miller concealed that RAD Urban and NGI were insolvent and instead represented that RAD "was in good financial condition." Amended Compl. ¶¶ 27-28, 31 and 85. RAD Urban and NGI are alleged to be Mr. Miller-controlled entities, Amended Compl. ¶¶ 1 and 5, and, therefore, "insiders" under 11 U.S.C. § 101(31)(A)(iv). Representations that an insider is solvent, or "in good financial condition," are prime examples of "statement[s] respecting . . . financial condition." *Appling*, 584 U.S. at 722. Because those statements are actionable only under section 523(a)(2)(B), and then only if in writing, they cannot support the Plaintiff's claims under section 523(a)(2)(A).

34. This deficiency defeats the affirmative financial-condition theory. The Plaintiff failed to plead any claim under section 523(a)(2)(B). The Plaintiff further failed to identify any writing with respect to any of the alleged misrepresentations. Without pleading a qualifying writing under subsection (B), the Plaintiff cannot transpose a financial-condition theory onto subsection (A). *See Appling*, 584 U.S. at 724-25.

35. The only alleged representation that arguably falls outside of the scope of section 523(a)(2)(B) is the claim that "Westbrook" requested and would provide lending "on the same terms." Amended Compl. ¶ 29. This allegation cannot save the claim. Neither the alleged request


Case: 26-04037 Doc# 14-1 Filed: 09/14/26 Entered: 09/14/26 19:06:54 Page 16 of 22

nor the promised parity is tied to a particular communication, recipient, or date. Paragraph 30 invokes "temporal proximity" without identifying the Westbrook transaction's date or facts showing its different terms were settled and known when Mr. Miller spoke. And to the extent the claim rests on Mr. Miller's alleged intent not to perform the Guaranty, that is promissory fraud, which, as detailed below, requires far more than subsequent nonperformance. Stripped of the barred financial-condition allegations, the Fifth Claim states no cognizable section 523(a)(2)(A) theory and should be dismissed.[3]

36. Finally, the Plaintiff's newly added "beneficiary" theory does not lead to a finding that Mr. Miller's debt should be non-dischargeable under section 523(a)(2)(A). *See* Amended Compl., ¶ 89. Paragraph 89 alleges that Mr. Miller is liable under California Civil Code § 3439.08(b)(1)(A) as "the person for whose benefit" transfers of his *own* property were made, and seeks to render that debt nondischargeable. But a claim to recover transfers made *by* the Debtor for his benefit is precisely the estate-owned avoidance claim the Plaintiff conceded belongs to the Chapter 7 Trustee. *See* Amended Compl. ¶ 49 n.1; *see also Kleidman v. Pearlman (In re Pearlman)*, 2026 Bankr. LEXIS 1558, at *13-14 (B.A.P. 9th Cir. June 22, 2026) (Lafferty, J.) (stating that "the underlying liability in a fraudulent transfer case is the debtor's," and such claims "became property of the estate"). The Plaintiff cannot simultaneously plead that these are transfers "to, rather than by, the Debtor" (footnote 1) and that Mr. Miller is liable as the beneficiary of transfers he made *of his own assets* (Amended Comp., ¶ 89). Paragraph 89 identifies no specific transfer, benefit, or resulting debt, and to the extent it states anything, it states an estate claim the Plaintiff lacks standing to prosecute and does not automatically impose non-dischargeability on Mr. Miller by virtue of section 523(a)(2)(A).

---

[3] If the Plaintiff seeks leave to amend to add a new section 523 claim any such amendment is untimely unless it relates back under Rule 15(c) (incorporated by Bankruptcy Rule 7015), which requires that the new claim arise from the same conduct, transaction, or occurrence set out in the original pleading. *Markus v. Gschwend (In re Markus)*, 313 F.3d 1146, 1150 (9th Cir. 2002).



Case: 26-04037 Doc# 14-1 Filed: 09/14/26 Entered: 09/14/26 19:06:34 Page 17 of 22

### D. The Sixth Claim (§ 523(a)(6)) Must Be Dismissed Because the Facts Do Not Plausibly Establish a "Willful and Malicious" Injury.

37. The Sixth Claim for Relief should be dismissed because the Plaintiff recites intent to injure without facts supporting the subjective injury requirement necessary to satisfy the "willful and malicious" injury standard under section 523(a)(6). Section 523(a)(6) excepts debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." The Supreme Court has held that "willful" modifies "injury," requiring "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). In the Ninth Circuit, the creditor must show the debtor had a subjective motive to inflict the injury, or believed injury was substantially certain to occur; and "malicious" requires a wrongful act, done intentionally, that necessarily causes injury, without just cause or excuse. *In re Su*, 290 F.3d 1140, 1145 (9th Cir. 2002); *In re Jercich*, 238 F.3d 1202, 1208-09 (9th Cir. 2001).

38. The Sixth Claim does not allege such an injury. It merely re-pleads the fraudulent-inducement allegations and appends the conclusion that Mr. Miller acted "with substantial certainty that it would result in financial harm" and "with the intent to cause such harm." Amended Compl. ¶¶ 91-92. That is precisely the kind of "threadbare recital" that *Iqbal* instructs the Court to disregard. The pleading does not explain how the alleged lending terms or later collection disputes establish Mr. Miller's subjective intent to cause loss when the loan was obtained. Paragraph 91 substitutes a conclusion about injury for facts supporting that inference.

39. Moreover, an intentional breach of contract, without more, does not give rise to liability under section 523(a)(6). Under this subsection, the alleged breach must be tortious and accompanied by an intent to injure. *Jercich*, 238 F.3d at 1206. Nonpayment of a guaranty supplies neither element. The Plaintiff must plead facts supporting both an actionable tort and the Plaintiff alleges no injury to its person or property distinct from nonpayment. The Plaintiff cannot cloak a contract claim in fraud in order to deny discharge under section 523(a)(6).


Case: 26-04037 Doc# 14-1 Filed: 09/14/26 Entered: 09/14/26 19:06:34 Page 18 of 22

### E. The Seventh Through Tenth Claims Fail to Identify a Transfer Supporting Personal Liability or Nondischargeability.

40. The Ninth and Tenth Claims seek to except from discharge a "debt" arising from the alleged RAD Urban to R2 transfers. Both fail for the same threshold reason: the Amended Complaint never identifies the transfer or the debt on which they depend. While actual fraud under section 523(a)(2)(A) can, in a proper case, reach a fraudulent-transfer scheme even absent a misrepresentation, the Supreme Court did not dispense with the requirement of an underlying debt. *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 360-66 (2016). It remanded to allow the Fifth Circuit to decide whether the debt to Husky was "obtained by" the Debtor's asset-transfer scheme. *Id.* at 365 n. 3.

41. Here, the sole factual predicate is paragraph 46, which as shown above identifies no asset, no date, no amount, no consideration, and no first transferee, and is supplemented only by the assertion that "Debtor and/or Alexis Miller" received something. Amended Compl. ¶¶ 98 and 108. Without an identified transfer and facts establishing subsequent-transferee liability making Mr. Miller personally liable for the transferred value, there is no "debt . . . for money . . . obtained by . . . actual fraud" to except from discharge, and the Ninth Claim must be dismissed.

42. The Seventh and Eighth Claims independently fail to plead Mr. Miller's liability for an avoidable transfer. Section 3439.08(b)(1)(B) requires a factual basis connecting him to the first transferee's transfer. The FAC names the R2 Entities but identifies no transaction tracing RAD Urban assets or proceeds to Mr. Miller. Even under Rule 8, conclusions about inadequate consideration and insolvency do not supply that connection. Amended Compl. ¶¶ 96 to 101, 106 to 111. These state-law defects also leave the Ninth Claim without a pleaded underlying transfer debt; constructive avoidability alone cannot establish actual fraud under Husky.

43. The Tenth Claim fails for the same reason and for an additional one. As set forth above with respect to the Sixth Claim, section 523(a)(6) requires a deliberate or intentional injury, not merely an intentional act. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *In re Su*, 290 F.3d 1140, 1145 (9th Cir. 2002). An allegation that RAD Urban transferred assets for inadequate value while insolvent does not establish that Mr. Miller acted with the subjective intent to injure the


Case: 26-04037 Doc# 14-1 Filed: 09/14/26 Entered: 09/14/26 19:06:34 Page 19 of 22

Plaintiff. Paragraphs 118 to 119 add intent labels but identify no receipt or conduct supporting the inference that Mr. Miller intended injury to Plaintiff or believed it substantially certain. Avoidability alone does not establish willful and malicious injury. The Tenth Claim should be dismissed.

### F. The State-Law Fraud and Concealment Claims Independently Fail to State a Claim.

#### *1. The "Fraud" Claim Is a Breach-of-Guaranty Claim in Tort Clothing.*

44. Under California law, "something more than nonperformance is required to prove the defendant's intent not to perform his promise." *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 30 (1985); *accord Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996). The Plaintiff relies on nonpayment, later asset movements, and the Westbrook transaction to infer an intent not to perform in March 2019. Amended Compl. ¶¶ 25to 32 and 34 to 49. But later collection disputes do not themselves establish intent at execution, and paragraph 30 supplies no transaction dates or contemporaneous facts connecting Westbrook's eventual terms to a preconceived refusal to honor the Guaranty.

45. The Plaintiff must plead an independent fraud, not infer one merely from the unpaid contractual balance. *See Rattagan v. Uber Techs., Inc.*, 17 Cal.5th 1 (2024); Lazar, 12 Cal.4th at 638. The alleged Westbrook misrepresentation remains deficient under Rule 9(b), and the promissory-fraud theory lacks sufficient facts supporting intent not to perform when the promise was made.

#### *2. The Fraudulent Concealment Claim Fails for Lack of any Duty to Disclose.*

46. The Amended Complaint fails to state a claim for fraudulent concealment. The elements of concealment are:

> (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage."


Case: 26-04037 Doc# 14-1 Filed: 09/14/26 Entered: 09/14/26 19:06:54 Page 20 of 22

*Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 248 (2011).

47. As previously noted, a concealment claim, like any fraud claim, must be pleaded with particularity, including the circumstances giving rise to disclosure, the material facts withheld, and reliance on their omission. *See* Part V.B., *supra*. The Amended Complaint satisfies neither the duty element nor the particularity requirement.

48. A duty to disclose arises only where the defendant (1) is in a fiduciary relationship with the plaintiff; (2) has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) actively conceals a material fact; or (4) makes partial representations while suppressing other material facts. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336-37 (1997). Mr. Miller does not dispute that the Guaranty establishes a contractual relationship. But a contractual relationship does not itself create a duty to disclose.

49. The Plaintiff must still plead facts satisfying one of the *LiMandri* categories. Yet, the Plaintiff alleges no fiduciary relationship. The Amended Complaint describes an arm's-length commercial loan between sophisticated parties. Paragraphs 28 and 72 recite exclusive knowledge and inability to discover, but supply no facts explaining why the financial information was inaccessible to Plaintiff. Paragraph 29 acknowledges disclosed financial distress. The pleading does not explain what further disclosure was required by the particular communications or identify those communications with specificity. Its partial-representation theory depends on the same inadequately particularized assurances challenged above.

50. For purposes of the Fifth Claim, the Plaintiff cannot avoid *Appling* by relabeling the same alleged assurance of solvency as concealment of its falsity. Amended Compl. ¶ 28. It must identify an independently actionable omission and the circumstances creating a duty to disclose it. The deficiencies identified above leave no adequately pleaded omission theory to sustain either the Third Claim or the Fifth Claim's incorporation of it. *See* Part V.C., *supra.*

*3. The First Claim (Breach of Guaranty) Cannot Independently Except Any Debt From Discharge.*

51. While Mr. Miller does not seek dismissal of the First Claim by this Motion, that claim cannot serve as a freestanding exception to discharge. Section 523(c)(1) provides that a debt


Case: 26-04037 Doc# 14-1 Filed: 09/14/26 Entered: 09/14/26 19:06:54 Page 21 of 22

of the kind described in section 523(a)(2) or (a)(6) is discharged unless the Court determines that it is excepted. The Court may, in connection with determining dischargeability, liquidate the amount of the alleged Guaranty debt. *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1017-18 (9th Cir. 1997); *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 868-70 (9th Cir. 2005). But unless the Plaintiff obtains a judgment excepting the Guaranty debt from discharge under section 523, the First Claim cannot support enforcement of any personal liability against Mr. Miller. *See* 11 U.S.C. §§ 523(c)(1), 524(a).

## VI. CONCLUSION

52. For the foregoing reasons, Mr. Miller respectfully requests that the Court dismiss with prejudice the Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Claims for Relief as asserted against him, and grant such other and further relief as the Court deems just and proper.

53. If leave is granted on other theories, any amendment should identify the specific actionable communication or transfer, Mr. Miller's resulting liability, and facts supporting the applicable mental state. Mr. Miller preserves his Civil Rule 15(c) objection to untimely new nondischargeability claims that do not relate back.

DATED: September 14, 2026

BUCHALTER LLP

By: /s/ *Anthony J. Napolitano*
ANTHONY J. NAPOLITANO

Attorneys for Defendant
RANDALL MILLER



Case: 26-04037 Doc# 14-1 Filed: 09/14/26 Entered: 09/14/26 19:06:34 Page 22 of 22