ANTHONY J. NAPOLITANO (SBN: 227691)
anapolitano@buchalter.com
BUCHALTER LLP
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

Attorneys for Non-Debtor Defendants
ROBERT MILLER, individually and as trustee,
ALEXIS MILLER, RAD URBAN, INC. and
63 REALTY HOLDINGS, LLC

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| In re:<br><br>RANDALL DAVID MILLER,<br><br>Debtor. | Case No. 4:26-bk-40698<br><br>Chapter 7 |
| SANDSTONE GROUP, LLC, a California limited liability company,<br><br>Plaintiff,<br>v.<br><br>RANDALL MILLER, an individual; RAD URBAN INC., a Delaware corporation; ROBERT MILLER, individually and in his capacity as trustee of the 63 Holdings Trust; 63 REALTY HOLDINGS, LLC, a Wyoming limited liability company; ALEXIS MILLER, an individual; R2 BUILDING, LLC, a Delaware limited liability company; R2 BUILDING INC., a Delaware corporation; and DOES 1-20, inclusive,<br><br>Defendants. | Adv. No. 4:26-ap-04037<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CERTAIN NON-DEBTOR DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY UNDER 11 U.S.C. §§ 523(a)(2) AND (a)(6), FRAUDULENT TRANSFERS, AND STATE LAW CLAIMS**<br><br>[FED. R. BANKR. P. 7012 and FED. R. CIV. P. 12(b)(6)]<br><br>[Notice and Motion concurrently filed.]<br><br>**Hearing:**<br>Date: November 18, 2026<br>Time: 10:30 a.m. PST<br>Place: United States Bankruptcy Court<br>Courtroom 220<br>1300 Clay Street<br>Oakland, California 94612 |

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 1

II. JURISDICTION AND VENUE .......... 3

III. FACTS ALLEGED IN THE AMENDED COMPLAINT .......... 3

A. Mr. Miller Enters into a Guaranty for the Benefit of the Plaintiff. .......... 3

B. The Plaintiff's Fraud and Fraudulent Concealment Allegations Against Mr. Miller, RAD Urban and the Non-Debtor Defendants .......... 4

C. The Amended Complaint Relies on Mr. Miller's Asset Transfers and Unspecified RAD Urban Transfers. .......... 5

IV. LEGAL STANDARD .......... 6

V. LEGAL ARGUMENT .......... 7

A. A Summary of the Claims Asserted in the Amended Complaint and the Corresponding Defendants that are the Subject of this Motion .......... 7

B. The Plaintiff Failed to Plead the Fraud-Based Claims with the Particularity Required by Civil Rule 9(b) .......... 8

1. Pleading "On Information and Belief" and by Supposition Does Not Satisfy Rule 9(b). .......... 9

2. The Amended Complaint Impermissibly Lumps the Non-Debtor Defendants Together. .......... 9

3. The Amended Complaint Pleads Fraud in Vague and Conclusory Terms. .......... 10

C. The Plaintiff Lacks Standing to Bring the Estate-Owned Aiding and Abetting Claims. .......... 11

1. The Aiding and Abetting Claim Against Robert Miller, 63 Realty, and Alexis Miller Belongs to the Bankruptcy Estate. .......... 11

2. The Plaintiff's Remaining Claims Reach, at Most, Only RAD Urban. .......... 13

D. The Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted. .......... 13

1. The "Fraud" Claims are Breach of Contract Claims in Tort Clothing. .......... 14

2. The Fraudulent Concealment Claim Independently Fails for Want of a Duty to Disclose. .......... 14





Case: 26-04037 Doc# 18-1 Filed: 09/14/26 Entered: 09/14/26 23:46:18 Page 2 of 25

3. The Aiding and Abetting Claim Fails on Its Own Terms................ 15

4. Even If the Court Reaches Them, the Seventh and Eighth Claims Fail to State a Claim........................................................................ 16

5. The Doe Defendants Should Be Dismissed Because Doe Pleading Has No Place in Federal Court. ....................................... 18

VI. CONCLUSION ........................................................................................... 18



Case: 26-04037 Doc# 18-1 Filed: 09/14/26 Entered: 09/14/26 23:46:18 Page 3 of 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ahcom, Ltd. v. Smeding*,
623 F.3d 1248 (9th Cir. 2010)....................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6, 14, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................6, 14

*Bosse v. Crowell Collier and MacMillan*,
565 F.2d 602 (9th Cir. 1977)....................8

*Halloum v. Ryder (In re Halloum)*,
2015 Bankr. LEXIS 2894 (Bankr. E.D. Cal. Aug. 27, 2015)....................18

*Kleidman v. Pearlman (In re Pearlman)*,
2026 Bankr. LEXIS 1558 (B.A.P. 9th Cir. June 22, 2026)....................12

*In re Kubick*,
171 B.R. 658 (B.A.P. 9th Cir. 1994)....................8

*In re Montgomery*,
310 B.R. 169 (Bankr. C.D. Cal. 2004)....................6

*Munden v. Brown*,
2021 U.S. Dist. LEXIS 9457 (S.D. Ind. Jan. 19, 2021)....................18

*Neubronner v Milken*,
6 F.3d 666 (9th Cir. 1993)....................8, 9

*Semegen v. Weider*,
780 F.2d 727 (9th Cir.1985)....................8, 16

*Estate of Spirtos v. One San Bernardino Cnty. Superior Court Case*,
443 F.3d 1172 (9th Cir. 2006)....................11

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007)....................9



Case: 26-04057 Doc# 18-1 Filed: 09/14/26 Entered: 09/14/26 23:46:18 Page 4 of 25

**State Cases**

*Casey v. U.S. Bank Nat'l Ass'n*,
127 Cal.App.4th 1138 (Cal. App. 4th Dist. 2005) .................... 15

*Lazar v. Superior Court*,
12 Cal.4th 631 (1996) .................... 14

*LiMandri v. Judkins*,
52 Cal.App.4th 326 (Cal. App. 4th Dist. 1997) .................... 14

*More vs. Kayport Package Express, Inc.*,
885 F.2d 531 (9th Cir.1989) .................... 8, 9

*Rattagan v. Uber Techs., Inc.*,
17 Cal.5th 1 (2024) .................... 14

*Tenzer v. Superscope, Inc.*,
39 Cal.3d 18 (1985) .................... 14

**Federal Statutes**

11 U.S.C.
§ 523 .................... 3
§ 523(a) .................... 8
§ 541(a) .................... 11
§ 544 .................... 11
§ 548 .................... 11

28 U.S.C.
§ 157 .................... 3
§ 1409(a) .................... 3

**State Statutes**

Cal. Civ. Code
§ 3439.04(a)(2) .................... 17
§ 3439.05(a) .................... 17
§ 3439.08(b) .................... 16
§ 3439.08(b)(1)(B) .................... 17
§ 3439.08(f)(3) .................... 17


Case: 26-04037 Doc# 18-1 Filed: 09/14/26 Entered: 09/14/26 23:46:18 Page 5 of 25

**Rules**

Fed. R. Bankr. P.
7009 ........ 6, 8, 16
7012(b) ........ 13
7015 ........ 18

Fed. R. Civ. P.
8 ........ 17
9(b) ........ *passim*
15 ........ 18

**TO THE HONORABLE WILLIAM J. LAFFERTY, III, UNITED STATES BANKRUPTCY JUDGE AND ALL INTERESTED PARTIES:**

Non-debtor defendants RAD Urban Inc., a Delaware corporation ("RAD Urban"), Robert Miller, individually and in his capacity as trustee of the 63 Holdings Trust ("Robert Miller")[1], 63 Realty Holdings, LLC ("63 Realty"), a Wyoming limited liability company, and Alexis Miller, an individual (collectively, "Non-Debtor Defendants")[2], by and through their undersigned counsel, respectfully submit this Memorandum of Points and Authorities in support of their concurrently filed *Motion to Dismiss Per Rule 7012 of the Federal Rules of Bankruptcy Procedure Plaintiff's First Amended Complaint* (the "Motion") seeking the dismissal with prejudice of the *First Amended Complaint to Determine Dischargeability of Debt Under 11 U.S.C. §§ 523(a)(2) and (a)(6) and for: (1) Breach of Guaranty; (2) Fraud; (3) Fraudulent Concealment; (4) Aiding and Abetting Fraud; (5) Common Law Fraudulent Transfer; and (6) UVTA Voidable Transfer* [Adv. Docket No. 12] (the "Amended Complaint") filed by Sandstone Group, LLC, the plaintiff in the above captioned adversary proceeding (the "Plaintiff").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

1. The Amended Complaint alleges three primary wrongs across ten claims for relief: (i) the fraudulent inducement of a March 2019 loan, (ii) transfers of Mr. Miller's assets after that loan matured, and (iii) transfers of RAD Urban's assets through two "R2 Building" entities to either Mr. Miller or his wife, Alexis. Having realized the lack of standing to pursue many of the claims asserted in the original Complaint, the Plaintiff's Amended Complaint attempts to manufacture the requisite standing by recharacterizing the transfers at issue to be transfers "to, rather than by, the Debtor." Changing a label does not change the underlying facts.

2. The gravamen of the Amended Complaint still alleges fraudulent transfers originating by Mr. Miller. While the Plaintiff alleges that RAD Urban was a "transferor," it

[1] Throughout this Memorandum of Points & Authorities, debtor Randall Miller shall be referred to as Mr. Miller, and his brother, Robert Miller, shall be referred to as Robert Miller.

[2] For the avoidance of doubt, the term "Non-debtor Defendants" does not include R2 Building, LLC, R2 Building, Inc., or Does 1-20.


Case: 26-04037 Doc# 18-1 Filed: 09/14/26 Entered: 09/14/26 23:46:18 Page 7 of 25

provides no facts whatsoever related to such transfers. Accordingly, the Plaintiff does not have standing to pursue these newly added fraudulent transfer claims in Seventh and Eighth Claim for Relief. Nor does the Plaintiff have the requisite standing to pursue the aiding and abetting claims that expressly relate to the alleged fraudulent transfers made by Mr. Miller. As acknowledged in Footnote 1 of the Amended Complaint, the personal-transfer claims belong to Mr. Miller's Bankruptcy Estate. Insofar as the Fourth Claim seeks recovery for those transfers, the Plaintiff now seeks to reach those same estate assets indirectly through his wife, Alexis Miller, by recasting an estate-owned fraudulent transfer claim as a an aiding and abetting against her, a maneuver that neither cures the standing defect nor removes the claim from the estate.

3. Further, the allegations in the Amended Complaint still do not meet the particularity requirement for fraud as required under Rule 9(b) of the Federal Rules of Civil Procedure. The Plaintiff neglects to provide the requisite who, what, when, where and how for any fraud-based allegation. Most significantly, the Plaintiff in its newly added Seventh and Eighth Claims for Relief for fraudulent transfer provided no details related to the alleged transfers to illustrate that the transfers were potentially fraudulent. Paragraph 46 supplies the central transfer allegation, but neither that paragraph nor the claim-specific allegations identify the transactions necessary to support the Seventh and Eighth Claims for Relief (for fraudulent transfers):

> 46. After forming the R2 Entities, Debtor transferred significant assets from RAD Urban to them, and the R2 Entities have in turn transferred funds to Debtor and Alexis Miller. The R2 Building enterprise—which includes both R2 Entities and appears to be a continuation, successor-in-interest, and/or alter ego of RAD Urban—is thus another vehicle through which Debtor has attempted to mulct creditors.

Amended Compl., ¶ 46. This paragraph is devoid of any information related to a potential or alleged transfer of assets by RAD Urban.

4. Finally, the Amended Complaint does not state claims against the Non-Debtor Defendants upon which relief can be granted. The Plaintiff's "fraud" claims are nothing more than breach of contract claims masquerading as torts. Other than RAD Urban, none of the other Non-Debtor Defendants were a party to the contract and guaranty at issue here. The aiding and abetting claims all detail actions regarding the post-contract-execution transfer of assets—claims reserved


Case: 26-04037 Doc# 18-1 Filed: 09/14/26 Entered: 09/14/26 23:46:18 Page 8 of 25

to the estate insofar as they seek recovery for Miller's personal asset transfres, and not the alleged misrepresentations on which the Plaintiff bases its Amended Complaint. The Plaintiff's claims are deficient and subject to dismissal on the merits. The Non-Debtor Defendants accordingly move to have all claims against them dismissed with prejudice.

## II. JURISDICTION AND VENUE

5. The Plaintiff initiated this adversary proceeding asserting various claims for relief against Mr. Miller under section 523 of title 11 of the United States Code (the "Bankruptcy Code"). These section 523 claims involve a core proceeding pursuant 28 U.S.C. § 157(a) and (b)(2)(A), (I), and (J). However, the state-law claims against the Non-Debtor Defendants are not within this Court's core jurisdiction. At best, these claims are related to Mr. Miller's pending bankruptcy case.

6. Pursuant to 28 U.S.C. § 1409(a), venue for the section 523 claims asserted in this adversary proceeding against Mr. Miller is appropriate as this is the court in which Mr. Miller's bankruptcy case is pending. At this time, the Non-Debtor Defendants consent to jurisdiction of this Bankruptcy Court as to matters within the Court's core jurisdiction.

## III. FACTS ALLEGED IN THE AMENDED COMPLAINT

### A. Mr. Miller Enters into a Guaranty for the Benefit of the Plaintiff.

7. The Amended Complaint alleges that on March 25, 2019, the Plaintiff and NGI East Bay Portfolio, LLC ("NGI") entered into a $2 million loan memorialized by a promissory note (the "NGI Note"). Amended Compl., ¶ 17 and Exh. A. On March 25, 2019, Mr. Miller and RAD Urban executed a written guaranty (the "Guaranty") of the NGI Note. *Id.*., ¶ 19 and Exh. B.

8. The loan matured on or about March 31, 2020 and NGI filed bankruptcy thereafter, ultimately paying roughly $500,000 on the NGI Note through the bankruptcy. Amended Compl., ¶ 23. As of the date that the Plaintiff commenced this Adversary Proceeding, the Plaintiff alleges roughly $2.98 million in principal and interest were still owing under the NGI Note. *Id.*, ¶ 24.

9. As a result of NGI's failure to perform under the NGI Note and Mr. Miller's and RAD Urban's alleged failure to perform under the Guaranty, the Plaintiff alleges that Mr. Miller "did not intend to honor his obligations under the Guaranty, nor did he intend that . . . RAD Urban would honor [its] obligations under the . . . Guaranty . . . ." Amended Compl. ¶ 25.

### B. The Plaintiff's Fraud and Fraudulent Concealment Allegations Against Mr. Miller, RAD Urban and the Non-Debtor Defendants.

10. In support of the Plaintiff's theory that Mr. Miller's and RAD Urban's conduct prior to the execution of the Note and Guaranty was fraudulent, the Plaintiff alleges the following:

a. Mr. Miller intentionally failed to disclose RAD Urban's alleged insolvency and instead represented it was in good financial condition, Amended Compl., ¶ 28;

b. Mr. Miller downplayed NGI's financial position as a "temporary financial squeeze" and represented that Westbrook would lend on matching terms, Amended Compl. ¶ 29;

c. Mr. Miller's other financing transaction with "Westbrook" evidences a lack of intent to perform under the Guaranty, Amended Compl. ¶ 30; and

d. Mr. Miller offered RAD Urban as a guarantor despite his knowledge that RAD Urban was insolvent, Amended Compl., ¶ 32.

11. Based upon these allegations, the Plaintiff alleges the following claims for relief: (1) Breach of Guaranty Agreement against Mr. Miller and RAD Urban; (2) fraud against Mr. Miller and RAD Urban, and (3) fraudulent concealment against Mr. Miller and RAD Urban. *See, e.g.*, Amended Compl., ¶¶ 54 (alleging that Mr. Miller and RAD Urban have failed to perform their obligations under the Guaranty); ¶¶ 60-65 (alleging that pre-execution representations by Mr. Miller and RAD Urban were false and, thus, constitute fraud); ¶¶ 70-73 (tying all fraudulent concealment claims to failure to disclose RAD Urban's financial condition at the time of execution of the NGI Loan and Guaranty).

12. The Amended Complaint also alleges that "Debtor and RAD Urban are liable to Plaintiff for fraud and/or fraudulent concealment[,]" and that the Non-Debtor Defendants "knew that Debtor, RAD Urban, and the R2 Entities were committing fraud and/or fraudulent concealment against Plaintiff." Amended Compl., ¶¶ 78-79 (presumably tying aiding and abetting claims to "fraud and/or fraudulent concealment" claims set forth in the second and third causes of action).


Case: 26-04037 Doc# 18-1 Filed: 09/14/26 Entered: 09/14/26 23:46:18 Page 10 of 25

### C. The Amended Complaint Relies on Mr. Miller's Asset Transfers and Unspecified RAD Urban Transfers.

13. The remainder of the amendments focuses on actions that occurred after execution of the Guaranty and, thus, do not relate to the fraud or fraudulent concealment allegations asserted in the Second and Third Claims for Relief, but presumably relate to the new fraudulent transfer claims set forth in the Seventh and Eighth Claims for Relief.

14. The Plaintiff's original complaint rightly conceded that claims based on transfers by Mr. Miller belonged to Mr. Miller's bankruptcy estate. *See* Docket No. 1 at p. 10, n. 1. The Plaintiff has now added a Seventh Claim for common law fraudulent transfer and an Eighth Claim under the Uniform Voidable Transactions Act. *See* Amended Compl. ¶¶ 94-113. Those claims are asserted only against RAD Urban, the "R2 Entities," Mr. Miller, his wife, Alexis Miller, and the "Doe" defendants. The Amended Complaint attempts to reconcile these new claims with the estate's exclusive ownership of the Debtor's transfers by adding to Footnote 1 the assertion that "the fraudulent / voidable transfer claims asserted herein are based on . . . transfers . . . to, rather than by, the Debtor." Amended Compl., ¶ 49 n.1.

15. The Amended Complaint continues to describe the original transfers "by the Debtor" that the Plaintiff conceded belonged to the bankruptcy estate. The Plaintiff alleges the following post-execution actions and transfers that the Plaintiff describes as fraudulent transfers:

a. Mr. Miller formed 63 Realty and established the 63 Trust with Robert Miller as trustee "apparently for the purpose of assisting Mr. Miller in obscuring and shielding his assets from [the Plaintiff] and other creditors and furthering its fraudulent scheme," Amended Compl., ¶ 34;

b. After Mr. Miller's alleged default under the Guaranty, Mr. Miller and Alexis Miller transferred their home to the 63 Trust before its subsequent sale, *Id.*, ¶ 35;

c. "On information and belief," Alexis Miller and Mr. Miller received money from the sales of assets and "on information and belief, disburs[ed] funds to affiliated entities and persons[,]" *Id.*, ¶ 36;

d. In 2021, the 63 Trust obtained additional real property, "presumably" with funds provided by Mr. Miller, *Id.*, ¶ 37; and

e. Mr. Miller diverted cash from the Dwight Property to NGI and other entities, including RAD Urban, *Id.*, ¶¶ 38-43.

16. The Plaintiff summarizes these post-execution events as follows:

> In sum and substance, [Mr. Miller] transferred assets out of his own name, including real property and monies. These transfers included [Mr. Miller] and Alexis Miller's transfer of their personal residence to a trust of which [Mr. Miller]'s brother was the trustee, which then sold the residence almost a year later, all with the knowing assistance of Robert Miller and Alexis Miller. [Mr. Miller] also refused to pay his debts in order to extract concessions to which he was not entitled (like a release from the Guaranty, which he never intended to honor). And he threatened to abuse the bankruptcy process to lock in his ill-gotten gains.

Amended Compl., ¶ 48.

17. Independently, the Plaintiff's newly added Seventh and Eighth Claims rely on Paragraph 46's allegation that "Debtor transferred significant assets from RAD Urban to [the R2 Entities]" who then "transferred funds to Debtor and Alexis Miller." Neither that paragraph nor the count-specific allegations identify the transactions necessary to support relief against these moving defendants. Amended Compl., ¶¶ 46, and 94 to 113.

## IV. LEGAL STANDARD

18. To survive dismissal, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory allegations and "threadbare recitals of the elements of a cause of action" are disregarded. *Iqbal*, 556 U.S. at 678. Exceptions to discharge are construed strictly against the creditor and in favor of the debtor. *In re Montgomery*, 310 B.R. 169, 175 (Bankr. C.D. Cal. 2004) ("Objections to the dischargeability of a debt are to be literally and strictly construed against the objector and liberally construed in favor of the debtor in order to promote the debtor's fresh start."). As discussed in further detail below, a plaintiff must plead fraud with particularity. FED. R. BANKR. P. 7009 (incorporating FED. R. CIV. P. 9(b)).

## V. LEGAL ARGUMENT

### A. A Summary of the Claims Asserted in the Amended Complaint and the Corresponding Defendants that are the Subject of this Motion.

19. The Non-Debtor Defendants provide the following chart of the claims asserted in the Amended Complaint to assist the Court in its analysis. The claims for relief and the applicable Non-Debtor Defendants that are the subject of this Motion are in bold text.

| Claim | Basis | Defendant(s) |
|---|---|---|
| **First** | **Breach of Guaranty** | Randall Miller (Debtor)<br>**RAD Urban**[3]<br>R2 Building LLC<br>R2 Building, Inc. |
| **Second** | **Fraud** | Randall Miller (Debtor)<br>**RAD Urban**<br>R2 Building, LLC<br>R2 Building Inc. |
| **Third** | **Fraudulent Concealment** | Randall Miller (Debtor)<br>**RAD Urban**<br>R2 Building, LLC<br>R2 Building Inc. |
| **Fourth** | **Aiding and Abetting Fraud** | **63 Realty Holdings, Inc.**<br>**Alexis Miller**<br>**Robert Miller, individually**<br>**Robert Miller, as trustee**<br>R2 Building, LLC<br>R2 Building, Inc. |
| Fifth | Section 523(a)(2)(A) for Fraud and Guaranty | Randall Miller (Debtor) |
| Sixth | Section 523(a)(6) for Fraud and Guaranty | Randall Miller (Debtor) |
| **Seventh** | **Common Law Fraudulent Transfer** | Randall Miller<br>**Alexis Miller**<br>**RAD Urban**<br>R2 Building, LLC<br>R2 Building, Inc.<br>**DOES 1 through 20** |

[3] For the avoidance of doubt, this Motion does not seek dismissal of the First Claim for Relief (Breach of Guaranty) as against RAD Urban. RAD Urban's alleged liability on that claim, if any, arises from its own signature on the Guaranty and is separate from the debtor's liability. RAD Urban reserves and does not waive any and all defenses to that claim to be raised by responsive pleading in due course. Nothing in this Motion should be construed as an admission of liability under the Guaranty or as a concession that the First Claim is adequately pleaded.


Case: 26-04037 Doc# 18-1 Filed: 09/14/26 Entered: 09/14/26 23:46:18 Page 13 of 25

| Claim | Basis | Defendant(s) |
|---|---|---|
| **Eighth** | **Uniform Voidable Transactions Act Claim** | Randall Miller<br>**Alexis Miller**<br>**RAD Urban**<br>R2 Building, LLC<br>R2 Building, Inc.<br>**DOES 1 through 20** |
| Ninth | Section 523(a)(2)(A) for Fraudulent Transfer | Randall Miller (Debtor) |
| Tenth | Section 523(a)(6) for Fraudulent Transfer | Randall Miller (Debtor) |

### B. The Plaintiff Failed to Plead the Fraud-Based Claims with the Particularity Required by Civil Rule 9(b).

20. As a threshold matter, the Plaintiff failed to plead the fraud-based claims with the requisite particularity. Rule 9(b) of the Federal Rules of Civil Procedure, made applicable to this Adversary Proceeding by Rule 7009 of the Federal Rules of Bankruptcy Procedure provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b); *see also In re Kubick*, 171 B.R. 658, 660 (B.A.P. 9th Cir. 1994) (citing *In re Schwartzman*, 63 B.R. 348, 355 (Bankr. SD Ohio 1986).

21. Civil Rule 9(b) requires the identification of specific circumstances constituting fraud so the defendant can prepare an adequate answer to the allegations. *See Moore vs. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir.1989). To properly allege fraud with particularity, the "pleader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Semegen v. Weider*, 780 F.2d 727, 731 (9th Cir.1985); *see also Bosse v. Crowell Collier and MacMillan*,565 F.2d 602, 611 (9th Cir. 1977).

22. The "particularity" requirement serves to provide defendants with adequate notice of both the nature and grounds of the claim, to protect defendants from the reputational harm associated with fraud claims, and to prevent the filing of claims merely to discover unknown wrongs. *See Neubronner v Milken*, 6 F.3d 666, 671 (9th Cir. 1993). The fraud allegations must be specific enough to give the defendant notice of the particular misconduct which is alleged to constitute the fraud, so that they can defend against the charge and not just deny that they have done anything wrong. *See Semegen*, 780 F.2d at 731; *see Neubronner*, 6 F.3d at 671. Allegations


Case: 26-04037 Doc# 18-1 Filed: 09/14/26 Entered: 09/14/26 23:46:18 Page 14 of 25

that are vague or conclusory are insufficient to satisfy the "particularity" requirement of Civil Rule 9(b). *See Moore*, 885 F.2d at 540.

23. Throughout its Amended Complaint, the Plaintiff failed to plead with particularity the details of Mr. Miller's and the Non-Debtor Defendants' alleged fraudulent conduct or actions.

*1. Pleading "On Information and Belief" and by Supposition Does Not Satisfy Rule 9(b).*

24. Averments of fraud made on information and belief are insufficient under Rule 9(b) unless the underlying facts are peculiarly within the opposing party's knowledge and the complaint states the facts on which the belief is founded. *Neubronner*, 6 F.3d at 672. The Plaintiff supplies no such foundation and instead invites the Court to infer fraud from supposition.

25. For example, the Amended Complaint's central allegations rest on conjecture and unsupported allegations. For example, the Plaintiff pleads that Mr. Miller formed 63 Realty "apparently for the purpose" of shielding assets. Amended Compl., ¶ 34. The Plaintiff alleges that the 63 Trust acquired property "presumably with the funds provided by Debtor." *Id.* ¶ 37. Similarly, the Plaintiff claimed that the R2 Building enterprise "appears to be" a continuation of RAD Urban. *Id.*, ¶ 46. The Plaintiff further alleges that "[o]n information and belief" Mr. Miller and Alexis Miller received sale proceeds, and "on information and belief, disburs[ed] [such] funds to affiliated entities or persons. *Id.*, ¶ 36.

*2. The Amended Complaint Impermissibly Lumps the Non-Debtor Defendants Together.*

26. Where fraud is alleged against multiple defendants, Rule 9(b) does not permit a plaintiff to "lump multiple defendants together"; rather, the complaint must "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007). The Fourth Claim fails to meet this requirement. The Amended Complaint alleges collectively that "[t]he R2 Entities, Robert Miller . . . , 63 [Realty], and Alexis Miller knew" of the fraud and "gave substantial assistance or encouragement" to it, Amended Compl., ¶¶ 79-80, without differentiating what each defendant knew, when each learned it, or what specific assistance each is alleged to have provided. That undifferentiated pleading deprives each moving defendant of fair notice and independently fails Rule 9(b).

### 3. *The Amended Complaint Pleads Fraud in Vague and Conclusory Terms.*

27. Rule 9(b) demands specifics (*i.e.*, who made each representation, to whom, when, and by what means). The Amended Complaint supplies none. It alleges only that, at some unspecified point during "the negotiation of the NGI Note and Guaranty," Mr. Miller "represented" that RAD Urban "was in good financial condition" and that an unidentified "Westbrook" entity would lend "on the same terms." Amended Compl., ¶¶ 28-29. It never identifies when any statement was made, who at Sandstone received it, whether it was written or oral, or the words used. *Id.* Allegations that are neither particularized nor specific as to the circumstances of the fraud cannot survive.

28. The concealment claim is equally threadbare: the Plaintiff alleges Mr. Miller "concealed" NGI's and RAD Urban's financial condition, Amended Compl. ¶¶ 70-73, but pleads no particulars as to the concealment (i.e., the necessary who, what, when, where and how).

29. Similarly, Paragraph 46 provides the central transfer allegation for the Seventh and Eighth Claims for Relief:

> 46. After forming the R2 Entities, Debtor transferred significant assets from RAD Urban to them, and the R2 Entities have in turn transferred funds to Debtor and Alexis Miller. The R2 Building enterprise—which includes both R2 Entities and appears to be a continuation, successor-in-interest, and/or alter ego of RAD Urban—is thus another vehicle through which Debtor has attempted to mulct creditors.

Amended Compl, ¶ 46.

30. This allegation contains no specificity as to what was transferred, when it was transferred, how it was transferred, or to whom. The disjunctive framing compounds the defect. R2 Building Inc. and R2 Building, LLC are separately named defendants formed in different years, and an unspecified payment from one of them is not necessarily the proceeds of an unspecified asset once held by RAD Urban. The Amended Complaint's allegation that "Randall Miller and/or Alexis Miller" were subsequent transferees, Amended Compl. ¶¶ 98 and 108, thus fails to identify which entity was the alleged first transferee, which particular receipt is charged to Alexis, or how any outbound payment is connected to any inbound RAD Urban asset. A vague allegation that


Case: 26-04037 Doc# 18-1 Filed: 09/14/26 Entered: 09/14/26 23:46:18 Page 16 of 25

RAD Urban transferred "significant assets" to the R2 Entities and then to Mr. and Mrs. Miller does not satisfy Rule 9(b).

Indeed, the entirety of the allegations supporting the Seventh and Eighth Claims for Relief (for fraudulent transfer) do not describe with any particularity the alleged fraudulent transfers and conduct at issue. *See* Amended Compl., ¶¶ 94 to 103 and 104 to 113.

### C. The Plaintiff Lacks Standing to Bring the Estate-Owned Aiding and Abetting Claims.

31. The Fourth Claim for relief cannot circumvent the trustee's exclusive authority to seek recovery for Mr. Miller's alleged asset transfers under an aiding and abetting label.

#### *1. The Aiding and Abetting Claim Against Robert Miller, 63 Realty, and Alexis Miller Belongs to the Bankruptcy Estate.*

32. Upon the commencement of a bankruptcy case, all legal and equitable interests of the debtor, including causes of action, become property of the estate under 11 U.S.C. § 541(a), and the trustee alone is vested with authority to prosecute avoidance and fraudulent transfer claims under 11 U.S.C. §§ 544 and 548. Where a claim is a general one that could be asserted by any creditor and seeks redress for an injury common to creditors as a whole, only the trustee may pursue such claim; an individual creditor lacks standing to bring it in its own name. *Estate of Spirtos v. One San Bernardino Cnty. Superior Court Case*, 443 F.3d 1172, 1176 (9th Cir. 2006) ("[T]he bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate.").

33. The Plaintiff's own pleading confirms that the estate owns the core of what it now asserts. The Fourth Claim, and the transfers underlying it, include post-execution conduct by which Mr. Miller allegedly "transferred assets out of his own name." Amended Compl., ¶¶ 35-38, 48-49, and 80-82.

34. The allegations describe a scheme to place Mr. Miller's assets beyond creditors' reach—an injury common to all creditors that belongs to the estate. *Estate of Spirtos*, 443 F.3d at 1176. The Plaintiff conceded exactly this in the original footnote 1, and the estate's ownership of transfers "by Debtor" is not altered by the Amended Complaint's new assertion that its claims are based on transfers "to, rather than by, the Debtor." Amended Compl., ¶ 49, n.1.

35. The Plaintiff cannot convert an estate claim into a personal one by recharacterizing Mr. Miller's transfers as RAD Urban's, particularly where its own factual allegations describe Mr. Miller as the actor who "caused" and "transferred" the assets. Amended Compl., ¶¶ 39 and 46. The threadbare allegation that Mr. Miller "transferred significant assets from RAD Urban" to entities he controlled to not provide any basis to indicate that these claims are independent of the claims that belong to the estate. Amended Compl., ¶ 46. Whether a claim belongs to the estate or to an individual creditor turns on the particular right asserted and the law that governs it, not on the label the pleader chooses. *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1250-52 (9th Cir. 2010). Here, the Fourth Claim for Relief seeks recovery for transfers by which Mr. Miller allegedly placed his own assets beyond creditors' reach (*i.e.*, a general injury common to all creditors that section 541 vests in the estate). The Plaintiff's recharacterization of those transfers as aiding and abetting does not alter the nature of the right asserted or vest it in the Plaintiff individually.

36. This Court's own recent authority confirms the point. In *Kleidman v. Pearlman (In re Pearlman)*, a judgment creditor sued the debtor and his non-debtor spouse alleging that the debtor had fraudulently transferred assets to the spouse. The creditor continued to prosecute that action against the non-debtor spouse after the debtor's bankruptcy filing. *See Kleidman v. Pearlman (In re Pearlman)*, 2026 Bankr. LEXIS 1558 at *2-4 (B.A.P. 9th Cir. June 22, 2026) (Lafferty, J.). The Bankruptcy Appellate Panel found that the fraudulent transfer action was "an action 'to recover a claim against the debtor'" because "the underlying liability in a fraudulent transfer case is the debtor's." *Id.* at 13, n.8. The *Pearlman* court further found that "[a]s of the petition date, the fraudulent transfer claims . . . became property of the estate." *Id.* at *14 (citing *Koeberer v. Cal. Bank of Com. (In re Koeberer)*, 632 B.R. 680, 688-89 (9th Cir. BAP 2021)).

37. In *Pearlman*, naming a non-debtor transferee rather than the debtor did not change that result, because the transferee "is neither separately liable on the debt nor has agreed to answer for the debt of the debtor," and "the transferee's liability . . . is entirely tied to the actual or constructive intent of the debtor-transferor." *Id.* at *13 n.8. For claims based on Mr. Miller's alleged asset transfers, naming Alexis Miller does not remove from the estate a claim whose substance is the recovery of an allegedly fraudulent transfer of the debtor.


Case: 26-04037 Doc# 18-1 Filed: 09/14/26 Entered: 09/14/26 23:46:18 Page 18 of 25

38. Consequently, since the underlying fraudulent transfer claim belongs to bankruptcy estate, the associated aiding-and-abetting claim against Robert Miller, 63 Realty, and Alexis Miller likewise belongs to the estate, and the Plaintiff lacks standing to assert it. That aiding and abetting fraud claim against Robert Miller, 63 Realty, and Alexis Miller rests entirely on post-execution conduct—the formation of 63 Realty and the 63 Trust, the transfer of Mr. Miller's residence, and the movement of sale proceeds among Mr. Miller-controlled entities. Amended Compl. ¶¶ 35-38, 48-49, and 79-81. Stripped of its label, that claim describes a scheme to place Mr. Miller's assets beyond the reach of creditors and the resultant injury is one common to all of Mr. Miller's creditors, not particular to the Plaintiff: the alleged depletion of funds that would otherwise benefit the estate. As the underlying fraudulent transfer claim belongs to the estate, the Plaintiff lacks standing to assert it. The Plaintiff cannot conjure standing over an estate claim simply by pleading it as "aiding and abetting."

*2. The Plaintiff's Remaining Claims Reach, at Most, Only RAD Urban.*

39. The breach of guaranty, fraud, and fraudulent concealment claims are asserted against Mr. Miller and RAD Urban (and, derivatively, the R2 Entities). RAD Urban signed the Guaranty, and only Mr. Miller and RAD Urban are alleged to have made the pre-execution representations on which those claims depend. Amended Compl. ¶¶ 19, 60-61, and 72. The remaining moving non-debtor defendants—Robert Miller, 63 Realty, and Alexis Miller—are not alleged to have been parties to the NGI Note or Guaranty, or to have made any representation to the Plaintiff whatsoever. The Plaintiff pleads no injury as to them distinct from the generalized, asset-depletion injury that belongs to the estate. By the Plaintiff's own pleading, then, any cognizable, non-estate claim is confined to RAD Urban, and the claims against Robert Miller, 63 Realty, and Alexis Miller should be dismissed for lack of standing.

**D. The Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted.**

40. The claims against the moving Non-Debtor Defendants independently fail under Civil 12(b)(6).[4] To survive dismissal, a complaint must plead "factual content that allows the court

[4] Made applicable here by Bankruptcy Rule 7012(b).


Case: 26-04037 Doc# 18-1 Filed: 09/14/26 Entered: 09/14/26 23:46:18 Page 19 of 25

to draw the reasonable inference that the defendant is liable for the misconduct alleged" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice and are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Measured against that standard, each claim falls short.

*1. The "Fraud" Claims are Breach of Contract Claims in Tort Clothing.*

41. Under California law, "something more than nonperformance is required to prove the defendant's intent not to perform his promise." *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 30 (1985); *accord Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996). A plaintiff cannot manufacture promissory fraud from a broken promise merely by alleging that the promisor secretly never intended to perform. Financial distress does not itself establish an intent to never pay. Paragraph 30 invokes "temporal proximity" without stating when Westbrook's different terms were agreed or known. Those missing circumstance prevent the Plaintiff from plausibly attributing contemporaneous fraudulent intent to RAD Urban.

42. The economic loss rule confirms the defect. A tort claim arising out of a contractual relationship lies only where the plaintiff pleads conduct independent of the breach that exposes it to a risk of harm beyond the parties' contractual expectations. *Rattagan v. Uber Techs., Inc.*, 17 Cal.5th 1, 20-21 (2024). The Amended Complaint identifies no particular post-execution concealment by RAD Urban satisfying those requirements. Repeating the unpaid Guaranty balance does not supply the missing conduct.

*2. The Fraudulent Concealment Claim Independently Fails for Want of a Duty to Disclose.*

43. A concealment claim requires a duty to disclose, which arises only where: (1) the parties stand in a fiduciary relationship, (2) the defendant has exclusive knowledge of material facts, (3) the defendant actively conceals a material fact, or (4) the defendant makes partial representations while suppressing other material facts. *LiMandri v. Judkins*, 52 Cal.App.4th 326, 336-37 (Cal. App. 4th Dist. 1997). The Plaintiff alleges an arm's-length lending transaction between sophisticated commercial parties, which imposes no free-standing duty on a borrower or


Case: 26-04037 Doc# 18-1 Filed: 09/14/26 Entered: 09/14/26 23:46:18 Page 20 of 25

guarantor to volunteer its financial condition. Paragraph 28 to 32 identify neither the individual recipient nor the occasion or means of the alleged partial disclosures. The Third Claim repeats the insolvency allegation without supplying those particulars. Amended Compl., ¶¶ 72-73. And as for Robert Miller, 63 Realty, and Alexis Miller, the claim is even more deficient: none of them is alleged to have had any relationship with the Plaintiff, or to have made or omitted any statement to it. The concealment claim, like the fraud claim, is merely the Guaranty dispute recast in tort.

*3. The Aiding and Abetting Claim Fails on Its Own Terms.*

44. To state a claim for aiding and abetting fraud, a plaintiff must allege that the defendant had actual knowledge of the specific primary wrong and gave substantial assistance to its commission. *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal.App.4th 1138, 1145-46 (Cal. App. 4th Dist. 2005). Mere knowledge or passive awareness will not do; the defendant must have known that the specific tort was being committed. *Id.* The Fourth Claim fails at every step.

45. First, the claim is derivative. To the extent the Fourth Claim rests on the inadequately plead fraud and fraudulent concealment claims, the aiding and abetting claim necessarily fails with them, for there is no primary wrong to abet. *Casey*, 127 Cal.App.4th at 1144.

46. Second, and independently, the assistance the Plaintiff alleges bears no connection to the underlying tort. Curiously, the aiding and abetting claim alleges "Debtor and RAD Urban are liable to Plaintiff for fraud and/or fraudulent concealment" and that the Non-Debtor Defendants "knew that Debtor, RAD Urban, and the R2 Entities were committing fraud and/or fraudulent concealment against Plaintiff." Amended Compl., ¶¶ 78-79. Yet, the next paragraphs go on to describe the "asset transfer" scheme. *Id.* ¶¶ 80-81. The Amended Complaint identifies no facts showing that these defendants knew of or substantially assisted the alleged March 2019 inducement. Allegations of unrelated transfers in 2020 and 2021 do not supply that missing connection.

47. Third, the knowledge allegations are wholly conclusory. The Plaintiff alleges only that these defendants "knew that Debtor, RAD Urban, and the R2 Entities were committing fraud and/or fraudulent concealment." Amended Compl. ¶79. That is a textbook "[t]hreadbare recital" of the knowledge element, which *Iqbal* instructs the Court to disregard. 556 U.S. at 678. Absent

well-pleaded facts showing actual knowledge of the specific fraud, the claim cannot stand.

48. Finally, as noted below with respect to the aiding and abetting fraudulent transfers, as those claims for relief belong to the bankruptcy estate the aiding and abetting claims similarly are an estate asset.

*4. Even If the Court Reaches Them, the Seventh and Eighth Claims Fail to State a Claim.*

49. If the Court reaches the merits of the newly added fraudulent / voidable transfer claims, they should be dismissed. A common law fraudulent transfer or UVTA claim premised on actual intent to hinder, delay, or defraud sounds in fraud and must be pleaded with particularity under Rule 9(b). FED. R. BANKR. P. 7009. The Plaintiff pleads no such particulars. Claims Seven and Eight allege only that "RAD Urban transferred assets to others, including the R2 Entities," see Amended Compl., ¶¶ 96 and 106, without identifying a single asset transferred, the date of any transfer, the amount of any transfer, the consideration (if any), or which of the two R2 Entities was the alleged first transferee. Allegations that name no transfer, no date, and no amount do not give a defendant notice of "the particular misconduct which is alleged to constitute the fraud." *Semegen*, 780 F.2d at 731. And the incorporated background paragraphs supply no cure. The only transfer described with any specificity (*i.e.*, the sale of the Orinda home through the 63 Trust, see Amended Compl. ¶¶ 35-37) was a transfer of Mr. Miller's residence, not a transfer of RAD Urban's assets, and thus cannot support a claim that Alexis Miller was a "subsequent transferee" of RAD Urban's property.

50. The Seventh and Eighth Claims also fail as a matter of law because the Amended Complaint pleads insufficient facts connecting Alexis Miller to an actionable receipt for which a voidable-transfer money judgment may be entered. Under California Civil Code § 3439.08(b), such a judgment lies only against the first transferee of the asset, the person for whose benefit the transfer was made, or an immediate or mediate transferee of the first transferee. The Amended Complaint applies the conclusory label "subsequent transferee" to Alexis Miller, Amended Compl. ¶¶ 98 and 108, but pleads no facts identifying the transfer she is alleged to have received, from whom, or in what amount, and therefore does not plausibly place her in any statutory category. The

identification of that receipt is part of the Plaintiff's affirmative claim, and its absence requires dismissal.

51. Nor can the Plaintiff avoid this deficiency by resorting to a constructive-transfer theory. Although a constructive fraudulent-transfer claim may proceed without allegations of actual fraudulent intent, it still requires an identified transfer together with facts supporting the applicable statutory predicates—that the transferor did not receive reasonably equivalent value and was insolvent, was left with unreasonably small remaining assets, or intended to incur debts beyond its ability to pay. CAL. CIV. CODE §§ 3439.04(a)(2) and 3439.05(a). Paragraphs 97 and 107 recite the financial-condition predicates, but do not connect them to an identified transfer through supporting facts. Paragraphs 96 and 106 likewise recite an absence of reasonably equivalent value without identifying what was transferred or received in exchange. The Amended Complaint's allegations concerning RAD Urban's financial condition in March 2019, Amended Compl., ¶ 27, cannot supply the consideration or financial circumstances of a later, unidentified transfer to entities the Plaintiff alleges were formed in 2020 and 2021. For the same reason, and independent of Civil Rule 9(b), the transfer claims fail under Civil Rule 8 because the Amended Complaint does not identify the transactions giving rise to the Non-Debtor Defendants' alleged liability, and thus does not permit the reasonable inference that any of them is liable for the misconduct alleged.

52. The deficiency is one of the Plaintiff's own affirmative pleading, not the absence of a defense. Under California Civil Code § 3439.08(f)(3), a subsequent transferee bears the burden of establishing the good faith defense available under § 3439.08(b)(1)(B). While the Plaintiff need not plead the absence of good faith or value to state its claim, the Plaintiff <u>must still identify</u> the transfer that Alexis Miller allegedly received and connect it to an avoidable transfer of RAD Urban's property. This the Plaintiff has not done. Because the Amended Complaint alleges receipt by Alexis Miller in Paragraph 46, but identifies no particular asset, transfer, or receipt tied to an avoidable RAD Urban transfer, the wholly conclusory, disjunctive allegations against her cannot stand. Claims Seven and Eight should be dismissed as to RAD Urban and Alexis Miller. Identifying additional, unnamed transferees does not supply the missing transaction connecting Alexis Miller to an avoidable transfer of RAD Urban's property. Amended Compl., ¶¶ 99 and 109.


Case: 26-04037 Doc# 18-1 Filed: 09/14/26 Entered: 09/14/26 23:46:18 Page 23 of 25

### 5. *The Doe Defendants Should Be Dismissed Because Doe Pleading Has No Place in Federal Court.*

53. The Amended Complaint names "Does 1-20" and includes them as defendants in its newly added fraudulent / voidable transfer counts, alleging that unidentified "Doe defendants . . . are also first transferees or subsequent transferees," Amended Compl., ¶¶ 99 and 109. Whatever utility fictitious-name pleading may have in California's Superior Court it has none here. As Judge Klein put it in a bankruptcy adversary proceeding, "Doe pleading is not recognized in federal practice. The Doe defendants are being dismissed." *Halloum v. Ryder (In re Halloum)*, 2015 Bankr. LEXIS 2894 at *7 (Bankr. E.D. Cal. Aug. 27, 2015). The rule is not a technicality but a matter of basic function: an anonymous defendant is a placeholder that accomplishes nothing, because "it is pointless to include an anonymous defendant in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff." *Munden v. Brown*, 2021 U.S. Dist. LEXIS 9457 at *4 (S.D. Ind. Jan. 19, 2021) (quoting *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997))

54. Here, the Amended Complaint pleads no fact, name, role, transfer, date or amount as to any of the twenty Doe defendants. They are litigation scenery, imported wholesale from the Plaintiff's state-court template, and they should be dismissed. If the Plaintiff later "learns their true identities," see Amended Compl., ¶¶ 99 and 109, the Federal Rules give it a remedy: to move to amend under Bankruptcy Rule 7015 and Civil Rule 15. Until then, Does 1-20 should be dismissed.

## VI. CONCLUSION

For each of the reasons outlined above—lack of standing, failure to plead fraud with particularity, and failure to state a claim—the Amended Complaint should be dismissed as to the Non-Debtor Defendants. Because the standing defects cannot be cured by amendment, dismissal of those claims should be without leave to amend. Accordingly, the Non-Debtor defendants move this Court for entry of an order dismissing with prejudice the Second, Third, Fourth, Seventh, and Eighth Claims for Relief as asserted against the Non-Debtor Defendants, and granting such further relief as this Court deems just and proper.


Case: 26-04037 Doc# 18-1 Filed: 09/14/26 Entered: 09/14/26 23:46:18 Page 24 of 25

DATED: September 14, 2026

BUCHALTER LLP

By: /s/ *Anthony J. Napolitano*
ANTHONY J. NAPOLITANO

Attorneys for Non-Debtor Defendants
ROBERT MILLER, individually and as trustee,
ALEXIS MILLER, RAD URBAN, INC. and
63 REALTY HOLDINGS, LLC


Case: 26-04037 Doc# 18-1 Filed: 09/14/26 Entered: 09/14/26 23:46:18 Page 25 of 25