SHARTSIS FRIESE LLP
IVO KELLER (Bar #245909)
DIEGO B. FLORES (Bar #324603)
425 Market Street, Eleventh Floor
San Francisco, CA 94105-2496
Telephone: (415) 421-6500
Facsimile: (415) 421-2922
Email: ikeller@sflaw.com
Email: dflores@sflaw.com

BAKER BOTTS L.L.P.
CHERYL A. CAULEY (Bar #252262)
1001 Page Mill Road, Bldg. 1, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
Email: cheryl.cauley@bakerbotts.com

BAKER BOTTS L.L.P.
KARAN SINGH DHADIALLA (Bar #296313)
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300
Email: karan.dhadialla@bakerbotts.com

Attorneys for Plaintiff
SANDSTONE GROUP, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>RANDALL DAVID MILLER,<br><br>Debtor. | Case No. 26-40698 WJL<br><br>Chapter 7<br><br>Adv. Proc. No. 26−04037<br><br>**PLAINTIFF SANDSTONE GROUP, LLC'S OPPOSITION TO DEFENDANT R2 BUILDING, LLC'S MOTION TO DISMISS SANDSTONE'S CLAIMS AGAINST R2 BUILDING, LLC** |
| SANDSTONE GROUP, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v. | Hearing date: October 21, 2026<br>Time: 10:30 a.m. |



Case: 26-04037 Doc# 22 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 1 of 24

RANDALL MILLER, an individual; RAD URBAN INC., a Delaware corporation; ROBERT MILLER, individually and in his capacity as trustee of the 63 Holdings Trust; 63 REALTY HOLDINGS, LLC, a Wyoming limited liability company; ALEXIS MILLER, an individual; R2 BUILDING, LLC, a Delaware limited liability company; R2 BUILDING, INC.; and DOES 1-20, inclusive,

Defendants.



Case: 26-04037 Doc# 23 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 2 of 24

## TABLE OF CONTENTS


**I. INTRODUCTION ........ 1**

**II. BACKGROUND ........ 1**

**III. LEGAL STANDARD AND APPLICABLE LAW ........ 3**

**IV. ARGUMENT ........ 5**

A. Sandstone Adequately Pleads its Claims Against R2 Building. ........ 5

1. Sandstone Sufficiently Alleges that R2 Building is the Alter Ego of RAD Urban. ........ 5

2. Sandstone Sufficiently Pleads R2 Building is the Successor-in-Interest to RAD Urban. ........ 9

i. R2 Building is a Mere Continuation of RAD Urban. ........ 10

ii. Miller Created R2 Building Fraudulently to Avoid Liability for RAD Urban. ........ 11

3. Sandstone Sufficiently Pleads its Fraud Claims against R2 Building ........ 12

4. Sandstone Sufficiently Pleads its Aiding and Abetting Fraud Claim ........ 13

5. Sandstone Sufficiently Pleads its Fraudulent Transfer Claims. ........ 14

B. If the Court Believes Sandstone Needs to Provide Additional Allegations, the Court Should Grant Sandstone Leave to Amend. ........ 15

**V. CONCLUSION ........ 16**

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Title Ins. Co. v. Lacelaw Corp.*,
861 F.2d 224 (9th Cir. 1988) ....................................................................................9

*Anotek, LLC v. Venture Exch., SCS*,
No. CV N19C-04-211, 2021 WL 2577604 (Del. Super. Ct. June 22, 2021)..........................11

*Boustead Sec., LLC v. CP BF BidCo, LLC*,
No. SA CV 25-01981, 2026 WL 166904 (C.D. Cal. Jan. 15, 2026) .........3, 4, 9, 10, 11, 12, 15

*C.M. v. Martian Sales, Inc.*,
No. 23-CV-06202-AMO, 2026 WL 1195014 (N.D. Cal. May 1, 2026) ................................12

*Daewoo Elecs. Am. Inc. v. Opta Corp.*,
875 F.3d 1241 (9th Cir. 2017) ....................................................................................5

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ......................................................................................4

*Fazio v. Apple, Inc. (In re iPhone 4S Consumer Litig.)*,
637 F. App'x 414 (9th Cir. 2016) ...............................................................................14

*Harris v. County of Orange*,
682 F.3d 1126 (9th Cir. 2012) ...................................................................................15

*In re CMR Mortg. Fund, LLC*,
416 B.R. 720 (Bankr. N.D. Cal. 2009) ......................................................................15

*JPV I L.P. v. Koetting*,
88 Cal. App. 5th 172 (2023) ....................................................................................8, 9

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ......................................................................................8

*Khoros, LLC v. Lenovo (United States), Inc.*,
No. 3:20-CV-03399, 2020 WL 12655516 (N.D. Cal. Oct. 5, 2020) ................................5, 6, 9

*Lachapelle v. Kim*,
No. 15-CV-02195, 2015 WL 5461542 (N.D. Cal. Sept. 16, 2015) .......................................14

*Lennard v. Yeung*,
No. CV1009322, 2012 WL 13006214 (C.D. Cal. Feb. 23, 2012) ..............................12, 13, 14

*MacRae v. HCR Manor Care Servs., LLC*,
No. SACV140715, 2017 WL 11480091 (C.D. Cal. Sept. 14, 2017)........................................4



Case: 26-04037 Doc# 23 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 4 of 24

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
No. 2:10-CV-0302, 2011 WL 1765509 (C.D. Cal. Apr. 20, 2011) .........................................4

*Marcelos v. Dominguez*,
No. C 08-00056, 2008 WL 2788173 (N.D. Cal. July 18, 2008) ............................................13

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) ..........................................................................................3

*Monroe v. FTS USA, LLC*,
No. CV 25-362, 2026 WL 622263 (D. Del. Mar. 5, 2026), *report and recommendation adopted*, No. CV 25-362, 2026 WL 792167 (D. Del. Mar. 20, 2026) .............................................10, 11

*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
686 F. Supp. 3d 900 (N.D. Cal. 2023) ...............................................................................4

*Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*,
992 F.3d 893 (9th Cir. 2021) ......................................................................................7, 10

*Plotkin v. Pomona Valley Imps. (In re Cohen)*,
199 B.R. 709 (B.A.P. 9th Cir. 1996) ...............................................................................14

*Pro 49 Dev., LLC v. Ness Express 1, LLC*,
No. 2:24-CV-01850, 2024 WL 4712389 (E.D. Cal. Nov. 7, 2024) .................................4, 5, 6

*Processpoint Invs. Ltd. v. Pharma Funding LLC*,
No. 8:24-CV-01593, 2025 WL 1420921 (C.D. Cal. Mar. 28, 2025) .......................................5

*R2 Building LLC v. Randall David Miller*,
Case No. 4:26-ap-04041 (Bankr. N.D. Cal. July 13, 2026) ..................................................2

*Rajamani v. Revways Corp.*,
No. CV N18C-07-196, 2019 WL 169316 (Del. Super. Ct. Jan. 11, 2019) .......................10, 11

*Sunnyside Dev. Co. LLC v. Cambridge Display Tech. Ltd.*,
No. C 08-01780, 2008 WL 4450328 (N.D. Cal. Sept. 29, 2008) ...........................................15

*Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*,
212 F. Supp. 3d 816 (N.D. Cal. 2016) ...............................................................................7

*Trans-World Int'l, Inc. v. Smith-Hemion Prods., Inc.*,
972 F. Supp. 1275 (C.D. Cal. 1997) ..................................................................................5

*XL Catlin Ins. Co. UK Ltd. v. NuWorld Beauty Corp.*,
No. 19-CV-06228, 2020 WL 12769053 (N.D. Cal. Apr. 24, 2020) ................................7, 8, 11

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 7012 .......................................................................................................3

Fed. R. Bankr. P. 7015 .....................................................................................................15

Case: 26-04037 Doc# 23 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 5 of 24

Fed. R. Civ. P. 9(b) ....................................................................................................14
Fed. R. Civ. P. 12(b)(6).....................................................................................................3
Fed. R. Civ. P. 15 ...........................................................................................................15
Fed. R. Evid. 201 ..........................................................................................................4, 7

Case: 26-04037 Doc# 23 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 6 of 24

## I. INTRODUCTION

This case arises out of a fraud perpetrated by Debtor/Defendant Randall Miller, who made promises he never intended to keep—on behalf of both himself and Defendant RAD Urban Inc. ("RAD Urban")—and then set up entities and transferred assets to evade those obligations. One of the ways Miller has avoided his company RAD Urban's obligations is by setting up a second company conspicuously called "R***2*** Building." This second iteration of RAD Urban involved the same people, used the same address, and continued the same projects. RAD Urban even transferred substantially all of its assets to R2 Building. And notably, at the times relevant to Plaintiff Sandstone Group, LLC's ("Sandstone") claims, RAD Urban and R2 Building, LLC ("R2 Building") were both controlled by Randall Miller. In its Motion, R2 Building argues that it should not be held liable for RAD Urban's debts because R2 Building is not an alter ego or continuation of RAD Urban. But this assertion is controverted by the clear allegations in Sandstone's operative complaint and admissions that R2 Building has itself made in a parallel adversary proceeding. Based on its allegations alone, Sandstone's claims against R2 Building should proceed, and R2 Building's own admissions add an extra layer of confirmation. The Court should also reject R2 Building's invitation to have the Court decide the question of alter ego on the merits, which is inappropriate at this pleading stage. R2 Building's myopic focus on just the current state of R2 Building's governance is also inappropriate, as it ignores the many prior years of fraud and the transfer and commingling of assets, as pled by Sandstone. Sandstone has met the required pleading standard, and while it is confident that it will also prevail on the merits, it need not do so at this juncture. R2 Building's Motion to Dismiss (Dkt. No. 16; the "Motion") is without merit and should be denied.

## II. BACKGROUND

In its First Amended Complaint ("FAC"), Sandstone brings several claims against Defendant R2 Building arising out of its inextricable ties to Miller and RAD Urban, who owe a significant amount of money to Sandstone. On March 25, 2019, Sandstone entered into a $2 million promissory note with one of Miller's companies—NGI East Bay Portfolio, LLC ("NGI"). FAC (Dkt. No. 12) ¶ 17. Miller fraudulently induced Sandstone into making the loan, and the note was personally guaranteed by Miller and RAD Urban the same day. *Id.* ¶¶ 19, 25. The note came due on March 31, 2020, and nothing


Case: 26-04037 Doc# 22 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 7 of 24

was paid at that time. *Id.* ¶ 23. To date, NGI has only paid $500,000 on the note and has only made payments in connection with its own bankruptcy case. *Id*. Miller and RAD Urban have paid nothing, and Miller and RAD Urban currently owe Sandstone over $2.98 million on the loan. *Id.* ¶¶ 23, 24.

Sandstone alleges that Miller created R2 Building to defraud his and RAD Urban's creditors—particularly with respect to the money owed to Sandstone. FAC ¶¶ 45–47. Specifically, Sandstone alleges that R2 Building is either the alter ego of or successor-in-interest to RAD Urban, which is insolvent and unable to meet its obligations to Sandstone. *Id.* ¶¶ 27, 45–47. Miller created R2 Building to conceal his assets and avoid liability as part of his effort to avoid repaying Sandstone's loan in full. *Id.* ¶¶ 45–47. This could not be clearer. R2 Building shares the same address as RAD Urban's principal place of business, employs the same people, and—at all times relevant to Sandstone's claims as alleged in the FAC—was under Miller's control. *Id.* ¶ 45. Further, Miller transferred significant assets from RAD Urban to R2 Building. *Id.* ¶ 46. These transfers from RAD Urban to R2 Building removed assets from RAD Urban that Sandstone could have collected in satisfaction of the debt owed to it. *Id.* ¶¶ 102, 112. R2 Building, as an alter ego or a successor to RAD Urban, is thus also liable to Sandstone for RAD Urban's debt and fraud. *Id.* ¶ 68, 76.

Sandstone's allegations are confirmed by R2 Building's own admissions in its separate adversary complaint against Miller, filed in July. *R2 Building LLC v. Randall David Miller*, Case No. 4:26-ap-04041 (Bankr. N.D. Cal. July 13, 2026). In its complaint, R2 Building makes numerous admissions that support Sandstone's allegations that Miller used R2 Building as an alter ego of, or successor to, RAD Urban in furtherance of his scheme to avoid liabilities and defraud creditors.

Notably, R2 Building admits that Miller "had control over all aspects of [R2 Building] and entered into transactions on [R2 Building]'s behalf, used and controlled [R2 Building]'s property, including but not limited to [R2 Building]'s labor, materials, funds, and business opportunities, and had decision-making authority for [R2 Building]." Dkt. No. 1, *R2 Building*, Case No. 4:26-ap-04041 ("R2 Building Complaint") ¶ 66. R2 Building also admits that "[a]t all relevant times, [Miller] was the CEO of [R2 Building], and in that role, he exercised substantial managerial control over [R2 Building]'s operations, finances, labor, materials, and business opportunities, and he owed fiduciary duties of loyalty, candor, and care to [R2 Building]." *Id.* ¶ 8.


Case: 26-04037 Doc# 22 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 8 of 24

R2 Building further admits that Miller had a pattern of using entities in his control to defraud creditors and eschew his obligations. R2 Building admits that Miller "concealed millions of dollars in personal guaranty obligations, diverted [R2 Building]'s labor, materials, and funds to construct his own home, and used [R2 Building]'s resources to eventually build a competing business, Medo USA Inc. ("Medo"), an entity he owned and controlled" to operate a business that was "substantially similar" to R2 Building. *Id.* ¶¶ 1, 45. This is the exact same playbook that Miller followed with RAD Urban and R2 Building in the first place.

Specifically, R2 Building alleges that Miller's "scheme included: (i) concealing his personal guaranty obligations and defaults totaling millions of dollars; (ii) inducing the 335 3rd Street Loan through material misrepresentations and omissions in the 335 Note; (iii) diverting VAT/IVA refund proceeds pledged as collateral; (iv) misappropriating [R2 Building]'s labor, materials, and resources for his personal residence; and (v) usurping corporate opportunities belonging to [R2 Building] for his competing entity, Medo." *Id.* ¶ 56. R2 Building admits that Miller, "exploiting his position as CEO of [R2 Building], provided himself and his other entities with access to millions of dollars provided by 335 3rd to R2 Building pursuant to the 335 3rd Street Loan." *Id.* ¶ 21. Miller then paid himself "a full-time salary from [R2 Building] while simultaneously operating Medo and using [R2 Building]'s systems, intellectual property, equipment, email, and technology to operate Medo." *Id.* ¶ 50.

These admissions undermine R2 Building's Motion. Even R2 Building believes that Miller used his entities to defraud others, and it is clear by its own admissions that corporate formalities were, in fact, *not* observed by R2 Building.

## III. LEGAL STANDARD AND APPLICABLE LAW

A dismissal under Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012, is "appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citing *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Boustead Sec., LLC v. CP BF BidCo, LLC*, No. SA CV 25-01981, 2026 WL 166904, at *2 (C.D. Cal. Jan. 15, 2026) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks removed). "[T]he Court must accept 'all well-pleaded' factual allegations as true, and construe such allegations 'in the light most favorable to the non-moving party.'" *Id.* (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)). "Generally, when evaluating a motion to dismiss, district courts may not consider material outside the pleadings." *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 686 F. Supp. 3d 900, 909 (N.D. Cal. 2023) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)) (noting only "two exceptions to this rule: the doctrine of incorporation by reference and judicial notice under Federal Rule of Evidence 201").

California's choice-of-law rules apply in determining the applicable law for alter ego and successor-in-interest. *MacRae v. HCR Manor Care Servs., LLC*, No. SACV140715, 2017 WL 11480091, at *2 (C.D. Cal. Sept. 14, 2017) ("The conflict of laws rules to be applied by a federal court must conform to those prevailing in the state in which it sits."). Under California law, the law of the state under which a foreign company is formed—here, Delaware, since R2 Building is a Delaware company[1]—determines alter ego liability. *MacRae*, 2017 WL 11480091, at *3 (applying Delaware law in analyzing whether one company organized in Delaware is the alter ego of another company organized in Delaware). Accordingly, "federal courts in California apply the law of the state of incorporation in assessing the alter ego of an LLC." *Pro 49 Dev., LLC v. Ness Express 1, LLC*, No. 2:24-CV-01850, 2024 WL 4712389, at *2 (E.D. Cal. Nov. 7, 2024) (collecting cases and applying Delaware law in the alter ego analysis of an LLC incorporated in Delaware). Delaware law similarly applies to successor liability claims. *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302, 2011 WL 1765509, at *4–5 (C.D. Cal. Apr. 20, 2011) (Delaware law applies because the Restatement (Second) of Conflict of Laws § 302 says the law of the state of incorporation applies to "issues involving the rights and liabilities of a corporation"); *see also Boustead*, 2026 WL 166904, at *3 (applying Delaware law in the successor liability analysis of an LLC incorporated in Delaware).[2]

[1] *See* Motion at 8 ("R2 Building, LLC is a Delaware limited liability company . . . .").

[2] Even if California law did apply, the requirements to plead alter ego and successor liability in


Case: 26-04037 Doc# 22 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 10 of 24

**IV. ARGUMENT**

The FAC sufficiently pleads that R2 Building is either the alter ego or successor-in-interest to RAD Urban and that R2 Building is liable for Miller and RAD Urban's bad acts. However, if the Court finds Sandstone's allegations insufficient, it should grant leave to amend the FAC.

**A. Sandstone Adequately Pleads its Claims Against R2 Building.**

1. Sandstone Sufficiently Alleges that R2 Building is the Alter Ego of RAD Urban.

As alleged in the FAC, R2 Building is an alter ego of RAD Urban. "In Delaware, the alter ego doctrine has two requirements: (1) the companies are 'operated as a single economic entity' and (2) an 'overall element of unfairness or injustice is present.'" *Khoros, LLC v. Lenovo (United States), Inc.*, No. 3:20-CV-03399, 2020 WL 12655516, at *15 (N.D. Cal. Oct. 5, 2020) (citing *In re Moll Indus., Inc.*, 454 B.R. 574, 587 (Bankr. D. Del. 2011)); *see also Processpoint Invs. Ltd. v. Pharma Funding LLC*, No. 8:24-CV-01593, 2025 WL 1420921, at *5 (C.D. Cal. Mar. 28, 2025). Federal courts in California have thus denied motions to dismiss where the plaintiff pled that the defendant and its alter ego were "operated as a single economic entity." *Khoros*, 2020 WL 12655516, at *15. Sandstone has pled both factors here.

In *Processpoint*, the court held that the "single economic entity" prong was sufficiently pled where the plaintiff's allegations included commingling and siphoning funds and "transfer[ring] assets to render [the company] judgment proof." 2025 WL 1420921, at *8–9. The court held that the plaintiff adequately pled that the company acted as a façade for the defendants "[g]iven the numerous allegations of fraud, failure to adhere to corporate formalities, and siphoning of funds." *Id.* at *9. In *Pro 49*, the plaintiff alleged that "[the defendants] formed [the alter ego company] for the express and specific purpose of [conducting the underlying fraudulent activity];" that "[the alter ego company] was

---

California are not any more demanding than the pleading requirements under Delaware law, and therefore Sandstone's allegations are sufficient under either Delaware or California law. *See Trans-World Int'l, Inc. v. Smith-Hemion Prods., Inc.*, 972 F. Supp. 1275, 1291 (C.D. Cal. 1997) ("both Delaware and California examine similar factors in determining whether an individual or corporation is the alter ego of another corporation"); *see also Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1250 (9th Cir. 2017) (California law, like Delaware law, recognizes successor liability where "(1) the purchaser expressly or impliedly agrees to such assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape liability for debts") (internal citation omitted).


Case: 26-04037 Doc# 22 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 11 of 24

controlled, dominated, and operated by [the defendants];" and that "[the defendants] formed a financially insolvent entity to avoid any liability related to the injury Plaintiff suffered." 2024 WL 4712389, at *3 (internal citations and quotation marks omitted). The court held "[t]hese allegations plausibly state[d] that [the alter ego company] functioned as a façade for [the defendants], who exercised complete control over the entity." *Id.*

The second prong, which requires that an "overall element of unfairness or injustice is present," is met by alleging that the corporation was used to perpetrate an injustice. *Khoros*, 2020 WL 12655516, at *15. "The plaintiff need not prove that the corporation was created with fraud or unfairness in mind. It is sufficient to prove that it was so used." *Pro 49*, 2024 WL 4712389, at *4 (citing *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008)) (cleaned up). "[C]ourts applying Delaware law have found that, for a motion to dismiss, allegations of undercapitalization and siphoning of funds are sufficient to satisfy the injustice or unfairness element." *Id.* (citing *Essar Steel Algoma Inc. v. Nevada Holdings, Inc.*, Case No. 17MISC360, 2020 WL 2539031, at *4 (S.D.N.Y. May 18, 2020) (internal quotation marks removed). Allegations of "misdirection of funds, dominating control, and siphoning of funds support[] existence of injustice or unfairness." *Id.* (citing *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 473 (D. Del. 2010)).

Sandstone's specific allegations meet the requirements for pleading alter ego for both factors. Sandstone alleges that Miller and RAD Urban failed to pay back Sandstone's loan, that Miller intended to drive RAD Urban into bankruptcy, and that under these circumstances, Miller intended to manipulate his controlled entities, RAD Urban and R2 Building, to defraud creditors. FAC ¶ 45. Sandstone also alleges that Miller formed R2 Building using the same place of business, employing the same people, and with both companies remaining under Miller's control. *Id.* Sandstone further alleges that Miller transferred significant assets from RAD Urban to R2 Building, which then transferred funds to Miller. *Id.* ¶ 46. Sandstone alleged this conduct was done to keep assets from creditors' reach. *Id.* ¶ 47. These allegations that Miller controlled both RAD Urban and R2 Building and transferred assets from RAD Urban to R2 Building to defraud creditors satisfy both factors. They


Case: 26-04037 Doc# 22 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 12 of 24

also go far beyond "superficial indicia of interrelatedness" that R2 Building claims are insufficient under California law.[3] *See* Motion at 14–15.

R2 Building attempts to deny its culpability by introducing into evidence a selective snapshot of the company at one time, but this cherry-picked presentation of evidence is both inappropriate at the pleading stage and insufficient to contradict Sandstone's allegations.[4] To do so, R2 Building seeks judicial notice of several pieces of evidence.

First, it requests judicial notice of an email thread allegedly "evidencing" Miller's resignation as President of R2 Building on February 5, 2026 (Exhibit 6), and the Written Consent of the Board of Managers of R2 Building, LLC in Lieu of a Meeting (Exhibit 7). As a preliminary matter, neither are judicially noticeable documents. "Under Federal Rule of Evidence 201, '[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *XL Catlin Ins. Co. UK Ltd. v. NuWorld Beauty Corp.*, No. 19-CV-06228, 2020 WL 12769053, at *2 (N.D. Cal. Apr. 24, 2020). The Court should decline to take judicial notice of these documents because the documents were "not publicly filed [;] the contents of the document[s] are disputed; and [because] the Court cannot confidently conclude the documents' accuracy cannot reasonably be questioned." *Id.* Because these documents are not referenced or relied upon in the FAC, nor are they judicially noticeable, the Court should disregard them.

Second, R2 Building seeks judicial notice of R2 Building's Statement of Information filed with the Secretary of State on March 11, 2026 (Exhibit 5), which the Court should also deny. R2 Building offers this document to show that R2 Building has "five members or managers." Motion at 15. This goes beyond the permissible scope of judicial notice of Secretary of State filings. *See Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*, 212 F. Supp. 3d 816, 823 (N.D. Cal. 2016) (declining

---

[3] Delaware law applies, making the case on which R2 Building relies for its argument relating to "superficial indicia of interrelatedness"—*Pacific Gulf Shipping*—irrelevant here. And, significantly, *Pacific Gulf* is a ***summary judgment*** opinion and is thus not applicable to the standard required to ***plead*** alter ego. *See Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 898 (9th Cir. 2021) (deciding whether there was enough evidence to survive summary judgment).

[4] Sandstone is confident that it will prevail on the merits upon further discovery, but that is not what is required at the pleading stage.


Case: 26-04037 Doc# 22 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 13 of 24

to "take judicial notice of the truth of other facts contained in [Secretary of State] filings"). And by using this filing in this manner, R2 Building defies its own intended purpose for the filing. *See* Motion at 12 ("R2 Building asks the Court to notice only the fact and dates of those filings, not any disputed fact recited in them." (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–99 (9th Cir. 2018)). Again, the Court should decline to take judicial notice of these documents because "the contents of the document[s] are disputed; and [because] the Court cannot confidently conclude the documents' accuracy cannot reasonably be questioned." *XL Catlin*, 2020 WL 12769053, at *2.

Even if the Court were to take R2 Building's inappropriate evidence under consideration, it fails to show that R2 Building is not the alter ego of RAD Urban. R2 Building's evidence selectively shows the corporate formalities supposedly observed in 2026 only. R2 Building conveniently skips past the stretch of time, covered by the allegations in the FAC, when no corporate formalities were observed—notably, the same stretch of time in which Miller was using R2 Building to shield his and RAD Urban's assets from creditors. Courts consider the relevant time period when deciding whether the requisite corporate formalities were observed. *See, e.g.*, *JPV I L.P. v. Koetting*, 88 Cal. App. 5th 172, 197 (2023) (defendant "did not maintain valid registration in Delaware for most of its relationship with Clear Loan, including during the critical winddown period when the misconduct at issue occurred"). Here, the "critical [] period when the misconduct at issue occurred" spans the years prior to 2026, when, as Sandstone alleges, Miller was transferring assets from RAD Urban to R2 Building, controlling both entities on his own, and using R2 building to avoid creditors. FAC ¶¶ 45–47; *JPV I*, 88 Cal. App. 5th at 197.

R2 Building cannot evade liability by arguing that it had been observing corporate formalities all along. R2 Building offers no evidence that any corporate formalities were observed prior to its 2026 Statement of Information. They were not. A Statement of Information R2 Building filed on March 26, 2025 shows that the sole manager or member of R2 Building was Randall Miller. *See* Declaration of Karan Singh Dhadialla ¶ 3, Exhibit A (Statement of Information filed by R2 Building, LLC on March 26, 2025).[5] It was not until 2026, well after the "critical [] period when the misconduct

[5] To the extent the Court takes judicial notice of R2 Building's Exhibit 5, Sandstone respectfully requests that the Court also take judicial notice of Exhibit A.

at issue occurred" that the other board members first appeared on R2 Building's Statement of Information. *JPV I*, 88 Cal. App. 5th at 197.

R2 Building's judicial admissions further evince Miller's sole control of R2 Building and his use of R2 Building to conduct fraudulent activity. "[U]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (citing *Ferguson v. Neighborhood Hous. Servs. of Cleveland, Inc.*, 780 F.2d 549, 551 (6th Cir. 1986) (internal quotation marks omitted). "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Id.* (citing *In re Fordson Engineering Corp.*, 25 B.R. 506, 509 (Bankr. E.D. Mich. 1982)). As described above, R2 Building admitted in its own complaint against Miller that Miller "had control over all aspects of [R2 Building] and entered into transactions on [R2 Building]'s behalf, used and controlled [R2 Building]'s property, including but not limited to [R2 Building]'s labor, materials, funds, and business opportunities, and had decision-making authority for [R2 Building]." R2 Building Complaint ¶ 66. And it admitted that Miller "was the CEO of [R2 Building], and in that role, he exercised substantial managerial control over [R2 Building]'s operations, finances, labor, materials, and business opportunities, and he owed fiduciary duties of loyalty, candor, and care to [R2 Building]." *Id.* ¶ 8.

Because Sandstone has alleged that R2 Building and RAD Urban have "operated as a single economic entity" at all relevant times and that "an overall element of unfairness or injustice is present," Sandstone has sufficiently pled that R2 Building is RAD Urban's alter ego. *Khoros*, 2020 WL 12655516, at *15.

2. <u>Sandstone Sufficiently Pleads R2 Building is the Successor-in-Interest to RAD Urban.</u>

Sandstone has pled successor liability in two ways. Under Delaware law, a corporation assumes its predecessor's liability in four instances: "(1) the buyer's assumption of liability; (2) de facto merger or consolidation; (3) mere continuation of the predecessor under a different name; or (4) fraud." *Boustead*, 2026 WL 166904, at *3 (citing *AJZN, Inc. v. Yu*, No. 13-149, 2015 WL 331937, at *15 (D. Del. Jan. 26, 2015)). Sandstone has alleged that R2 Building is a mere continuation of RAD

Urban and that it has participated in fraud in connection with RAD Urban.[6]

i. R2 Building is a Mere Continuation of RAD Urban.

Sandstone has unequivocally pleaded that R2 Building is the mere continuation of RAD Urban. Delaware courts recognize a mere continuation where the new entity is "a continuation of 'the same legal entity.'" *Boustead*, 2026 WL 166904, at *4 (citing *Spring Real Est., LLC v. Echo/RT Holdings, LLC*, No. 7994, 2013 WL 6916277, at *5 (Del. Ch. Dec. 31, 2013)). "The 'primary elements' of being the same legal entity include: (1) 'the common identity of the officers, directors, or stockholders of the predecessor and successor corporations,' and (2) 'the existence of only one corporation at the completion of the transfer.'" *Id.* Courts do not require plaintiffs to plead that the original corporation literally no longer exists; rather, it is sufficient to allege that the original corporation "essentially no longer exist[s]." *Monroe v. FTS USA, LLC*, No. CV 25-362, 2026 WL 622263, at *6 (D. Del. Mar. 5, 2026), *report and recommendation adopted*, No. CV 25-362, 2026 WL 792167 (D. Del. Mar. 20, 2026).

The Delaware Superior Court held in *Rajamani v. Revways Corp.* that the plaintiff sufficiently pled mere continuation by alleging (1) that the defendant company's owner "siphon[ed] money … to avoid liabilities…including but not limited to the money owed to the Plaintiffs;" (2) that the defendant's owner "abandoned [the defendant company] and began operating [the alleged successor company];" (3) that the successor company "performs the same work [the defendant company] had;" (4) that the defendant company's owner "was the sole owner, shareholder, and officer of [both companies];" (5) that the defendant company's owner "abandoned [the defendant company] – and began operating [the successor company] – to avoid liabilities associated with [the defendant company]; (6) that [the successor company] now possesses all or most of, [the defendant company]'s

---

[6] R2 Building incorrectly argues that Sandstone does not meet the prerequisite to any successor liability claim under California law because it does not allege that R2 Building acquired all or substantially all of RAD Urban's Assets. Motion at 16. The case on which R2 Building relies for that requirement applies *maritime* law, and R2 Building cites no case law holding that Delaware has such a requirement. *Pac. Gulf Shipping Co.*, 992 F.3d at 897 (holding that maritime law "requires a transfer of all or substantially all of the predecessor's assets"). But, even if it did, R2 Building is wrong about Sandstone's allegations. Sandstone specifically alleges that Miller transferred "significant assets from RAD Urban" to R2 Building and notes that Miller threatened to "put the assets he ***drained*** from RAD Urban" beyond creditors' reach such that RAD Urban would be driven into bankruptcy. FAC ¶¶ 46, 47 (emphasis added). In other words, Sandstone alleges that Miller drained RAD Urban of its assets to the point of bankruptcy (*i.e.*, "substantially all") and transferred them to R2 Building.


Case: 26-04037 Doc# 22 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 16 of 24

assets;" and (7) that the defendant company "does not currently operate any business or own any assets." No. CV N18C-07-196, 2019 WL 169316, at *2 (Del. Super. Ct. Jan. 11, 2019); *see also Anotek, LLC v. Venture Exch., SCS,* No. CV N19C-04-211, 2021 WL 2577604, at *2 n.28 (Del. Super. Ct. June 22, 2021) (listing the *Rajamani* allegations).

The FAC contains numerous allegations that, taken together, sufficiently plead that R2 Building is the mere continuation of RAD Urban. These allegations include that Miller transferred assets from RAD Urban to R2 Building to avoid liabilities (FAC ¶¶ 46–47 (alleging that Miller threatened "to once and for all put the assets he drained from RAD Urban beyond creditors' reach"); that Miller controlled both RAD Urban and R2 Building during the relevant time period (FAC ¶ 45); and that R2 Building now possesses RAD Urban's assets and RAD Urban does not currently operate any business (FAC ¶¶ 27, 46 (alleging RAD Urban is insolvent and RAD Urban "transferred significant assets" from RAD Urban to R2 Building). Sandstone has alleged that because RAD Urban is insolvent and has no assets it "essentially no longer exist[s]." *Monroe*, 2026 WL 622263, at *6; FAC ¶ 27. R2 Building does not dispute this.

Here, too, the Court should decline to consider R2 Building's argument that "the public filings and filings in this Court show that R2 Building and RAD Urban have different members and managers." Motion at 17. As described above, the truth of the content of these documents is not judicially noticeable, and R2 Building inappropriately uses them as evidence at the pleading stage. *XL Catlin*, 2020 WL 12769053, at *2. The documents are also irrelevant, as they do not relate to the relevant time period.

Sandstone has thus pled sufficient facts to support its claim that R2 Building is the continuation of RAD Urban, and it has assumed RAD Urban's liability. *Boustead*, 2026 WL 166904, at *3. The Court should find that Sandstone's claims against R2 Building survive on this basis.

ii. <u>Miller Created R2 Building Fraudulently to Avoid Liability for RAD Urban.</u>

Sandstone has also sufficiently pled that R2 Building was created fraudulently with the purpose of avoiding liability for RAD Urban. *See Boustead*, 2026 WL 166904, at *3. "The fraud exception applies when 'the transaction is entered into fraudulently to escape liability' for the seller's debts." *Id.* (citing *Spring Real Est.*, 2013 WL 6916277, at *4). Sandstone pled Miller's fraudulent activity


Case: 26-04037 Doc# 22 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 17 of 24

involving R2 Building with particularity: Sandstone alleged that Miller and RAD Urban failed to repay Sandstone for a loan, as required by the Guaranty, under which neither Miller nor RAD Urban ever intended to perform, (FAC ¶¶ 1, 25, *see also* FAC ¶¶ 26-49 (additional allegations supporting fraudulent intent)), and, in an effort to escape liability, created R2 Building. *Id.* ¶¶ 45–47. Sandstone alleged specifically that Miller transferred significant assets from RAD Urban to R2 Building, a company at the same location with the same employees, for the purpose of placing his assets beyond creditors' reach. *Id.* And Sandstone alleged that the transfers from RAD Urban to R2 Building deprived RAD Urban of assets against which Sandstone could collect. *Id.* ¶¶ 102, 112. Because R2 Building's existence is in furtherance of Miller and RAD Urban's fraud, R2 Building has assumed its predecessor's liability. *Boustead*, 2026 WL 166904, at *3. Miller, RAD Urban, and R2 Building's fraud thus provides an independent basis for the Court to find successor liability.

3. <u>Sandstone Sufficiently Pleads its Fraud Claims against R2 Building</u>

R2 Building's argument that Sandstone's fraud claims against it fail because they are not pled with sufficient particularity and the alter ego allegations are insufficient is wrong. Federal courts in California consider fraud claims against alter ego defendants sufficiently pled if the "allegations 'imply that the ... Defendants [] are—for all intents and purposes—the same Defendant.'" *C.M. v. Martian Sales, Inc.*, No. 23-CV-06202-AMO, 2026 WL 1195014, at *5 (N.D. Cal. May 1, 2026). "[P]lausible allegations of alter-ego liability generally obviate [the] requirement" to avoid lumping multiple plaintiffs together. *Id.* (citing *United States ex rel. Ginger v. Ensign Grp., Inc.*, No. 815CV00389, 2022 WL 4110166, at *12 (C.D. Cal. Mar. 10, 2022)). Sandstone sufficiently pled claims two and three against R2 Building because Sandstone has pled its fraud claims against Miller and RAD Urban with particularity. FAC ¶¶ 60–67, 70–75. R2 Building does not even attempt to challenge the sufficiency of the fraud allegations as to Miller and RAD Urban and thus concedes that they are validly pled. *See* Motion at 17–19. Sandstone also sufficiently pled its claim that R2 Building is the alter ego of RAD Urban. *See supra* section (IV)(A)(1). Regardless, even without a finding of alter ego or successor liability, the Court should find that by pleading that Miller used R2 Building as an instrument of his fraud, Sandstone has sufficiently pled its participation in that scheme and can be held liable. *See Lennard v. Yeung*, No. CV1009322, 2012 WL 13006214, at *15–17 (C.D. Cal. Feb.


Case: 26-04037 Doc# 22 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 18 of 24

23, 2012) (allowing a fraud claim against a company where the owner and president acted on its behalf and under the doctrine of imputed knowledge). Sandstone has pled that Miller was not only acting on his own behalf, but also on behalf of RAD Urban and R2 Building. FAC ¶¶ 45, 70. This provides an independent basis for the Court to sustain Sandstone's fraud claims against R2 Building.

4. Sandstone Sufficiently Pleads its Aiding and Abetting Fraud Claim

Sandstone has also sufficiently pled that R2 Building aided and abetted Miller and RAD Urban's fraud. To adequately plead aiding and abetting, a plaintiff must plead that the aiding and abetting defendant knew of the other defendant's wrongdoing and illustrate the aiding and abetting defendant's alleged role in the fraudulent scheme. *Marcelos v. Dominguez*, No. C 08-00056, 2008 WL 2788173, at *10 (N.D. Cal. July 18, 2008). Sandstone has done so here. As alleged in the FAC, Miller was responsible for facilitating the fraud while he directed and controlled R2 Building. FAC ¶¶ 45-47, 79-80. R2 Building—through Miller (who also directed and controlled RAD Urban)—was aware of the fraud when Miller transferred assets away from RAD Urban to R2 Building to avoid RAD Urban's debt to Sandstone. *See Lennard* 2012 WL 13006214, at *15–17 (owner and president's knowledge imputed to company). Sandstone also alleges that R2 Building was created for this purpose,[7] and Miller was acting on behalf of both entities to facilitate the scheme. FAC ¶¶ 45–47, 79–80. R2 Building's argument that Sandstone does not plead actual knowledge ignores the fact that, at all times relevant to the complaint, Miller had actual knowledge, which is imputed to R2 Building. *See id.* R2 Building's own judicial admissions show that Miller knowingly used his entities to perpetrate fraud. R2 Building admitted in its adversary complaint that Miller has a pattern of using entities in his control to defraud creditors and eschew his obligations and used R2 Building for this express purpose. *See, supra*, Section II. Sandstone has alleged both that R2 Building had knowledge of Miller and RAD Urban's wrongdoing and that R2 Building participated in actions to defraud Sandstone and other creditors. The Court should thus find that Sandstone has adequately pled its aiding and abetting fraud claims.

[7] The question of whether R2 Building was formed shortly before RAD Urban's obligations under the promissory note was due or shortly after is immaterial. Either way, R2 Building was formed as either the alter ego or a clear continuation of RAD Urban for the purpose of RAD Urban avoiding its obligations.


Case: 26-04037 Doc# 22 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 19 of 24

5. <u>Sandstone Sufficiently Pleads its Fraudulent Transfer Claims.</u>

R2 Building argues that Sandstone needs to plead its fraudulent transfer claims with particularity. But as explained above, Sandstone has sufficiently pled its fraud claims against Miller and RAD Urban, and R2 Building does not challenge the sufficiency of that pleading. *See supra* section IV.A.3. The FAC also alleges that, as part of that fraudulent scheme, Miller caused RAD Urban to transfer its assets to R2 Building to hinder, delay, or defraud its creditors. FAC ¶¶ 45, 46. In evaluating an actual fraudulent transfer claim, "[t]he focus in the inquiry into actual intent is on the state of mind of the [transferor]. … Culpability on the part of the … transferees is not essential." *Plotkin v. Pomona Valley Imps. (In re Cohen)*, 199 B.R. 709, 716–17 (B.A.P. 9th Cir. 1996). Even ignoring that, both Sandstone ***and*** R2 Building have pled that, at the time of the challenged transfers to R2 Building, Miller exercised control over R2 Building such that his knowledge and intent can be imputed to it. FAC ¶ 45; R2 Building Complaint ¶ 8; *see also, e.g.*, *Lennard*, 2012 WL 13006214, at *15–17. Sandstone's allegations regarding Miller's fraudulent scheme and transfers to R2 Building in furtherance thereof thus suffice to plead the "'who, what, where, when, and how' of the misconduct." *Fazio v. Apple, Inc. (In re iPhone 4S Consumer Litig.)*, 637 F. App'x 414, 415 (9th Cir. 2016) (quoting *Cafasso ex. rel. United States v. Gen Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

Sandstone, moreover, also pled constructive fraudulent transfer in the alternative to actual fraudulent transfer. FAC ¶¶ 96, 97, 106, 107. Courts do not require plaintiffs to meet a heightened pleading standard under Rule 9(b) where constructive fraudulent transfer is pled. *See Lachapelle v. Kim*, No. 15-CV-02195, 2015 WL 5461542, at *4 n.2 (N.D. Cal. Sept. 16, 2015) (holding that "a cause of action for *constructive* fraudulent conveyance under California Civil Code § 3439.05 'focuses entirely on the transaction at issue and does not include elements of knowledge, intent, or purpose' and thus does not sound in fraud and may not be subject to Rule 9(b)'s heightened pleading requirements") (emphasis in original). Sandstone's allegations that RAD Urban transferred assets to R2 Building "without receiving reasonably equivalent value in exchange" and that "such transfer(s) occurred while RAD Urban was insolvent or caused RAD Urban to become insolvent" satisfy the pleading requirement for its seventh claim for common law fraudulent transfer and its eighth claim for voidable transfer under the Uniform Voidable Transactions Act. FAC ¶¶ 96–97, 106–107; *see also*


Case: 26-04037 Doc# 22 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 20 of 24

*Sunnyside Dev. Co. LLC v. Cambridge Display Tech. Ltd.*, No. C 08-01780, 2008 WL 4450328, at *9 (N.D. Cal. Sept. 29, 2008) (holding fraudulent transfer sufficiently pled where the plaintiff alleged the debtor transferred assets and "received no (or insignificant) consideration in return"). Accordingly, Sandstone has sufficiently pled its fraudulent transfer claims.

**B. If the Court Believes Sandstone Needs to Provide Additional Allegations, the Court Should Grant Sandstone Leave to Amend.**

In the alternative, Sandstone should be permitted to amend the FAC to plead additional allegations regarding R2 Building's liability, including its status as an alter ego and/or successor-in-interest/continuation of RAD Urban. As an initial matter, Sandstone is not precluded from amending the FAC just because it has done so once before.[8] *Cf.* Motion at 21. Sandstone's previous amendment was by right pursuant to Rule 15 of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 7015, and was done before the Motion was filed and without knowing R2 Building's arguments for why the allegations as to R2 Building were allegedly insufficient. Sandstone is not foreclosed from amending again to cure any alleged deficiencies. "If a court dismisses a complaint, leave to amend should be freely given." *In re CMR Mortg. Fund, LLC*, 416 B.R. 720, 728 (Bankr. N.D. Cal. 2009). Courts grant leave to amend alter ego claims where the plaintiff "may be able to cure [] deficiencies through amendment." *See Boustead*, 2026 WL 166904, at *6.

To the extent the Court deems it necessary, Sandstone can amend the complaint further to, for example, identify the specific employees that RAD Urban and R2 Building shared, the projects that were initiated by RAD Urban and continued by R2 Building, and provide more information about the assets transferred by RAD Urban to R2 Building. Sandstone can also expressly incorporate R2 Building's allegations in its pending complaint against Miller, which establish Miller's near-total control over R2 Building during the relevant period, his use of that control to further his fraudulent schemes, and R2 Building's failure to observe corporate formalities during the relevant period.

And although R2 Building disputes Sandstone's claims on the merits, it has not shown that amendment would be futile. *See Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the

[8] On August 12, 2026, the parties stipulated to extend Sandstone's deadline to file an amended complaint to August 24, 2026. Dkt. No. 9. Sandstone filed the FAC on August 24, 2026. Dkt. No. 12.


Case: 26-04037 Doc# 22 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 21 of 24

complaint could not be saved by amendment."). R2 Building argues that "no amended pleading can put R2 Building's signature on [the Guaranty]," Motion at 20, but Sandstone is not alleging that R2 Building signed the Guaranty. Rather, Sandstone sufficiently alleges that R2 Building has assumed the liability of RAD Urban—who did sign the Guaranty—by way of alter ego and/or successor liability. *See, supra,* sections IV(A)(1), IV(A)(2). R2 Building also argues that Sandstone cannot show alter ego or successor liability as a matter of law because R2 Building was supposedly organized prior to the default. Motion at 20. The exact timing of R2 Building's formation, while suspicious, is not critical to Sandstone's allegations; the relevant allegations, as outlined in greater detail above, are that R2 Building was formed by Miller to perpetuate his scheme to defraud Sandstone and that R2 Building has assumed RAD Urban's liability. *See, supra,* sections IV(A)(1), IV(A)(2). Regardless of the exact date R2 Building was formed, Sandstone has alleged numerous bases for it to be an alter ego and/or successor-in-interest/continuation of RAD Urban. And, as noted, Sandstone can amend to add more allegations relating to any of the claims if deemed necessary by the Court.

Amendment would not be futile, and the Court should grant leave to amend if the FAC is deemed to be insufficient.

## V. CONCLUSION

For the foregoing reasons, this Court should deny R2 Building's Motion to Dismiss Sandstone's claims against R2 Building in the First Amended Complaint or, in the alternative, grant Sandstone leave to amend.

DATED: October 7, 2026

BAKER BOTTS LLP

By: */s/ Cheryl A. Cauley*

Cheryl A. Cauley (Bar #252262)
cheryl.cauley@bakerbotts.com
Karan Singh Dhadialla (Bar #296313)
karan.dhadialla@bakerbotts.com
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300


Case: 26-04037 Doc# 22 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 22 of 24

Ivo Keller (Bar #245909)
ikeller@sflaw.com
Diego B. Flores (Bar #324603)
dflores@sflaw.com
SHARTSIS FRIESE LLP
425 Market Street, Eleventh Floor
San Francisco, CA 94105-2496
Telephone:(415) 421-6500
Facsimile: (415) 421-2922

*Counsel for Plaintiff Sandstone Group, LLC*


Case: 26-04037 Doc# 22 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 23 of 24

## CERTIFICATE OF SERVICE

I hereby certify that, on October 7, 2026, a true and correct copy of Plaintiff Sandstone Group, LLC's Opposition to Defendant R2 Building, LLC's Motion to Dismiss Sandstone's Claims against R2 Building was served by CM/ECF on all counsel of record who have requested service in this Chapter 7 Case. In addition, (1) the filing is available for viewing and downloading via the CM/ECF system, and (2) the CM/ECF system will send notification of this filing to all attorneys of record who have registered for CM/ECF updates.

*/s/ Cheryl A. Cauley*
Cheryl A. Cauley


Case: 26-04037 Doc# 22 Filed: 10/07/26 Entered: 10/07/26 18:05:50 Page 24 of 24