**HOLLAND & KNIGHT LLP**
Robert J. Labate (SBN 313847)
Email: robert.labate@hklaw.com
Sarah A. Marsey (SBN 297911)
Email: sarah.marsey@hklaw.com
560 Mission Street, Suite 1900
San Francisco, CA 94105
Phone: (415) 743-6900
Fax: (415) 743-6910

Andrew M. Cummings (SBN 305081)
Email: andrew.cummings@hklaw.com
4675 MacArthur Court, Suite 900
Newport Beach, California 92660
Telephone: 949-833-8550
Facsimile: 949-833-8540

*Attorneys for Defendant R2 Building, LLC*

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| In re:<br><br>Randall David Miller<br><br>Debtor. | Lead Case No.: 4:26bk40698<br><br>Chapter 7<br><br>Adv. No.: 26-04037<br><br>**DEFENDANT R2 BUILDING, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS SANDSTONE GROUP, LLC'S CLAIMS AGAINST R2 BUILDING, LLC PURSUANT TO RULES 7009 AND 7012 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE** |
| SANDSTONE GROUP, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>RANDALL MILLER, an individual; RAD URBAN INC., a Delaware corporation; | Hearing date: October 21, 2026<br>Time: 10:30 a.m.<br>Place: United States Bankruptcy Court<br>Courtroom 220<br>1300 Clay Street<br>Oakland, CA 94612 |



Case: 26-04037 Doc# 23 Filed: 10/14/26 Entered: 10/14/26 18:44:14 Page 1 of 20

ROBERT MILLER, individually and in his capacity as trustee of the 63 Holdings Trust; 63 REALTY HOLDINGS, LLC, a Wyoming limited liability company; ALEXIS MILLER, an individual; R2 BUILDING, LLC, a Delaware limited liability company; R2 BUILDING INC., a Delaware corporation; MICHAEL G. KASOLAS, only in his capacity as Chapter 7 Trustee; and DOES 1-20, inclusive,

Defendants.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910

## Table of Contents

Page

I. INTRODUCTION .......... 1
II. ARGUMENT .......... 1
A. Sandstone Fails to Sufficiently Plead Alter Ego Liability .......... 2
1. The FAC's alter ego allegations lack specificity. .......... 2
2. The FAC does not allege injustice arising from R2 Building's use of the corporate form. .......... 5
B. The FAC Fails to Plead Successor Liability .......... 6
C. The FAC Fails to Plead Mere Continuation. .......... 6
D. The FAC Fails to Plead Fraud With Particularity. .......... 8
E. R2 Building's Complaint Against Miller Cannot be Considered and, Even If Considered, Defeats Sandstone's Theories. .......... 9
F. The Court May Take Judicial Notice of the Fact and Dates of the Secretary of State Filings. .......... 10
G. Sandstone Pleads No Fraud by R2 Building and No Basis to Impute Debtor's Fraud to It. .......... 11
H. Sandstone Pleads No Facts Showing R2 Building Knowingly Aided and Abetted Any Fraud. .......... 12
I. Sandstone Identifies No Transfer from RAD Urban to R2 Building. .......... 13
J. Leave to Amend Should Be Denied or, at Minimum, Narrowly Limited. 14
III. CONCLUSION .......... 15

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Title Ins. Co. v. Lacelaw Corp.*,
861 F.2d 224 (9th Cir. 1988) ....................9

*Anotek, LLC v. Venture Exch., SCS*,
No. CV N19C-04-211, 2021 WL 2577604 (Del. Super. Ct. June 22, 2021)....................7, 8

*Bhatia v. Silvergate Bank*,
725 F. Supp. 3d 1079 (S.D. Cal. 2024)....................2, 13

*Boustead Sec., LLC v. CP BF BidCo, LLC*,
No. SA CV 25-01981-DFM, 2026 WL 166904 (C.D. Cal. Jan. 15, 2026) ....................3, 8

*Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*,
816 F.3d 1208 (9th Cir. 2016) ....................9

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*,
No. 2022-0378-LWW, 2023 WL 5688392 (Del. Ch. Sept. 5, 2023)....................5, 6, 7

*First Alliance Mortg. Co. v. Lehman Commercial Paper, Inc. (In re First Alliance Mortg. Co.)*,
471 F.3d 977 (9th Cir. 2006) ....................12

*JPV I L.P. v. Koetting*,
88 Cal. App. 5th 172 (2023) ....................11

*Khoros, LLC v. Lenovo (United States), Inc.*,
No. 3:20-CV-03399, 2020 WL 12655516 (N.D. Cal. Oct. 5, 2020) ....................2, 3, 4

*Lachapelle v. Kim*,
No. 15-CV-02195, 2015 WL 5461542 (N.D. Cal. Sept. 16, 2015) ....................14

*Lennard v. Yeung*,
No. CV 10-09322 MMM (AGRx), 2012 WL 13006214
(C.D. Cal. Feb. 23, 2012)....................3, 10, 12, 13, 15

*MacRae v. HCR Manor Care Servs., LLC*,
No. SA CV 14-0715-DOC (RNB), 2017 WL 11480091 (C.D. Cal. Sept. 14, 2017) ....................2, 10, 14

*Magnolia's at Bethany, LLC v. Artesian Consulting Engineers, Inc*,
No. CIV.A. S11C-04013ESB, 2011 WL 4826106
(Del. Super. Ct. Sept. 19, 2011)....................7

*Manichaean Cap., LLC v. Exela Techs., Inc.*,
251 A.3d 694 (Del. Ch. 2021)....2

*Mason v. Network of Wilmington, Inc.*,
No. CIV.A. 19434-NC, 2005 WL 1653954 (Del. Ch. July 1, 2005)....3

*Monroe v. FTS USA, LLC*,
No. CV 25-362, 2026 WL 622263 (D. Del. Mar. 5, 2026), *report and recommendation adopted*, 2026 WL 792167 (D. Del. Mar. 20, 2026)....7, 14

*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
686 F. Supp. 3d 900 (N.D. Cal. 2023)....1, 3, 5, 6, 10, 11

*Nextdoor.com, Inc. v. Abhyanker*,
No. C-12-5667 EMC, 2013 WL 3802526 (N.D. Cal. July 19, 2013)....10

*Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*,
992 F.3d 893 (9th Cir. 2021)....4

*Pro 49 Dev., LLC v. Ness Express 1, LLC*,
No. 2:24-cv-01850-JAM-JDP, 2024 WL 4712389 (E.D. Cal. Nov. 7, 2024)....4, 11

*Processpoint Invs. Ltd. v. Pharma Funding LLC*,
No. 8:24-cv-01593-JVS-DFM, 2025 WL 1420921 (C.D. Cal. Mar. 28, 2025)....4

*Rajamani v. Revways Corp.*,
C.A. No. N18C-07-196 FWW, 2019 WL 169316 (Del. Super. Ct. Jan. 11, 2019)....7, 8

*Smith v. Wells Fargo Bank, N.A.*,
809 F. Supp. 3d 922 (N.D. Cal. 2025)....2, 8, 14

*Sunnyside Dev. Co. LLC v. Cambridge Display Tech. Ltd.*,
No. C 08-01780 MHP, 2008 WL 4450328 (N.D. Cal. Sept. 29, 2008)....14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....1

*Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*,
212 F. Supp. 3d 816 (N.D. Cal. 2016)....11

**Rules**

Fed. R. Civ. P. 8....14

Fed. R. Civ. P. 9(b)....8, 12, 14, 15

Fed. R. Civ. P. 12(b)(6)....1

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910

## I. INTRODUCTION

Sandstone Group, LLC's ("**Sandstone**") Opposition confirms what R2 Building, LLC's ("**R2 Building**") Motion showed—the First Amended Complaint ("**FAC**") does not allege sufficient facts to support its claims against R2 Building under any theory.

Sandstone relies on authorities that either dismissed materially identical allegations or rested on detailed facts, such as specific transfers, dollar amounts, commingled bank accounts, and abandoned books. The FAC is devoid of such facts.

Unable to point to facts in the FAC, Sandstone turns to supposed "judicial admissions." It argues that R2 Building's complaint against Randall Miller ("**Miller**" or "**Debtor**") admits that R2 Building is RAD Urban Inc.'s alter ego. It does not. R2 Building's complaint describes Miller's misuse of his control over R2 Building. Those allegations say nothing about any relationship between R2 Building and RAD Urban, and they cannot fill the gaps in Sandstone's own pleading.

Sandstone offers to amend. But the facts it proposes to add would not cure the FAC's defects, so amendment would be futile.

The Court should grant the Motion. It should dismiss with prejudice any claim against R2 Building resting on the Guaranty or on R2 Building's formation after the default, and it should dismiss the remaining claims against R2 Building without leave to amend or, at minimum, with leave narrowly limited as set out in Section J.

## II. ARGUMENT

The Opposition does not identify any well-pleaded fact about R2 Building's own conduct in the FAC. A court ruling on a Rule 12(b)(6) motion may not look beyond the complaint to new facts asserted in an opposition brief. *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 686 F. Supp. 3d 900, 912 (N.D. Cal. 2023) (citing *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)). On a Rule 12(b)(6) motion the Court may consider the complaint in its entirety, documents incorporated by reference, and matters subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Although courts accept factual allegations in a complaint as true when determining the

plausibility of a complaint, "courts do not 'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Smith v. Wells Fargo Bank, N.A.*, 809 F. Supp. 3d 922, 934 (N.D. Cal. 2025) (quoting *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)); *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1100 (S.D. Cal. 2024) (noting courts are "not bound to accept as true a legal conclusion couched as a factual allegation" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

### A. Sandstone Fails to Sufficiently Plead Alter Ego Liability.

There is no dispute that R2 Building did not sign the Guaranty – R2 Building did not exist until much later. Thus, Sandstone's allegations against R2 Building rest solely on pleading derivative liability (Opp. at 16) which, under Delaware law, requires a showing that "(1) the companies are 'operated as a single economic entity' and (2) an 'overall element of unfairness or injustice is present.'" *Khoros, LLC v. Lenovo (United States), Inc.*, No. 3:20-CV-03399, 2020 WL 12655516, at *15 (N.D. Cal. Oct. 5, 2020) (citing *In re Moll Indus., Inc.*, 454 B.R. 574, 587 (Bankr. D. Del. 2011).

#### 1. The FAC's alter ego allegations lack specificity.

Delaware courts pierce the corporate form only in the "exceptional case," and the plaintiff must allege facts showing "exclusive domination and control to the point that [the entity] no longer has legal or independent significance of its own." *MacRae v. HCR Manor Care Servs., LLC*, Case No. SA CV 14-0715-DOC (RNB), 2017 WL 11480091, at *5 (C.D. Cal. Sept. 14, 2017) (citing *Winner Acceptance Corp. v. Return on Capital Corp.*, No. CIV.A. 3088-VP, 2008 WL 5352063, at *5 (Del. Ch. Dec. 23, 2008)); *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706 (Del. Ch. 2021) (noting veil-piercing is available in only "exceptional cases" and "Delaware public policy disfavors disregarding the separate legal existence of business entities" (quoting *Paul Elton, LLC v. Rommel Del., LLC*, 2020 WL 2203708, at *14 (Del. Ch. May 7, 2020))). The requisite fraud "must come from an inequitable use of the corporate form itself as a sham, and not from the underlying claim." *MacRae*, 2017 WL 11480091, at *5 (quoting *EBG Holdings LLC v. Vredezicht's Gravenhage*, 2008 WL 4057745, at *12 (Del. Ch. Sept. 2, 2008)).

The FAC pleads insufficient facts to allege that R2 Building and RAD Urban operated as a single economic unit. Its alter ego allegations consist of a single sentence: the R2 entities "bear the

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910

'R2 Building' name, share the same address as RAD Urban's principal place of business, employ many of the same people, and are under Debtor's control." FAC ¶ 45. Sandstone also alleges that Debtor "transferred significant assets from RAD Urban to them." *Id.* ¶ 46. The Opposition stretches these words into the "same people" working on the "same projects." Opp. at 1. The FAC says only "many of the same people," and it says nothing about projects. Sandstone's own authorities hold that allegations like these do not plead alter ego liability.

For example, in *Motul S.A. v. USA Wholesale Lubricant, Inc.*, the court found that allegations of a shared location, interchangeable names, commingled assets, and common ownership and control did not plead an alter ego claim, explaining that "[t]otal ownership and shared management personnel are insufficient" and that such allegations require "more factual specificity." 686 F. Supp. 3d 900, 912 (N.D. Cal. 2023)(quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015); then quoting *Payoda, Inc. v. Photon Infotech, Inc.*, No. 14-cv-04103-BLF, 2015 WL 4593911, at *1 (N.D. Cal. July 30, 2015)).

Similarly, in *Lennard v. Yeung*, the court dismissed alter ego allegations asserting a shared address and the owner's transfer of money among entities. No. CV 10–09322 MMM (AGRx), 2012 WL 13006214, at *9–12 (C.D. Cal. Feb. 23, 2012). Such facts said nothing about how funds were distributed or how formalities were ignored, noting that "allegations regarding these subjects, however, are recitations of the legal standard for [alter] ego liability." *Id.* at *9.

Generic statements such as operating as a "single economic entity and with complete domination and control" are legal conclusions, not factual allegations. *Boustead Sec., LLC v. CP BF BidCo, LLC*, No. SA CV 25-01981-DFM, 2026 WL 166904, at *6 (C.D. Cal. Jan. 15, 2026) (dismissing a veil-piercing claim under Delaware law because the plaintiff alleged legal conclusions, not facts); *see also Mason v. Network of Wilmington, Inc.*, No. CIV.A. 19434-NC, 2005 WL 1653954, at *4 (Del. Ch. July 1, 2005) (finding that a common sole shareholder, the same office building, and the same phone number, without more, do not establish alter ego liability).

Sandstone's own authorities confirm this well-established principle. In *Khoros, LLC,* (Opp. at 5) the court found the plaintiff had "not alleged any facts that, if true, would demonstrate that [the

Case: 26-04037 Doc# 23 Filed: 10/14/26 Entered: 10/14/26 18:44:14 Page 8 of 20

defendant] existed separately from the other entities to perpetrate fraud or similarly unjust activities" and dismissed an alter ego claim because the plaintiff had not shown "[t]hat the corporate form itself enables fraud or sufficiently unjust activity." 2020 WL 12655516, at *15–17. *Khoros* also explained that the injustice required to support alter ego liability "is not a generalized notion of unfairness" but "an activity that amounts to fraud." *Id.* at *15.

Other cases Sandstone cites show what the FAC is missing. To survive a motion to dismiss, a complaint must plead specific facts supporting an alter ego claim. In *Processpoint Invs. Ltd. v. Pharma Funding LLC*, specific allegations saved the claim: the entities jointly owned an interest in another entity through their own companies; they functioned as a single enterprise under one brand; they shared an office, personnel, and an attorney; and they controlled the same bank accounts. Case No. 8:24-cv-01593-JVS-DFM, 2025 WL 1420921, at *6–9 (C.D. Cal. Mar. 28, 2025). The FAC alleges none of this.

In *Pro 49 Dev., LLC v. Ness Express 1, LLC*, the complaint alleged a host of specific facts: undercapitalization and insolvency; written admissions that the individuals could not perform under the lease; statements that the lease was abandoned because regulations made it too expensive; statements that the entity was a shell; intermingled business affairs; and missed lease payments. No. 2:24-cv-01850-JAM-JDP, 2024 WL 4712389, at *2-5 (E.D. Cal. Nov. 7, 2024). Sandstone's FAC lacks that specificity.

Sandstone dismisses *Pacific Gulf* as a maritime summary judgment decision rather than a Delaware case. Opp. at 7 n.3, 10 n.6. To be sure, the successor holding applied maritime law. But the Ninth Circuit affirmed dismissal of the successor claim on the pleadings, and its alter ego analysis confirms that overlapping principals and shared offices, "absent any evidence suggesting wrongdoing, do not reasonably justify a finding of alter-ego." *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897-900, 900 (9th Cir. 2021) (collecting cases). Delaware law recognizes the same principle: superficial overlap does not make one entity the alter ego of another.

//

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910

**2. The FAC does not allege injustice arising from R2 Building's use of the corporate form.**

Sandstone argues that a short, general statement that the corporation "was so used" to perpetrate injustice satisfies the second alter ego element under Delaware law. Opp. at 6. But the only "use" the FAC alleges is the underlying debt and Debtor's alleged fraud in inducing the 2019 loan. The FAC itself alleges that R2 Building Inc. was formed in 2020 and R2 Building LLC in 2021. FAC ¶ 45. Under any version of the formation dates, neither entity existed in March 2019, when the Guaranty was signed. Entities that *did not yet exist* could not have taken part in that fraud.

"[T]he fraud or injustice must, however, 'come from an inequitable use of the corporate form itself as a sham, and not from the underlying claim'"; "[t]o hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping." *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, No. 2022-0378-LWW, 2023 WL 5688392, at *6 (Del. Ch. Sept. 5, 2023)(quoting *EBG Hldgs. LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745, at *12 (Del. Ch. Sept. 2, 2008); then quoting *Mobil Oil Corp. v. Linear Films, Inc*., 718 F. Supp. 260, 268 (D. Del. 1989)). The FAC does not describe how R2 Building was used to further any inequitable conduct when R2 Building did not exist. Without specific allegations of unjust acts, the FAC does not satisfy, or even address, the fraud element under Delaware law.

Sandstone's reliance on Delaware law does not help it. Delaware has not adopted horizontal veil-piercing or enterprise liability. *Cleveland-Cliffs*, 2023 WL 5688392, at *7. So Sandstone cannot reach R2 Building, based on its arguments, an alleged sister entity, merely by alleging that it and RAD Urban share a common controller.

The FAC's sole allegation of unjust behavior is that R2 Building received and transferred assets. FAC ¶ 46. But the FAC does not allege what assets were received or transferred, when any transfer happened, how any transfer was fraudulent as to Sandstone when it entered the underlying transaction, or how later-formed R2 Building entities injured Sandstone. How did R2 Building inequitably use its corporate form? The FAC never says.

Finally, Sandstone offers to plead the identities of shared employees, continued projects, and "more information about the assets transferred." Opp. at 15. That offer concedes the FAC lacks those

Case: 26-04037 Doc# 23 Filed: 10/14/26 Entered: 10/14/26 18:44:14 Page 10 of 20

facts now, and the Court cannot consider them on this motion. *Motul,* 686 F. Supp. 3d at 912.

**B. The FAC Fails to Plead Successor Liability.**

Under Delaware law, "when one company sells or otherwise transfers all of its assets to another company, the buyer generally is not responsible for the seller's liabilities." *Cleveland-Cliffs*, 2023 WL 5688392, at *15 (quoting *Ross v. Desa Hldgs. Corp*., 2008 WL 4899226, at *4 (Del. Super. Sept. 30, 2008)). The narrow exceptions, assumption of liability, de facto merger, mere continuation, or fraud, each require specific factual predicates. *Id*.

The FAC pleads no such predicates. It alleges only that Debtor transferred "significant assets" to the R2 entities and that Debtor made a 2023 "threat" to drive RAD Urban into bankruptcy. FAC ¶¶ 45–47. Without specific facts, the claim fails.

The Opposition asserts that RAD Urban was "drained . . . to the point of bankruptcy (*i.e.*, 'substantially all')." Opp. at 10–11, 10 n.6. That allegation does not appear in the FAC and cannot be considered. *Motul*, 686 F. Supp. 3d at 912. And even if considered, it is a conclusion that alleges no harm caused by R2 Building.

Curiously, the Opposition attempts to twist R2 Building's motion to dismiss into an admission of liability against Miller and RAD Urban. "R2 Building does not even attempt to challenge the sufficiency of the fraud allegations as to Miller and RAD Urban and thus concedes that they are validly pled." Opp. at 12. The absurdity of such statement is self-evident.

R2 Building has no standing to challenge, and does not challenge, claims asserted against other defendants. The Motion addresses whether the FAC pleads that R2 Building is RAD Urban's alter ego or successor. Nothing in the Motion or this Reply admits or supports Sandstone's claims against anyone else.

**C. The FAC Fails to Plead Mere Continuation.**

The mere continuation exception to the Delaware presumption that asset buyers are not liable for the seller's liabilities requires consideration of "the common identity of the officers, directors, or stockholders of the predecessor and successor corporations, and the existence of only one corporation at the completion of the transfer." *Cleveland-Cliffs*, 2023 WL 5688392, at *16 (quoting *Spring Real*

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910



Case: 26-04037 Doc# 23 Filed: 10/14/26 Entered: 10/14/26 18:44:14 Page 11 of 20

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910

*Est., LLC v. Echo/RT Hldgs., LLC*, C.A. No. 7994, 2013 WL 6916277, at *5 (Del. Ch. Dec. 31, 2013)). Delaware courts construe the exception "very narrowly." *Id.*

Cases Sandstone cites show how far the FAC falls short. In *Monroe v. FTS USA*, *LLC*, the complaint pleaded mere continuation with specific allegations: the entities performed the same operations; the new entity continued the same business; the defendants shared a CEO, CFO, executive chairman, and general counsel; the judgment defendants no longer existed; and the judgment defendants had no bank accounts, employees, or assets. *Monroe v. FTS USA, LLC*, No. CV 25-362, 2026 WL 622263, at *5-6 (D. Del. Mar. 5, 2026), *report and recommendation adopted*, No. CV 25-362, 2026 WL 792167 (D. Del. Mar. 20, 2026). The FAC contains no such allegations.

And in *Magnolia's at Bethany, LLC v. Artesian Consulting Engineers, Inc.*, the court explained that "[m]ere continuation requires that the new company be the same legal entity as the old company." No. CIV.A. S11C-04013ESB, 2011 WL 4826106, at *3 (Del. Super. Ct. Sept. 19, 2011). "The test is not the continuation of the business operation; rather, it is the continuation of the corporate entity.'" *Id.* (citing *Fountain v. Colonial Chevrolet Co.,* 1988 WL 40019, at *7 (Del.Super. April 13, 1988)). *Magnolia's* also lists the elements of a de facto merger, which include the transfer of *all of the entity's assets* to another. *Id.* (citing *Drug, Inc. v. Hunt,* 168 A. 87, 96 (Del.1933)).

The Sandstone FAC contains none of these allegations. It identifies no transfer, no date, no value, and no common officers, directors, or members beyond "bear the 'R2 Building' name, share the same address as RAD Urban's principal place of business, employ many of the same people, and are under Debtor's control." FAC ¶ 45.

Sandstone relies on *Rajamani*, which is readily distinguishable. The allegations Sandstone quotes come from the *Rajamani* complaint as quoted in a footnote in *Anotek*, and both decisions addressed whether plaintiffs made a prima facie showing of personal jurisdiction and discussed successor liability. Opp. at 10-11 (citing *Anotek, LLC v. Venture Exch.,* SCS, No. CV N19C-04-211, 2021 WL 2577604, at *2 n.28 (Del. Super. Ct. June 22, 2021); *Rajamani v. Revways Corp.*, C.A. No. N18C-07-196 FWW, 2019 WL 169316, at *2 (Del. Super. Ct. Jan. 11, 2019)).

The facts alleged in *Rajamani*, and recited in the *Anotek* footnote, were specific and contrast

sharply with the general conclusions alleged by Sandstone. The Sandstone FAC alleges no specific facts, which taken together, allege that R2 Building is a continuation of RAD Urban.

For instance, the *Rajamani* complaint alleged that the new entity possessed all or most of the former entity's assets, "which by-in-large consist of goodwill, propriety information such as draft agreements, customer lists, and other business contracts, and inexpensive computer-related equipment." *Anotek*, 2021 WL 2577604, at *2–3 & n.28. The FAC alleges only that "significant assets" were transferred, without ever identifying them. FAC ¶ 46. Nor does Sandstone allege that only one corporation remained after any transfer. R2 Building disputes Sandstone's claim that RAD Urban no longer exists. RAD Urban is a named defendant represented by its own counsel, and it has kept its Secretary of State filings current from 2018 through 2025. *See* Non-Debtor Defendants' Motion to Dismiss, Dkt. No. 18; R2 Building RJN [Dkt. No. 16-2], Exs. 8, 9. FAC ¶ 27, on which Sandstone relies, addresses RAD Urban's insolvency in 2019, not its dissolution.

**D. The FAC Fails to Plead Fraud With Particularity.**

The fraud exception to the Delaware presumption that asset buyers are not liable for seller's liabilities requires factual allegations showing the transaction was "entered into fraudulently to escape liability," pleaded with Rule 9(b) particularity. *Boustead*, 2026 WL 166904, at *4 (citing *Spring Real Est., LLC v. Echo/RT Holdings, LLC*, C.A. No. 7994, 2013 WL 6916277, at *5 (Del. Ch. Dec. 31, 2013)).

In *Boustead*, the court found allegations "largely conclusory" even though the plaintiff alleged that new entities were formed shortly before an asset sale, that the transferor's officers signed the bill of sale, and that personnel transitioned to the new entities, because the plaintiff did not allege "more specific allegations about the value of the assets sold, the amount of debt owed, the price paid . . . , or the procedures." *Id.* at *4–5.

The Sandstone FAC fails to contain factual allegations as to the specific fraud allegedly committed by R2 Building. The FAC alleges no facts to support "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Smith*, 809 F. Supp. 3d at 934 (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910


Case: 26-04037 Doc# 23 Filed: 10/14/26 Entered: 10/14/26 18:44:14 Page 13 of 20

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910

Cir. 1997)).

As stated in the Motion, the alleged fraud was committed by Miller. The FAC does not allege that R2 Building was involved in the NGI Note or the Guaranty transaction. Sandstone's only theory for imputing the fraud to R2 Building is a conclusory allegation that it is the alter ego or successor-in-interest of RAD Urban, but, as set forth above, the FAC fails to plead sufficient facts to support either theory.

**E. R2 Building's Complaint Against Miller Cannot be Considered and, Even If Considered, Defeats Sandstone's Theories.**

Sandstone argues that allegations in R2 Building's own adversary complaint against Debtor are "judicial admissions" that R2 Building is RAD Urban's alter ego. Opp. at 2–3, 9, 13. Those allegations are that Debtor, as CEO, "had control over all aspects of" R2 Building, owed it fiduciary duties, and diverted its labor, materials, and funds to his personal residence and to a competing business, Medo USA Inc. They do not help Sandstone, for three reasons.

**First**, as Sandstone's own legal authority explains, a judicial admission *binds only the party that made it as to a factual assertion in its own pleading*, withdrawing that fact from issue in that case. *Am. Title Ins. Co. v. Lacelaw Corp*., 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." (citing *White v. Arco/Polymers, Inc*., 720 F.2d 1391, 1396 (5th Cir. 1983); *In re Fordson Engineering Corp.*, 25 B.R. 506, 509 (Bankr. E.D. Mich. 1982))). Allegations made by R2 Building in its complaint against the Debtor do not constitute judicial admissions in this case.

The judicial admission doctrine "is inapplicable because the alleged admission was made in a separate case from the present action." *Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1213 (9th Cir. 2016) (citing *Universal Am. Barge Corp. v. J–Chem, Inc*., 946 F.2d 1131, 1142 (5th Cir. 1991); *Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elecs. Corp*., 518 F.2d 913, 932 n.71 (9th Cir. 1975), *disapproved on other grounds by California v. Am. Stores Co.*, 495 U.S. 271, 277–78 (1990))). Nothing in either *American Title* or *Caffe Vergnano* permits a plaintiff to import allegations from a different adversary proceeding to fill gaps in its own complaint. *See also*

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910

*Nextdoor.com, Inc. v. Abhyanker*, No. C-12-5667 EMC, 2013 WL 3802526, at *8 (N.D. Cal. July 19, 2013) ("While an admission in a prior lawsuit may be admissible *evidence* in a later proceeding . . . it is not a binding *admission,* and thus does not control a motion to dismiss." (internal citation omitted)).

**Second**, R2 Building's allegations do not concern its relationship with RAD Urban. Rather R2 Building's allegations are directed against Miller, describing his role as R2 Building's initial CEO and his fraudulent conduct which harmed R2 Building.

An officer's control of a company is ordinary corporate governance; "[t]otal ownership and shared management personnel are insufficient to establish the requisite level of control." *Motul*, 686 F. Supp. 3d at 912 (quoting *Ranza*, 793 F.3d at 1073); *see also Lennard*, 2012 WL 13006214, at *10 n.93 ("[A] corporate officer commonly directs the activities of his corporation." (citing *Katzir's Floor and Home Design, Inc. v. M–MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004))). The Opposition tries to borrow R2 Building's allegations of Miller's fraud to supply the facts missing from the FAC. The attempt only confirms that the FAC lacks them.

**Third**, even if considered, R2 Building's allegations against Miller cut against Sandstone. R2 Building alleges that, by diverting its resources to himself and to a competitor, Miller acted adversely to R2 Building's interests and breached his fiduciary duties to it. When corporate officers act "adversely" to a corporation, "their misconduct cannot be attributed to the corporation." *Lennard,* 2012 WL 13006214, at *16 (citing *F.D.I.C. v. O'Melveny & Myers*, 969 F.2d 744, 750 (9th Cir. 1992) *rev'd on other grounds*, 512 U.S. 79 (1994), *opinion adopted in part*, 61 F.3d 17 (9th Cir. 1995)). An entity victimized by its former officer's self-dealing is not a "sham" existing "for no other purpose than as a vehicle for fraud." *MacRae*, 2017 WL 11480091, at *5 (citing *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183–84 (Del. Ch. 1999)). The Court need not reach this point. But if it considers these allegations, they defeat Sandstone's alter ego theory.

**F. The Court May Take Judicial Notice of the Fact and Dates of the Secretary of State Filings.**

Sandstone's own authorities take judicial notice of Secretary of State filings. *Motul*, 686 F.

Case: 26-04037 Doc# 23 Filed: 10/14/26 Entered: 10/14/26 18:44:14 Page 15 of 20

Supp. 3d at 909-10; *Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*, 212 F. Supp. 3d 816, 823 (N.D. Cal. 2016); *Pro 49*, 2024 WL 4712389, at *2 (taking judicial notice of a Delaware certificate of formation). R2 Building relies on these filings for the facts of filing and formation—not for the truth of disputed contents. That is exactly what *Theta Chi* permits. 212 F. Supp. 3d at 823 (noticing existence of filings and the fact of dissolution).

In any event, the Motion does not depend on the challenged exhibits.[1] Sandstone's claims fail on the face of the FAC. Nor does *JPV I L.P. v. Koetting*, 88 Cal. App. 5th 172, 197 (2023), help Sandstone because the case did not involve a pleading challenge, and the FAC pleads no facts about R2 Building's formalities during any period, "critical" or otherwise.

Based on the foregoing, and the arguments raised in the Motion, the Court should dismiss the First Claim for Relief as to R2 Building because Sandstone has failed to adequately plead its claim under any theory.

### G. Sandstone Pleads No Fraud by R2 Building and No Basis to Impute Debtor's Fraud to It.

Sandstone does not dispute that the FAC alleges no misrepresentation, omission, or communication by R2 Building. Instead, Sandstone argues that the fraud claims survive because they are pled against Debtor and RAD Urban and R2 Building is their alter ego. Opp. at 12. But the FAC's fraud claims against R2 Building rest solely on the allegation that the R2 entities are "alter egos, continuations, and/or successors-in-interest to RAD Urban." FAC ¶¶ 12, 55, 68, 76. Because those theories fail, so do the Second and Third Claims.

RAD Urban is not a party to this Motion. It is a named defendant, separately represented, and a separate, existing entity. *See* Non-Debtor Defendants' Motion to Dismiss, Dkt. 18; R2 Building RJN, Exs. 8, 9. R2 Building had no basis to contest claims asserted directly against RAD Urban.

*C.M. v. Martian Sales, Inc.* does not change the result. That decision held that plausible alter ego allegations may excuse group pleading. Opp. at 12 (citing *C.M. v. Martian Sales, Inc.*, No. 23-CV-06202-AMO, 2026 WL 1195014, at *5 (N.D. Cal. May 1, 2026)). Here, alter ego is not plausibly

[1] To the extent the Court does not take judicial notice of the facts within R2 Building's Exhibits 5-7, Sandstone does not contest the admission of Exhibits 1-4 and 8-9.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910



Case: 26-04037 Doc# 23 Filed: 10/14/26 Entered: 10/14/26 18:44:14 Page 16 of 20

alleged, so Rule 9(b)'s requirement that each defendant be informed of its own role applies with full force.

Sandstone's fallback, that R2 Building can be liable because Debtor used it as an "instrument" of his fraud, misreads *Lennard*. Opp. at 12–13. *Lennard* dismissed the alter ego theory as conclusory. 2012 WL 13006214, at *12. It allowed fraud claims against the corporate defendants only on an ostensible authority theory, because the individual was alleged to be their owner and president and their "sole representative during their transactions" with the counterparty in the very transactions at issue. *Id.* at *16–17.

Here, the alleged fraud occurred in March 2019, when Miller allegedly induced the NGI loan and signed the Guaranty for himself and RAD Urban; it was discovered in 2023. FAC ¶¶ 17-19, 25, 59–64, 70, 73. Under any version of the formation dates, R2 Building did not yet exist. The FAC does not allege that Debtor purported to act for R2 Building in that transaction, or that R2 Building did anything to make Sandstone believe he did. The FAC's boilerplate allegation that every defendant was every other defendant's agent, FAC ¶ 12, is a conclusion that pleads no facts. Imputation requires facts showing the agent acted within the scope of his authority for the principal; "[w]hile the existence of an agency relationship is a factual matter, a complaint must plead facts indicating the existence of such a relationship to survive a motion to dismiss." *Lennard*, 2012 WL 13006214, at *15.

Based on the foregoing, and the arguments raised in the Motion, the Court should dismiss the Second Claim for Relief and Third Claim for Relief as to R2 Building.

**H. Sandstone Pleads No Facts Showing R2 Building Knowingly Aided and Abetted Any Fraud.**

Sandstone defends the aiding and abetting claim solely by imputing Miller's knowledge to R2 Building. Opp. at 12–14. As the Motion explained, aiding and abetting fraud requires facts showing that the defendant had actual knowledge of the specific primary wrong and gave substantial assistance to it. *First Alliance Mortgage Co. v. Lehman Commercial Paper, Inc. (In re First Alliance Mortg. Co.),* 471 F.3d 977, 993-95 (9th Cir. 2006). The FAC's theory is circular. Sandstone pleads this claim only "in the event the R2 Entities . . . are found not to be alter egos, continuations, or successors-in-interest of RAD Urban," FAC ¶ 77, yet alleges that R2 Building

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910

knew "the R2 Entities" were committing the fraud. *Id.* ¶ 79. In other words, R2 Building aided itself. And R2 Building did not exist when the March 2019 fraud occurred, so it could not have assisted it.

Imputation also fails on its own terms. The "knowledge" Sandstone seeks to impute is Miller's knowledge of a scheme to strip RAD Urban and divert assets to himself and his family. FAC ¶¶ 46–48. An officer's knowledge is not imputed where he acts adversely to the corporation. *Lennard*, 2012 WL 13006214, at *16. Even if R2 Building's complaint were considered, it alleges exactly that: Debtor acted adversely to R2 Building. And the FAC itself pleads no facts that would support imputing Debtor's knowledge to R2 Building.

Stripped of imputation, the FAC alleges only that the R2 entities "knew" of the fraud and gave "substantial assistance" by "actively assisting Debtor in his attempts to obscure assets from creditors." FAC ¶¶ 79–80. Those are conclusory recitals of the elements and are not specific allegations of R2 Building's fraud.

Sandstone's own authority requires the plaintiff to allege the defendant's knowledge and "illustrate the aiding and abetting defendant's alleged role in the fraudulent scheme." Opp. at 13 (citing *Marcelos v. Dominguez*, 2008 WL 2788173, at *10 (N.D. Cal. July 18, 2008)). The FAC identifies no act by R2 Building and no specific fact R2 Building knew. It recites the elements and nothing more. *Cf. Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1113-24 (S.D. Cal. 2024) (finding aiding and abetting sufficiently pleaded where specific facts supported the defendant's knowledge and substantial assistance).

Based on the foregoing, and the arguments raised in the Motion, the Fourth Claim for Relief should be dismissed as to R2 Building.

**I. Sandstone Identifies No Transfer from RAD Urban to R2 Building.**

Sandstone argues that its actual fraudulent transfer claims are sufficient because the transferor's intent controls and "[c]ulpability on the part of the . . . transferees is not essential." Opp. at 14 (quoting *Plotkin v. Pomona Valley Imps. (In re Cohen)*, 199 B.R. 709, 716–17 (B.A.P. 9th Cir. 1996)). But the Motion does not turn on R2 Building's intent; it turns on Sandstone's failure to

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910


Case: 26-04037 Doc# 23 Filed: 10/14/26 Entered: 10/14/26 18:44:14 Page 18 of 20

identify any transfer. Whatever the intent standard, a plaintiff must plead the "who, what, when, where, and how" of the transfer. *Smith*, 809 F. Supp. 3d at 934. Sandstone's reliance on *In re iPhone 4S* for the "who, what, where, when, and how" standard underscores the point. Opp. at 14.

*Lachapelle*, which Sandstone cites, dismissed fraudulent transfer claims against a transferee even though the plaintiffs identified a transfer of "virtually all assets" within a week of a specific date, because the complaint alleged no facts from which the court could infer that the transferee colluded in the scheme and offered only a "conclusory allegation" that the transfers were for less than reasonably equivalent value. 2015 WL 5461542, at *5–6. The FAC here does not even identify a transfer. It alleges only that "RAD Urban transferred assets to others, including the R2 Entities." FAC ¶¶ 96, 106.

Sandstone's constructive fraudulent transfer theory fares no better. Even if Rule 9(b) does not apply, *Lachapelle v. Kim, No.* 15-CV-02195, 2015 WL 5461542, at *4 n.2 (N.D. Cal. Sept. 16, 2015) (constructive claim "may not be" subject to Rule 9(b)). Rule 8 still requires facts, not labels. *Id.* at *2 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Sandstone's own authorities show that transfers must at least be specified. *Sunnyside Dev. Co. LLC v. Cambridge Display Tech. Ltd.*, No. C 08-01780 MHP, 2008 WL 4450328, at *9 (N.D. Cal. Sept. 29, 2008) (finding constructive fraud sufficiently pleaded where the plaintiff alleged "in 2005 the judgment debtor, Opsys Ltd., transferred assets worth more than $10 million to CDT Limited and received no (or insignificant) consideration in return"); *Monroe*, 2026 WL 622263, at *3 (applying Rule 8 and finding notice adequate because the complaint identified "specific transferors, transferees, assets, and timing"). The FAC's formulaic recital that unidentified transfers occurred "without receiving reasonably equivalent value" while RAD Urban was insolvent, FAC ¶¶ 96–97, 106–107, does not tell R2 Building what it supposedly received.

Based on the foregoing, and the arguments raised in the Motion, the Seventh Claim for Relief and Eighth Claim for Relief should be dismissed as to R2 Building.

**J. Leave to Amend Should Be Denied or, at Minimum, Narrowly Limited.**

Leave to amend need not be granted when amendment would be futile. *MacRae*, 2017 WL 11480091, at *2 (citing R*utman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910



Case: 26-04037 Doc# 23 Filed: 10/14/26 Entered: 10/14/26 18:44:14 Page 19 of 20

1987). Sandstone's proffer shows futility. It offers to identify shared employees and continued projects, to provide "more information" about unspecified transfers, and to incorporate R2 Building's complaint against Debtor. Opp. at 15-16. Shared employees and projects are the superficial overlap courts have found insufficient. And even if considered, R2 Building's complaint alleges that Debtor victimized R2 Building, which defeats attribution rather than supports it. *Lennard*, 2012 WL 13006214, at *16.

Sandstone also concedes that it "is not alleging that R2 Building signed the Guaranty" and that the timing of R2 Building's formation is "not critical" to its claims. Opp. at 16. The Court should dismiss with prejudice any claim against R2 Building based on the Guaranty or on R2 Building's formation after the default, as the Motion requested. If the Court grants leave as to the remaining derivative theories, R2 Building asks that the Court require Sandstone to plead specific facts as to R2 Building, including the identity, date, and value of each alleged transfer, consistent with Rule 9(b), and facts sufficient to support its alter ego and successor theories.

## III. CONCLUSION

The FAC pleads no facts tying R2 Building, an entity formed after the alleged fraud, to Sandstone's loss. The Court should grant the Motion, dismiss with prejudice any claim based on the Guaranty or on R2 Building's post-default formation, and dismiss the remaining claims against R2 Building without leave to amend or, at minimum, with leave narrowly limited as set out in Section J.

Dated: October 14, 2026

*<u>/s/ Andrew M. Cummings</u>*
Andrew M. Cummings

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, California 94105
Telephone: 415.743.6900
Facsimile: 415.743.6910