SHARTSIS FRIESE LLP
IVO KELLER (Bar #245909)
DIEGO B. FLORES (Bar #324603)
425 Market Street, Eleventh Floor
San Francisco, CA 94105-2496
Telephone: (415) 421-6500
Facsimile: (415) 421-2922
Email: ikeller@sflaw.com
Email: dflores@sflaw.com

BAKER BOTTS L.L.P.
CHERYL A. CAULEY (Bar #252262)
1001 Page Mill Road, Bldg. 1, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
Email: cheryl.cauley@bakerbotts.com

BAKER BOTTS L.L.P.
KARAN SINGH DHADIALLA (Bar #296313)
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300
Email: karan.dhadialla@bakerbotts.com

Attorneys for Creditor
SANDSTONE GROUP, LLC



UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>RANDALL DAVID MILLER,<br><br>Debtor. | Case No. 26-40698 WJL<br><br>Chapter Number: 7<br><br>Adv. Proc. No. 26−04037<br><br>**SANDSTONE GROUP, LLC'S SUPPLEMENTAL BRIEF REGARDING COURT'S JURISDICTION OVER SANDSTONE'S CLAIMS AGAINST R2 BUILDING, LLC** |
| SANDSTONE GROUP, LLC, a California limited liability company,<br><br>Plaintiff, | |

v.

RANDALL MILLER, an individual; RAD URBAN INC., a Delaware corporation; ROBERT MILLER, individually and in his capacity as trustee of the 63 Holdings Trust; 63 REALTY HOLDINGS, LLC, a Wyoming limited liability company; ALEXIS MILLER, an individual; R2 BUILDING, LLC, a Delaware limited liability company; R2 BUILDING, INC., a Delaware corporation; and DOES 1-20, inclusive,

Defendants.

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

Plaintiff and Creditor Sandstone Group, LLC ("Sandstone") submits this supplemental brief regarding the Court's jurisdiction over Sandstone's claims against Defendant R2 Building, LLC ("R2 LLC") pursuant to the Court's order at the October 21, 2026 hearing on R2 LLC's motion to dismiss Sandstone's complaint.

## I. INTRODUCTION

This Court has jurisdiction over Sandstone's claims against R2 LLC under the "related to" prong of 28 U.S.C. § 1334(b). The Ninth Circuit has interpreted "related to" jurisdiction broadly, to include (i) any proceeding the outcome of which could conceivably affect the administration of the bankruptcy estate, and (ii) claims that derive from a common nucleus of operative fact with other claims over which the Court has jurisdiction. Sandstone's claims against R2 LLC satisfy both tests. The claims could affect the administration of the Debtor's estate because any amount Sandstone is able to recover from R2 LLC could conceivably reduce Sandstone's claim against the estate. The claims also share a common nucleus of operative fact with Sandstone's claims against the Debtor, over which the Court clearly has jurisdiction, because the claims against R2 LLC are based on the same underlying acts as the claims against the Debtor. Accordingly, the Court has jurisdiction over Sandstone's claims against R2 LLC.

## II. BACKGROUND

In its First Amended Complaint ("FAC" or the "Amended Complaint," DN 12), Sandstone alleges that Debtor and Defendant Randall Miller ("Debtor") orchestrated a "shell game." The Debtor fraudulently induced Sandstone to lend his entity $2 million and then implemented a scheme involving captive entities and assistance from other Defendants to abscond with the proceeds of his fraud. *See*, *e.g.*, FAC ¶¶ 1-2, 17-49. Based on these factual allegations, Sandstone asserts ten claims for relief:

- Sandstone's first claim, for breach of guaranty, is based on allegations that the Debtor and Defendant RAD Urban, Inc. ("RAD Urban") breached a guaranty in favor of Sandstone (the "Guaranty"), pursuant to which the Debtor and RAD Urban were required, but failed, to satisfy the obligations of NGI East Bay Portfolio, LLC ("NGI") under a March 25, 2019 note in favor of Sandstone (the "NGI Note"). *See*

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

FAC ¶¶ 50-57; *see also* FAC ¶¶ 17-24. This claim is asserted against the Debtor and RAD Urban, as well as against R2 LLC and R2 Building, Inc. ("R2 Inc.," and together with R2 LLC, the "R2 Entities"), which are named as RAD Urban's "alter egos, continuations, and/or successors-in-interest." *Id.* ¶ 55.

- Sandstone's second and third claims, for fraud and fraudulent concealment, are based on allegations that the Debtor and RAD Urban defrauded Sandstone in connection with the NGI Note and Guaranty. *See id.* ¶¶ 58-76. These claims are also asserted against the R2 Entities as "alter egos, continuations, and/or successors-in-interest to RAD Urban." *Id.* ¶¶ 68, 76.
- Sandstone's fourth claim is against the R2 Entities and Defendants Robert Miller (the Debtor's brother), 63 Realty Holdings, LLC, and Alexis Miller (the Debtor's wife) for aiding and abetting the Debtor's fraud. *See id.* ¶¶ 77-82.
- Sandstone's seventh and eighth claims seek to recover from RAD Urban, the R2 Entities, the Debtor, and Alexis Miller based on fraudulent and/or voidable transfers made by RAD Urban to the other Defendants. *See id.* ¶¶ 94-113.
- Sandstone's fifth, sixth, ninth, and tenth claims seek determinations that certain of the Debtor's debts to Sandstone are nondischargeable. *See id.* ¶¶ 83-93, 114-120.

On September 14, 2026, R2 LLC (but not R2 Inc., which has yet to appear in this proceeding) moved to dismiss Sandstone's claims against it—*i.e.*, Sandstone's first through fourth, seventh, and eighth claims for relief. *See* Defendant R2 Building LLC's Motion to Dismiss Sandstone Group, LLC's Claims (the "R2 Motion," DN 16). R2 LLC's motion did not question the Court's jurisdiction over Sandstone's claims. However, at the October 21, 2026 hearing on the R2 Motion, the Court requested that the parties address whether the Court has jurisdiction to hear Sandstone's claims against R2 LLC. This Brief addresses that issue.

## III. <u>APPLICABLE LAW</u>

The Court has jurisdiction over Sandstone's claims against R2 LLC under subdivision (b) of 28 U.S.C. § 1334, which provides that, subject to an exception not relevant here,

> notwithstanding any Act of Congress that confers exclusive jurisdiction on a court

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b) (emphasis added);[1] *see also* FAC ¶ 13 (jurisdictional allegation).

To determine the scope of "related to" jurisdiction, the Ninth Circuit Court of Appeals has adopted the "*Pacor* test," first articulated by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984). *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1193 (9th Cir. 2005) (quoting *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988)). The *Pacor* test turns on whether

the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Fietz*, 852 F.2d at 457 (quoting *Pacor*, 743 F.2d at 994).

The *Pacor* test casts a wide net. "A key word in this test is 'conceivable.' Certainty, or even likelihood, is not a requirement." *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir. 1991). Thus, courts applying the *Pacor* test have consistently found "related to" jurisdiction where the outcome of the litigation could conceivably alter claims against or recoveries from a bankruptcy estate. *See*, *e.g.*, *Nuveen Mun. Tr. v. Withumsmith Brown, P.C.*, 692 F.3d 283, 297 (3d Cir. 2012) ("[C]ourts have held that 'related to' jurisdiction does exist where a creditor's recovery from a non-debtor conceivably could alter the amount of the creditor's recovery from a bankruptcy estate."); *Randall & Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579, 581-82, 585-87 (5th Cir. 1999) (concluding "related to" jurisdiction existed over tort claims against third-party associates of debtor because success could conceivably reduce claims against the estate); *PDG Los Arcos, LLC v. Adams (In re Mortg. Ltd.)*, 427 B.R. 780, 786-787 (D. Ariz. 2010) (collecting cases).

The Ninth Circuit has also made clear that a bankruptcy court's "related to" jurisdiction under Section 1334(b) "is very broad, 'including nearly every matter directly or indirectly related

---

[1] Although Section 1334(b) refers to the jurisdiction of the "district courts," the United States District Court for the Northern District of California has exercised its authority to refer "proceedings arising under title 11 or arising in or related to a case under title 11" to this Court. *See* 28 U.S.C. § 157(a); General Order No. 24 (N.D. Cal. Oct. 19, 2023).

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496



Case: 26-04037 Doc# 25 Filed: 10/30/26 Entered: 10/30/26 14:23:25 Page 5 of 11

to the bankruptcy.'" *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 868-69 (9th Cir. 2005) (quoting *Mann v. Alexander Dawson (In re Mann)*, 907 F.2d 923, 926 n.4 (9th Cir. 1990)).

In fact, in this Circuit, "the bankruptcy court's 'related to' jurisdiction also includes the district court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 'over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Id.* (citing *Montana*, *supra*, 394 F.3d at 1195, and *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1008 n. 5 (9th Cir. 1997)). "[C]laims are part of the same 'case' … when they 'derive from a common nucleus of operative fact' and are such that a plaintiff 'would ordinarily be expected to try them in one judicial proceeding.'" *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (quoting *Finley v. United States*, 490 U.S. 545, 549 (1989)). A "common nucleus of operative fact" suffices to confer supplemental jurisdiction; it is not necessary that the relevant claims "arise from the same transaction or occurrence." *Zunum Aero, Inc. v. Boeing Co.*, 189 F.4th 869, 874 (9th Cir. 2026).

Accordingly, this Court has jurisdiction over claims that could conceivably have any effect on the administration of the Debtor's estate, as well as claims that derive from a common nucleus of operative fact with other claims over which the Court has jurisdiction. Both factors support exercising jurisdiction over Sandstone's claims against R2 LLC, as discussed below.

## IV. ARGUMENT

### A. Sandstone's Claims Against R2 LLC Are "Related To" Debtor's Bankruptcy Case Under the *Pacor* Test.

Sandstone's claims against R2 LLC and the other non-debtor Defendants are all based on the same underlying acts—the fraudulent procurement of the NGI Note, and the looting of assets that should have been used to repay the NGI Note before Sandstone could reach them.

With respect to R2 LLC, Sandstone's first, second, and third claims are asserted against R2 LLC as an "alter ego[], continuation[], and/or successor[]-in-interest" to RAD Urban, which is a co-obligor with the Debtor on the Guaranty. *See* FAC ¶¶ 55, 68, 76. These claims are also asserted against the Debtor (*see id.* ¶¶ 50-76), and will be included in Sandstone's proof of claim

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

filed in the Debtor's bankruptcy case. Any recovery on these claims from a non-debtor could conceivably reduce Sandstone's claim against the Debtor's estate. For example, if Sandstone establishes that R2 LLC is liable for fraud or is directly liable on the Guaranty as RAD Urban's alter ego, and Sandstone therefore collects the full amount due under the Guaranty from R2 LLC, Sandstone's bankruptcy claim for those amounts could be subject to disallowance in whole or in part. *See* 11 U.S.C. § 502(b)(1) (providing for disallowance where a "claim is unenforceable against the debtor and property of the debtor, under … applicable law"); *see also*, *e.g.*, *Tavaglione v. Billings*, 4 Cal.4th 1150, 1158 (1993) ("Regardless of the nature or number of legal theories advanced by the plaintiff, he is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence.").

Similarly, Sandstone's fourth claim is asserted against the R2 Entities (including R2 LLC) "in the event the R2 Entities, or any of them, are found not to be alter egos, continuations, or successors-in-interest of RAD Urban." *Id.* ¶ 77. Through it, Sandstone seeks to recover from R2 LLC based on allegations that it aided and abetted Debtor's fraudulent conduct that is the subject of Sandstone's second and third claims for relief. *See id.* ¶¶ 79-82.

Sandstone's seventh and eighth claims for relief are downstream of its Guaranty claim against RAD Urban: Sandstone alleges that RAD Urban made actual fraudulent or otherwise voidable transfers to third parties, including R2 LLC, and that it may look to these transferred assets to satisfy RAD Urban's liability on the Guaranty. *See id.* ¶¶ 94-113.

These claims all seek, at least in part, to recover for the same "distinct item of compensable damage"—specifically, monies due under the Guaranty, which are also due to Sandstone because the NGI Note and Guaranty were procured by fraud—and any recovery on these claims from a non-debtor party like R2 LLC could conceivably reduce Sandstone's bankruptcy claim.[2] *See* 11 U.S.C. § 502(b)(1); *Tavaglione*, 4 Cal.4th at 1158.

---

[2] To be clear, although Sandstone's seventh and eighth causes of action are based on transfers by RAD Urban and not the Debtor (*see* FAC ¶¶ 96, 106), a recovery on those claims could nevertheless reduce Sandstone's bankruptcy claim because RAD Urban and Debtor are co-liable to Sandstone on the underlying debt. *See id.* ¶¶ 50-76 (first through third causes of action).

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

Accordingly, Sandstone's recovery from R2 LLC and any other non-debtor Defendant against whom it asserts its claims "conceivably could alter the amount of [its] recovery from [Debtor's] bankruptcy estate," and the Court has "related to" jurisdiction over those claims under the *Pacor* test. *Nuveen Mun. Tr.*, 692 F.3d at 297; *accord Mortg. Ltd.*, 427 B.R. at 786-87 ("The potential chance that NRDP's and PDG's action against the Investors could affect the administration of Mortgages, Ltd.'s estate [by imposing additional liability] is enough to confer jurisdiction." (citations omitted)).

**B. <u>Sandstone's Claims Against R2 LLC Are Part of the Same Case or Controversy As Its Nondischargeability Claims Against Debtor.</u>**

Sandstone's Amended Complaint also asserts four nondischargeability claims against the Debtor. Two are based on his fraud in causing Sandstone to lend money to NGI under the NGI Note and Guaranty (FAC ¶¶ 83-93); two are based on his receipt of fraudulent transfers from RAD Urban (*id.* ¶¶ 114-120); and all are based on either Section 523(a)(2) or 523(a)(6) of the Bankruptcy Code. *See id.* ¶¶ 83-93, 114-120. These claims unquestionably "arise under" the Bankruptcy Code and are within the Court's exclusive jurisdiction. *See*, *e.g.*, *Schmidt v. Goscicki (In re Goscicki)*, 207 B.R. 893, 897 (9th Cir. B.A.P. 1997); *see also* 11 U.S.C. § 523(c)(1) (requiring bankruptcy court determination for "debt to be excepted from discharge under paragraph (2), (4), or (6) … of subsection (a)").

Sandstone's claims against R2 LLC are part of the same case or controversy as its nondischargeability claims against the Debtor. Sandstone's first four claims for relief—for breach of guaranty, fraud, fraudulent concealment, and aiding and abetting fraud—are all asserted against R2 LLC (*see* FAC ¶¶ 50-82), and all share a common factual basis with Sandstone's nondischargeability claims arising from the NGI Note and Guaranty transaction. *See id.* ¶¶ 83-86 (factual basis for fifth claim for relief), 90-91 (factual basis for sixth claim for relief).

Similarly, Sandstone's seventh and eighth claims for relief—for common law fraudulent transfer and voidable transfer based on transfers by RAD Urban—are asserted against R2 LLC (*see id.* ¶¶ 94-113), and Sandstone's ninth and tenth claims for nondischargeability against the Debtor are based on the liabilities asserted in those claims. *See id.* ¶¶ 114-15 (factual basis for



SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

ninth claim for relief), 117-19 (factual basis for tenth claim for relief).

Accordingly, Sandstone's nondischargeability claims against the Debtor and its claims against R2 LLC "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding," and consequently fall within this Court's "related to" jurisdiction via 28 U.S.C. § 1367. *See Constr. Indus. & Laborers Health & Welfare Tr.*, *supra*, 333 F.3d at 925 (quoting *Finley*, 490 U.S. at 549); *Sasson*, *supra*, 424 F.3d at 868-69 (citations omitted).

The fact that Sandstone may need to establish other matters in addition to those required to establish its nondischargeability claims does not alter this analysis. 28 U.S.C. § 1367 requires only a "common nucleus of operative fact," not a complete identity of issues. *See*, *e.g.*, *Zunum Aero*, *supra*, 189 F.4th at 874 (rejecting contention that 28 U.S.C. § 1367 requires that claims "arise from the same transaction or occurrence"). As a result, the common nucleus of operative fact test gives the Court an independent basis for asserting jurisdiction over Sandstone's claims, in addition to its jurisdiction under the *Pacor* test.

**C. It Is Immaterial That Sandstone's Claims Against R2 LLC Are Non-Core.**

The fact that Sandstone's claims against R2 LLC are non-core does not alter the above analysis. Whether a proceeding is core determines only whether a bankruptcy judge may "hear and enter final judgments" therein or is limited to "submit[ting] proposed findings of fact and conclusions of law to the district court" absent consent of the parties. *Stern v. Marshall*, 564 U.S. 462, 473-75 (2011) (quoting 28 U.S.C. § 157(b)(1), (c)(1)). But it does not impact Section 1334(b): That statute confers jurisdiction on district courts, which may enter final judgments on non-core matters (*see id.*); and the district court, in turn, has referred all matters implicating its "related to" jurisdiction to this Court. *See* General Order No. 24 (N.D. Cal. Oct. 19, 2023); *see also* 28 U.S.C. § 157(a) (authorizing reference to bankruptcy judges). Thus, whether or not a claim is core such that this Court may enter a final order is independent of whether this Court has Section 1334 "related to" jurisdiction over that claim.[3] Under the analysis discussed above, the Court does

[3] At the October 21, 2026 hearing, counsel for R2 LLC confirmed that it consents to the Court's

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

have such jurisdiction.

## V. CONCLUSION

The Court has jurisdiction over Sandstone's claims against R2 LLC, and more generally over all of Sandstone's claims against non-debtor Defendants in this proceeding, because those claims could conceivably affect the administration of the bankruptcy estate and derive from a common nucleus of operative fact with Sandstone's nondischargeability claims against the Debtor. Accordingly, Sandstone respectfully requests that the Court allow its claims against R2 LLC to proceed.

Dated: October 30, 2026

SHARTSIS FRIESE LLP

By: */s/ Ivo Keller*
IVO KELLER

Attorneys for Creditor
SANDSTONE GROUP, LLC

---

entry of a final judgment in this case.

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

**PROOF OF SERVICE**

I, Ivo Keller, hereby certify that, on October 30, 2026, I caused a true and correct copy of the foregoing **SANDSTONE GROUP, LLC'S SUPPLEMENTAL BRIEF REGARDING COURT'S JURISDICTION OVER SANDSTONE'S CLAIMS AGAINST R2 BUILDING, LLC** to be served via CM/ECF on all parties who have registered for electronic service in these cases.

Dated: October 30, 2026

SHARTSIS FRIESE LLP

*/s/ Ivo Keller*

Ivo Keller (CA Bar #245909)
Diego B. Flores (CA Bar #324603)
425 Market Street, 11th Floor
San Francisco, CA 94105
Telephone: (415) 421-6500
Facsimile: (415) 421-2922
Email: ikeller@sflaw.com
Email: dflores@sflaw.com

*Attorneys for Sandstone Group, LLC*



Case: 26-04037 Doc# 25 Filed: 10/30/26 Entered: 10/30/26 14:23:25 Page 11 of 11