SHARTSIS FRIESE LLP
IVO KELLER (Bar #245909)
DIEGO B. FLORES (Bar #324603)
425 Market Street, Eleventh Floor
San Francisco, CA 94105-2496
Telephone: (415) 421-6500
Facsimile: (415) 421-2922
Email: ikeller@sflaw.com
Email: dflores@sflaw.com

BAKER BOTTS L.L.P.
CHERYL A. CAULEY (Bar #252262)
1001 Page Mill Road, Bldg. 1, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
Email: cheryl.cauley@bakerbotts.com

BAKER BOTTS L.L.P.
KARAN SINGH DHADIALLA (Bar #296313)
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300
Email: karan.dhadialla@bakerbotts.com

Attorneys for Creditor
SANDSTONE GROUP, LLC



UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>RANDALL DAVID MILLER,<br><br>Debtor. | Case No. 26-40698 WJL<br><br>Chapter Number: 7<br><br>Adv. Proc. No. 26−04037<br><br>**SANDSTONE GROUP, LLC'S OPPOSITION TO DEBTOR AND DEFENDANT RANDALL MILLER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY, FRAUDULENT TRANSFERS, AND STATE LAW CLAIMS** |
| SANDSTONE GROUP, LLC, a California limited liability company, | |

Plaintiff,

v.

RANDALL MILLER, an individual; RAD URBAN INC., a Delaware corporation; ROBERT MILLER, individually and in his capacity as trustee of the 63 Holdings Trust; 63 REALTY HOLDINGS, LLC, a Wyoming limited liability company; ALEXIS MILLER, an individual; R2 BUILDING, LLC, a Delaware limited liability company; R2 BUILDING, INC., a Delaware corporation; MICHAEL G. KASOLAS, only in his capacity as Chapter 7 Trustee; and DOES 1-20, inclusive,

Defendants.

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1
II. BACKGROUND ..... 2
III. LEGAL STANDARD ..... 5
IV. ARGUMENT ..... 6
A. Sandstone's Claims Provide Sufficient Notice to the Debtor of its Allegations. ..... 6
B. Sandstone Has Sufficiently Pled its Fraud Claim. ..... 9
C. Sandstone Has Sufficiently Pled its Fraudulent Concealment Claim. ..... 11
D. Sandstone Has Sufficiently Pled its Fifth and Sixth Claims for Determinations of Nondischargeability. ..... 12
1. Sandstone's Fraud and Fraudulent Concealment Allegations State a Section 523(a)(2)(A) Nondischargeability Claim. ..... 12
2. Sandstone's Allegations that the Debtor Swindled It Out of Millions of Dollars State a Section 523(a)(6) Nondischargeability Claim. ..... 14
E. Sandstone Has Sufficiently Pled its Fraudulent and Voidable Transfer Claims and Related Nondischargeability Claims. ..... 15
1. The State Law Claims Are Sufficiently Pled. ..... 15
2. The Nondischargeability Claims Are Sufficiently Pled. ..... 17
F. If the Court Is Inclined to Grant the Motion, It Should Grant Leave to Amend. ..... 18
V. CONCLUSION ..... 19

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

## TABLE OF AUTHORITIES

**Federal Cases**

*Amalgamated Bank v. Facebook, Inc. (In re Facebook, Inc. Sec. Litig.)*, 87 F.4th 934 (9th Cir. 2023) ... 6

*Asghari v. Volkswagen Group of Am., Inc.*, 42 F.Supp.3d 1306 (C.D. Cal. 2013) ... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ... 5

*Cafasso v. Gen. Dynamics C4 Sys. Inc.*, 637 F.3d 1047 (9th Cir. 2011) ... 7

*Carrillo v. Su (In re Su)*, 290 F.3d 1140 (9th Cir. 2002). ... 18

*Clinton v. Sec. Ben. Life Ins. Co.*, 63 F.4th 1264 (10th Cir. 2023) ... 6

*Dreamstone Entm't v. Maysalward Inc.*, No. 2:14-cv-02063-CAS(SSx), 2014 U.S. Dist. LEXIS 81084 (C.D. Cal. June 11, 2014) ... 7

*Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27 (1st Cir. 2020) ... 7, 10, 17

*Harris v. County of Orange*, 682 F.3d 1126 (9th Cir. 2012). ... 19

*Howell v. Law Office of Andrew S. Bisom (In re Howell)*, Nos. CC-20-1172-SGF, CC-20-1218-SGF, 2021 Bankr. LEXIS 960 (B.A.P. 9th Cir. Apr. 9, 2021) ... 14

*Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355 (2016) ... 18

*In re Seagate Tech. LLC Litig.*, 233 F.Supp. 3d 776 (N.D. Cal. 2017) ... 6

*John-Charles v. California*, 646 F.3d 1243 (9th Cir. 2011) ... 6

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ... 5

*Kelleher v. Kelleher*, No. 13-cv-05450-MEJ, 2014 U.S. Dist. LEXIS 36330, (N.D. Cal. Mar. 19, 2014) ... 17

*Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018) ... 14

*Langille v. Berthel Fisher & Co. Fin. Servs.*, No. 2:19-cv-00454-KJM-AC, 2020 U.S. Dist. LEXIS 122857 (E.D. Cal. July 10, 2020) ... 6

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989) ... 5

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2011) ... 5

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) ... 6, 8

*Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19 (B.A.P. 9th Cir. 2009) ... 12

*Oregon v. Mcharo (In re Mcharo)*, 611 B.R. 657 (B.A.P. 9th Cir. 2020) ... 14

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

*Takiguchi v. MRI Int'l, Inc.*, No. 2:13-cv-01183-JAD-VCF, 2015 U.S. Dist. LEXIS 50962 (D. Nev. Apr. 10, 2015) .......... 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .......... 5

*Tobin v. Sans Souci Ltd. Pshp. (In re Tobin)*, 258 B.R. 199 (B.A.P. 9th Cir. 2001) .......... 12

*U.S. ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71 (2d Cir. 2017) .......... 7

**State Cases**

*LiMandri v. Judkins*, 52 Cal.App.4th 326 (1997) .......... 11

*Tenzer v. Superscope, Inc.*, 39 Cal.3d 18 (1985) .......... 9

*Warner Constr. Corp. v. City of Los Angeles*, 2 Cal.3d 285 (1970) .......... 11

**Federal Statutes**

11 U.S.C. § 523 .......... passim

**State Statutes**

Cal. Civ. Code § 3439.04(a) .......... 17

**Federal Rules**

Federal Rule of Civil Procedure 8 .......... 5

Federal Rule of Civil Procedure 9(b) .......... passim

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

Plaintiff and Creditor Sandstone Group, LLC ("Sandstone") submits this Opposition to Debtor and Defendant Randall Miller's (the "Debtor") Motion to Dismiss Plaintiff's First Amended Complaint for Determination of Dischargeability Under 11 U.S.C. §§ 523(a)(2) and (a)(6), Fraudulent Transfers, and State Law Claims (the "Motion," DN 14).

## I. INTRODUCTION

The Debtor and his controlled entities falsely promised Sandstone they would repay a $2 million loan and fraudulently concealed material information that, if known to Sandstone, would have caused Sandstone not to enter into the loan transaction. The Debtor, his controlled entities, and their affiliates then set about a series of transfers and transactions aimed at ensuring that the Debtor could retain his ill-gotten funds and Sandstone would not be repaid. Following the Debtor's bankruptcy filing, Sandstone initiated this action seeking to have the Debtor's debts deemed nondischargeable. Sandstone also asserts state law claims for breach of guaranty, fraud, and fraudulent concealment against the Debtor and other defendants, as well as state law voidable and fraudulent transfer claims based on transfers by one of the Debtor's controlled entities and related nondischargeability claims.

The Debtor's Motion challenges the legal sufficiency of all but one of Sandstone's claims (the breach of guaranty claim) against the Debtor based principally on contentions that Sandstone has not pleaded those claims with the particularity required under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").[1] But that Rule, as relevant here, requires only that claims sounding in fraud be alleged with sufficient particularity to give the defendant notice of the allegations and enable the defendant to prepare an answer and defense, taking into account that some information may be uniquely in the defendant's possession and unavailable to the plaintiff. The Amended Complaint's allegations satisfy that requirement. The Debtor also challenges one of Sandstone's Section 523(a)(2)(A) nondischargeability claims, arguing that it is based on statements regarding the Debtor's or an insider's financial condition which are not actionable under that portion of Section

---

[1] Unless otherwise indicated, references to "Rules" herein are to the Federal Rules of Civil Procedure.

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496



Case: 26-04037 Doc# 26 Filed: 11/04/26 Entered: 11/04/26 22:51:54 Page 6 of 24

523(a)(2). That argument also fails because the relevant claim is based on statements that are not related to the Debtor's or an insider's financial condition, and on omissions rather than affirmative misstatements. Accordingly, the Court should deny the Motion in its entirety.

## II. BACKGROUND

In its First Amended Complaint ("FAC" or the "Amended Complaint," DN 12), Sandstone alleges that in or about March 2019, the Debtor guaranteed a $2 million loan that Sandstone made to NGI East Bay Portfolio, LLC ("NGI")—an entity which the Debtor controlled—pursuant to a promissory note dated March 25, 2019 (the "NGI Note"). FAC ¶¶ 1, 17. The Debtor and Defendant RAD Urban, Inc. ("RAD Urban") both signed a written guaranty of the NGI Note (the "Guaranty"), which obligated them to perform NGI's payment obligations under the NGI Note (*id.* ¶¶ 19-20), and which was a material inducement to Sandstone lending under the NGI Note. *Id.* ¶ 71.

Unbeknownst to Sandstone, the Debtor never intended that the funds NGI borrowed would be paid back, whether by NGI or by the Debtor or RAD Urban, and the Debtor and his entities also failed to disclose other information that would have been crucial for Sandstone to understand the risks it was taking in the NGI Note transaction. *See, e.g., id.* ¶¶ 31, 59-60. Also unbeknownst to Sandstone, at the time it lent to NGI, "NGI and RAD Urban were insolvent, and RAD Urban had to borrow money from NGI, which in turn had to borrow money from Plaintiff, including in order to meet financial obligations as they came due." *See, e.g.*, *id.* ¶ 72. The Debtor was aware of these facts but concealed them to induce Sandstone to lend under the NGI Note. *See, e.g.*, *id.*

When the NGI Note came due, the Debtor and his controlled entities failed completely to perform: neither the Debtor nor RAD Urban has paid a dime under the Guaranty, and NGI's only payment on the NGI Note came in connection with its own bankruptcy proceedings in this Court—in other words, under the Court's watchful eye, where the Debtor could not simply abscond with the money. *Id.* ¶¶ 23-24. Further, the Debtor, his affiliated entities, and his confederates implemented a series of transfers and transactions aimed at keeping creditors, including Sandstone, from reaching their ill-gotten assets. For example:

- Beginning in or about May 2020, after the Debtor, NGI, and RAD Urban had

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

defaulted on the NGI Note and Guaranty, the Debtor created the 63 Holdings Trust (the "63 Trust") with his brother, Defendant Robert Miller, as Trustee; then conveyed his home into the 63 Trust with the assistance of his wife, Defendant Alexis Miller; and then liquidated the asset so as to hide his assets and place an additional party between creditors and those assets. *Id.* ¶¶ 34-35.

- Also in or about May 2020, the Debtor created 63 Realty Holdings, LLC, a Wyoming limited liability company ("63 Holdings"), and then worked with Robert Miller and Alexis Miller in 2021 to acquire real property via the 63 Trust and transfer it to 63 Holdings. *Id.* ¶ 37. Again, this was done to hide the Debtor's assets from creditors and enable the Debtor to retain his ill-gotten gains. *See id.*
- In 2021, the Debtor fraudulently attempted to dissolve two companies that, together with NGI, held equity stakes in a property in Berkeley, California (the "Dwight Property"), so as to ensure that proceeds from that property's sale would go exclusively to NGI. *Id.* ¶¶ 39-41. Since Sandstone held interests in those other companies, the Debtor's scheme was essentially an attempt to pay Sandstone with money misappropriated from Sandstone. *See id.* Although Sandstone caught the Debtor red-handed in this particular scheme and was able to prevent the Debtor from completing it (*id.* ¶ 42), the scheme itself is further evidence of the Debtor's fraudulent intent with respect to the other facts alleged in the Amended Complaint.
- To further avoid RAD Urban's financial responsibilities, the Debtor formed two other entities: R2 Building Inc., a Delaware corporation ("R2 Inc."); and R2 Building, LLC, a Delaware limited liability company ("R2 LLC," and together with R2 Inc., the "R2 Entities"). *Id.* ¶ 45. After forming the R2 Entities, the Debtor transferred significant assets from RAD Urban to them, and the R2 Entities in turn transferred funds to the Debtor and Alexis Miller, while RAD Urban was insolvent, and in an effort to keep assets out of creditors' hands. *Id.* ¶¶ 45-48.

Thus far, the Debtor's efforts have succeeded: Other than the above-referenced payment incident to NGI's bankruptcy, Sandstone has not been paid anything under the NGI Note or

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496



Case: 26-04037 Doc# 26 Filed: 11/04/26 Entered: 11/04/26 22:51:54 Page 8 of 24

Guaranty, and it is currently owed an amount in excess of $2.98 million. *Id.* ¶ 24.

Based on these factual allegations, Sandstone asserts ten claims for relief:

- Sandstone's first claim, for breach of guaranty, is based on allegations that the Debtor and RAD Urban breached the Guaranty. *See* FAC ¶¶ 50-57; *see also* FAC ¶¶ 17-24. This claim is asserted against the Debtor and RAD Urban, as well as against the R2 Entities, which are named as RAD Urban's "alter egos, continuations, and/or successors-in-interest." *Id.* ¶ 55.
- Sandstone's second and third claims, for fraud and fraudulent concealment, are based on allegations that the Debtor and RAD Urban defrauded Sandstone in connection with the NGI Note and Guaranty. *See id.* ¶¶ 58-76. These claims are also asserted against the R2 Entities as "alter egos, continuations, and/or successors-in-interest to RAD Urban" (*id.* ¶¶ 68, 74), as well as the Debtor and RAD Urban. *Id.* ¶¶ 58-76.
- Sandstone's fourth claim is against the R2 Entities, Robert Miller, 63 Holdings, and Alexis Miller, for aiding and abetting the Debtor's fraud. *See id.* ¶¶ 77-82.
- Sandstone's seventh and eighth claims seek to recover from RAD Urban, the R2 Entities, the Debtor, and Alexis Miller based on fraudulent and/or voidable transfers made by RAD Urban to those Defendants. *See id.* ¶¶ 94-113.
- Sandstone's fifth, sixth, ninth, and tenth claims seek determinations that certain of the Debtor's debts to Sandstone are nondischargeable. *See id.* ¶¶ 83-93, 114-120.

Through the Motion, the Debtor challenges Sandstone's second, third, fifth, sixth, and seventh through tenth claims for relief based on assertions that Sandstone has not pleaded sufficient factual detail under Rule 9(b). *See generally* Memorandum of Points and Authorities in Support of Motion ("MPA," DN 14-1). The Debtor also asserts that Sandstone's fifth claim for nondischargeability under Bankruptcy Code Section 523(a)(2)(A)[2] is impermissibly based on

[2] Unless otherwise indicated, references to statutes herein are to the Bankruptcy Code, codified at title 11 of the United States Code.

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496



Case: 26-04037 Doc# 26 Filed: 11/04/26 Entered: 11/04/26 22:51:54 Page 9 of 24

statements regarding his or an insider's financial condition. *See id.* at pp. 10-13.

## III. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of a claim. To survive a motion to dismiss, a complaint must only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting from *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In adjudicating a motion to dismiss, a court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2011) (citation omitted).

Rule 8 provides that a claim suffices so long as the plaintiff provides "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), and Rule 9(b) imposes a heightened pleading standard for certain types of allegations. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

"Where fraud is not an essential element of a claim, only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). Thus, "[t]o the extent a party does not aver fraud, the party's allegations need only satisfy the requirements of Rule 8(a)(2)." *Id.* "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496



Case: 26-04037 Doc# 26 Filed: 11/04/26 Entered: 11/04/26 22:51:54 Page 10 of 24

## IV. ARGUMENT

### A. Sandstone's Claims Provide Sufficient Notice to the Debtor of its Allegations.

The Debtor devotes several pages of his brief to the argument that Sandstone has not sufficiently pled its claims under Rule 9(b). *See* MPA at pp. 8-10. But the Debtor makes no effort to connect the purported lack of detail to the sufficiency of any claim as a whole, even though, as explained below, that is the appropriate focus under Rule 9(b). *See id.* Instead, the Debtor invokes Rule 9(b) generally and invites the Court to develop the analysis of its applicability to each claim for him. The Court accordingly may disregard these arguments. *See*, *e.g.*, *John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011) (finding that a party "waived" an argument by "fail[ing] to develop [it]"). In any event, the Amended Complaint provides sufficient detail to put the Debtor on notice of Sandstone's claims and the basis for its fraud allegations, meeting Rule 9(b)'s requirements.

Rule 9(b) requires only that "allegations of fraud [be] specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (citations omitted); *accord Amalgamated Bank v. Facebook, Inc. (In re Facebook, Inc. Sec. Litig.)*, 87 F.4th 934, 947 (9th Cir. 2023). A complaint can thus "satisfy Rule 9(b)'s requirements when its allegations are sufficiently particularized when 'taken as a whole.'" *Clinton v. Sec. Ben. Life Ins. Co.*, 63 F.4th 1264, 1280 (10th Cir. 2023) (quoting *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1257 (10th Cir. 2016)); *accord In re Seagate Tech. LLC Litig.*, 233 F.Supp. 3d 776, 795 (N.D. Cal. 2017) ("Viewing the complaint as a whole, and taking into account Rule 9(b)'s instruction that 'knowledge . . . may be alleged generally,' it is plausible that [defendant] knew of and failed to disclose information contrary to those representations."). "When in doubt, the court must ultimately be guided by the question of 'how much detail is necessary to give adequate notice to an adverse party and to enable that party to prepare a responsive pleading[?]'" *Langille v. Berthel Fisher & Co. Fin. Servs.*, No. 2:19-cv-00454-KJM-AC, 2020 U.S. Dist. LEXIS 122857, at *11 (E.D. Cal. July 10, 2020) (quoting Wright & Miller, § 1298 (4th ed. 2019)).

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

Rule 9(b) does not require a "blow-by-blow account" or that a plaintiff "allege every conceivable detail incident to the fraud." *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 50 (1st Cir. 2020). Thus, although courts sometimes describe Rule 9(b) as requiring that pleadings state "the who, what, when, where, and how of the misconduct charged" (*see*, *e.g.*, *Cafasso v. Gen. Dynamics C4 Sys. Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation omitted)), the requisite particularity is ultimately "case- and context- specific." *U.S. ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017); *see also*, *e.g.*, *Dreamstone Entm't v. Maysalward Inc.*, No. 2:14-cv-02063-CAS(SSx), 2014 U.S. Dist. LEXIS 81084, at *9 (C.D. Cal. June 11, 2014) ("[W]hile some cases hold that a plaintiff must identify the 'who, what, when, where, and how' of the alleged fraud, these cases do not articulate a rigid checklist," citing *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)).

Here, taken as a whole, Sandstone's fraud-based allegations are sufficiently particularized to put the Debtor on notice of his misconduct. The Amended Complaint includes numerous allegations regarding the nature of the Debtor's fraud. *See* § IV.B, *infra*. In his Motion, the Debtor appears to concede as much; notably, the Debtor does not claim to lack sufficient notice about the substance of Sandstone's claims such that he cannot meaningfully answer. Rather, the thrust of the Debtor's argument is that Sandstone theoretically could assert more detail in support of several of its allegations. *See* MPA at pp. 8-10. For instance, the Debtor argues that the Amended Complaint

> alleges only that, at some unspecified point during "the negotiation of the NGI Note and Guaranty," Mr. Miller "represented" that RAD Urban "was in good financial condition" and that an unidentified "Westbrook" entity would lend "on the same terms." [FAC] ¶¶ 28-29. It never identifies when any statement was made, who at Sandstone received it, whether it was written or oral, or the actual communication in which the assurance appeared.

MPA at pp. 9-10.

This representative excerpt highlights the weakness of the Debtor's argument. The "Westbrook" entity <u>is</u> identified (as Westbrook), and the quoted allegation <u>does</u> identify the timing of the Debtor's statement regarding Westbrook (during the negotiation of the NGI Note and Guaranty). Further, the Debtor makes no effort to connect the purported lack of detail to the sufficiency of any claim. *See id.* at pp. 8-10. The Debtor merely points out that pleading with

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496


Case: 26-04037 Doc# 26 Filed: 11/04/26 Entered: 11/04/26 22:51:54 Page 12 of 24

greater particularity is theoretically possible, but he advances no meaningful argument that the incremental particularity is actually needed to give adequate notice and enable preparation of a responsive pleading or defense. *See* MPA at pp. 8-10.

Similarly, the Debtor attacks certain of Sandstone's information and belief-based allegations, but ignores allegations that show the basis of Sandstone's information and belief. He points to Sandstone's allegation that the Debtor "formed 63 Realty 'apparently for the purpose' of shielding assets" and that "the 63 Trust acquired property 'presumably with the funds provided by Debtor,'" but ignores Sandstone's allegations that he formed 63 Holdings and the 63 Trust at about the time the NGI Note and Guaranty went into default and immediately set about funneling assets through them. *See* MPA at p. 9; FAC ¶¶ 34-37. Similarly, he criticizes Sandstone's allegation that "the R2 Building enterprise 'appears to be' a continuation of RAD Urban," but ignores allegations that the R2 Entities share personnel and an address with RAD Urban, and RAD Urban transferred significant assets to the R2 Entities. *See* MPA at p. 9; FAC ¶¶ 45-46. And the Debtor's criticism of Sandstone's allegation that he and his wife "received sale proceeds" and "disburs[ed] such funds to affiliated entities or persons" ignores Sandstone's allegations regarding the Debtor's overall scheme to retain the proceeds of his fraud, and the role of the Debtor and his wife's home in that scheme. *See* MPA at p. 9; FAC ¶¶ 34-46.

The Debtor, moreover, does not explain why the purported pleading defects render him unable to respond to any claim. He also fails to grapple with Ninth Circuit authority "h[olding] that the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge. In such situations, plaintiffs can not be expected to have personal knowledge of the relevant facts." *Neubronner*, 6 F.3d at 672 (citations omitted). This is precisely such a situation: Sandstone has limited visibility into the Debtor's, his wife's, and their affiliates' dealings and the above-discussed matters the Debtor argues are insufficiently pleaded are uniquely within his and his related parties' knowledge. Thus, the Debtor's argument that Sandstone's claims theoretically could include additional detail does not properly address whether Sandstone's claims pass muster under Rule 9(b), and the Court should disregard it. Sandstone's claims are sufficiently pled.

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

### B. Sandstone Has Sufficiently Pled its Fraud Claim.

Sandstone's second claim for relief, for fraud, is based on allegations that the Debtor, and NGI and RAD Urban through the Debtor, falsely represented to Sandstone that they intended to perform on the NGI Note and Guaranty, and that Westbrook desired to lend to NGI on the same terms as Sandstone and would in fact lend on the same terms. *See* FAC ¶¶ 58-63.[3] This claim is based on specific representations the Debtor made and allegations that amount to circumstantial evidence of the Debtor's fraudulent intent. The Debtor's argument that Sandstone has not sufficiently alleged intent fails for at least two reasons.

First, Rule 9(b) expressly provides that "[m]alice, intent, knowledge, and other conditions of a person's mind"—for example, a subjective lack of intent to perform on a contractual promise—"may be alleged generally." Fed. R. Civ. P. 9(b). The plain text of Rule 9(b) thus undercuts the Debtor's assertion that Sandstone failed to sufficiently plead his lack of intent that he and his controlled entities would perform on the NGI Note and Guaranty.

Second, the Debtor challenges this claim based on a suggestion that Sandstone has somehow failed to allege "something more than nonperformance … to prove [] [D]efendant's intent not to perform his promise." MPA at p. 15 (quoting *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 30 (1985)). The Debtor relies on the California Supreme Court's opinion in *Tenzer* for this point, but the Debtor conspicuously omits from his brief *Tenzer*'s express statement that "fraudulent intent must often be established by circumstantial evidence." *Tenzer*, 39 Cal.3d at 30. In fact, *Tenzer* provides examples of circumstances that support a finding of fraudulent intent: "fraudulent intent has been inferred from such circumstances as defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance, or his continued assurances after it was clear he would not perform." *Tenzer*, *supra*, 39 Cal.3d at 30 (citation omitted).

Sandstone alleges precisely such circumstances, and more. At the time the parties entered

[3] Sandstone's allegations, including its allegations regarding the Debtor's representations about Westbrook, also establish a fraud claim and related nondischargeability claim on a fraudulent inducement theory; however, because the Debtor does not challenge Sandstone's pleading with respect to that theory of recovery, Sandstone does not address it further herein.

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496



Case: 26-04037 Doc# 26 Filed: 11/04/26 Entered: 11/04/26 22:51:54 Page 14 of 24

into the NGI Note and Guaranty, NGI was "insolvent or nearing insolvency[,] RAD Urban was also insolvent," and "Debtor affirmatively—and, consistent with his lack of intent that he or RAD Urban would ever perform on the Guaranty, dishonestly—represented to Sandstone that RAD Urban was in good financial condition…." FAC ¶¶ 27-28. Further, the Debtor made no attempt to perform, and instead actively diverted assets that could have been used to satisfy obligations owed to Sandstone. Specifically, the NGI Note came due in March 2020, NGI only partially performed years later under Bankruptcy Court supervision, and the Debtor and RAD Urban have not performed <u>at all</u>. *Id.* ¶ 23. Rather, shortly following the NGI Note's maturity, the Debtor undertook efforts to transfer assets that could have been used to pay Sandstone (*id.* ¶¶ 34-35), and later diverted funds from a property in which NGI had an interest to himself and RAD Urban. *Id.* ¶¶ 38-42. The Debtor even sought to use his nonperformance as a cudgel to obtain a release on his Guaranty liability. *Id.* ¶ 43.

The Debtor also falsely represented to Sandstone that an entity known as "Westbrook" would lend to NGI "side by side and on the same terms" as Sandstone (*id.* ¶ 29), when in reality Westbrook lent on far different terms. *Id.* ¶ 30. Those terms, moreover, were far more favorable than the terms on which Sandstone lent: its note purported to subordinate <u>all</u> other NGI notes to it until the debt's payment in full and would have required that NGI pay Westbrook <u>double</u> what NGI initially borrowed. *Id.* The nature of Westbrook's loan was not within Sandstone's knowledge—and the Debtor's affirmative misrepresentations regarding the terms of that loan establish fraudulent intent and amount to much more than alleging simple "nonperformance." The Debtor makes a conclusory assertion that these matters "do not themselves establish intent at execution," but he fails to support that assertion with any analysis or citation. MPA at p. 15. That is unsurprising given *Tenzer*'s statements regarding circumstantial evidence.

The Debtor also asserts that allegations regarding Westbrook "remain[] deficient under Rule 9(b)," but that is at best a generalized demand for exacting detail that Rule 9(b) does not require. *See*, *e.g.*, *Foisie*, 967 F.3d at 50. As explained above, Sandstone's allegations describe the content, recipient, and approximate timing of the Westbrook misrepresentation (*see* § IV.A, *supra*; *see also* FAC ¶¶ 28-29), and are therefore sufficient to "identif[y] the circumstances constituting

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

fraud so that a defendant can prepare an adequate answer from the allegations." *Moore*, *supra*, 885 F.2d at 540. Consequently, Sandstone has stated a claim for fraud.

**C. <u>Sandstone Has Sufficiently Pled its Fraudulent Concealment Claim.</u>**

The Debtor contends that Sandstone's third claim, for fraudulent concealment, fails based on the Debtor's spurious argument that Sandstone has not pled that the Debtor had a duty to disclose. The Debtor's argument fails on its face—the Motion itself acknowledges both the circumstances under which a duty to disclose exists and that Sandstone alleges such circumstances exist here. *See* MPA at p. 16.

Under California law, such a duty exists in a non-fiduciary relationship where,

> (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; [or] (3) the defendant actively conceals discovery from the plaintiff.

*Warner Constr. Corp. v. City of Los Angeles*, 2 Cal.3d 285, 294 (1970) (citations omitted); *accord LiMandri v. Judkins*, 52 Cal.App.4th 326, 336-37 (1997) (cited in MPA at p. 16).

Here, the Debtor acknowledges, as he must, that "Paragraphs 28 and 72 [of the Amended Complaint] recite exclusive knowledge and inability to discover" RAD Urban's insolvency. MPA at p. 16. The Debtor nevertheless contends that Sandstone "suppl[ies] no facts explaining why the financial information was inaccessible to Plaintiff." *Id*. In point of fact, the Amended Complaint expressly alleges that the Debtor controlled RAD Urban (FAC ¶ 1), and the Debtor concedes that he and RAD Urban are "insiders" as to each other (MPA at p. 11) and that the NGI Note and Guaranty were entered into as part of "an arm's length commercial loan" transaction. MPA at p. 16. Sandstone also alleges that it ultimately learned of RAD Urban's insolvency at a meeting with the Debtor in July 2023. FAC ¶ 33. Sandstone's allegations thus make clear why the relevant information was inaccessible to it: the Debtor controlled RAD Urban, and with it, all information relating to its financial condition.

In seeking more detail, the Debtor demands that Sandstone go beyond what Rule 9(b) requires (*see* § IV.A, *supra*) and affirmatively plead facts proving a negative in exacting detail. But courts addressing fraudulent omission claims have made clear that Rule 9(b) is relaxed in such



SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

Case: 26-04037 Doc# 26 Filed: 11/04/26 Entered: 11/04/26 22:51:54 Page 16 of 24

circumstances, precisely because of the difficulties inherent in pleading negatives. *See*, *e.g.*, *Asghari v. Volkswagen Group of Am., Inc.*, 42 F.Supp.3d 1306, 1325 (C.D. Cal. 2013) ("When a claim rests on allegations of fraudulent omission, however, the Rule 9(b) standard is somewhat relaxed because a plaintiff cannot plead either the specific time of an omission or the place, as he is not alleging an act, but a failure to act." (citation and internal quotation marks omitted)). That is the case here. Accordingly, the Debtor's substantive challenge to the sufficiency of the fraudulent concealment claim fails—Sandstone has sufficiently pled a duty to disclose and the Debtor's failure to meet that duty.

### D. Sandstone Has Sufficiently Pled its Fifth and Sixth Claims for Determinations of Nondischargeability.

#### 1. Sandstone's Fraud and Fraudulent Concealment Allegations State a Section 523(a)(2)(A) Nondischargeability Claim.

Sandstone's fraud and fraudulent concealment claims are based on affirmative statements about matters other than a debtor's or insider's financial condition, and on omissions, including notable omissions of information. They thus fall within the scope of Section 523(a)(2)(A).

"Under California law, the elements of promissory fraud are identical to the elements of common law fraud, when the misrepresentation at issue is a promise made without intent to perform." *Tobin v. Sans Souci Ltd. Pshp. (In re Tobin)*, 258 B.R. 199, 203 (B.A.P. 9th Cir. 2001) (citation omitted). "The elements of § 523(a)(2)(A)," in turn, "'mirror the elements of common law fraud' and match those for actual fraud under California law." *Id.* (quoting *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373-74 (B.A.P. 9th Cir. 1997), aff'd, 163 F.3d 609 (9th Cir. 1998)). Thus, the same factual allegations that state a fraud claim against the Debtor (*see* § IV.B, *supra*), also state a Section 523(a)(2)(A) nondischargeability claim. Similarly, the same factual allegations that state a fraudulent concealment claim against the Debtor (*see* § IV.C, *supra*) state a Section 523(a)(2)(A) nondischargeability claim based on a different theory of fraud. *See*, *e.g.*, *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 35 (B.A.P. 9th Cir. 2009) (setting forth elements of Section 523(a)(2)(A) claim).

The Debtor attempts to elide this straightforward application of California law and Section 523 by arguing that, because the Amended Complaint includes allegations that in some sense relate

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

to his or an insider's financial condition, Sandstone's fraud and fraudulent concealment-based nondischargeability claims are not cognizable under Section 523(a)(2)(A), and can proceed only under Section 523(a)(2)(B). MPA at p. 11. The plain text of Section 523(a)(2)(A) forecloses that argument.

Section 523(a)(2)(A) excepts from discharge "any debt" for, among other things, an extension of credit, "to the extent obtained by … false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). In other words, the statutory text expressly excludes only claims where "a statement … respecting the debtor's or an insider's financial condition" was the specific mechanism by which the fraud occurred.

But the false representations on which Sandstone's fraud claim relies are (1) NGI's representation that it intended to perform under the NGI Note; (2) RAD Urban and the Debtor's representations that they intended to perform under the Guaranty; and (3) the Debtor and NGI's representations that Westbrook desired that it and Sandstone lend to NGI on the same terms, and that Sandstone and Westbrook's loans would in fact be on the same terms. *See* FAC ¶¶ 58-63.

These representations are about the Debtor and his controlled entities' intention to perform on contractual obligations, and about a third party's desires and intentions with respect to a transaction. None of those matters come close to statements about the Debtor or an insider's financial status. Further, although some evidence of the Debtor and his controlled entities' fraudulent intent may involve statements about their financial condition, that is immaterial: Under Section 523(a)(2)(A)'s plain language, whether a claim falls within the exception on which the Debtor relies depends on how the relevant debt and property were obtained, not the evidence that a defrauded plaintiff will use to prove its claim.

Along similar lines, Sandstone's fraudulent concealment claim relies on omissions—for example, the Debtor's failure to inform Sandstone that:

> At the time [Sandstone] loaned NGI $2 million under the NGI Note, NGI and RAD Urban were insolvent, and RAD Urban had to borrow money from NGI, which in turn had to borrow money from Plaintiff, including in order to meet financial obligations as they came due.

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496


Case: 26-04037 Doc# 26 Filed: 11/04/26 Entered: 11/04/26 22:51:54 Page 18 of 24

FAC ¶ 72.

Cases interpreting Section 523(a)(2)(A) are clear that "the plain language of the statute refers to 'a statement respecting the debtor's ... financial condition' and a fraudulent omission is not a 'statement.'" *Howell v. Law Office of Andrew S. Bisom (In re Howell)*, Nos. CC-20-1172-SGF, CC-20-1218-SGF, 2021 Bankr. LEXIS 960, at *21-23 (B.A.P. 9th Cir. Apr. 9, 2021) (quoting *Oregon v. Mcharo (In re Mcharo)*, 611 B.R. 657, 662 (B.A.P. 9th Cir. 2020)). Thus, fraud claims based on an omission, rather than an affirmative statement, cannot fall within Section 523(a)(2)(A)'s exception for "statement[s] respecting the debtor's … financial condition." *See id.*

The Debtor's lead case, *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018), is consistent with this straightforward application of Section 523(a)(2)(A). That case held only "that a statement about a single asset can be a 'statement respecting the debtor's financial condition' under §523(a)(2) of the Bankruptcy Code." *Lamar*, *supra*, 584 U.S. at 725 (quoting 11 U.S.C. § 523(a)(2)(A)). In fact, as the Ninth Circuit Bankruptcy Appellate Panel observed,

> *Appling* … provides support for the conclusion that an omission is not a "statement," albeit in dicta. The Supreme Court noted that debt incurred through fraudulent conduct may be nondischargeable under § 523(a)(2)(A). *Appling*, 138 S. Ct. at 1763 (citing *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016), holding that "actual fraud" under § 523(a)(2)(A) includes schemes that can be undertaken without a representation). In a related footnote, the Court cited *United States v. Tucker (In re Tucker)*, 539 B.R. 861 (Bankr. D. Idaho 2015), and *United States v. Drummond (In re Drummond)*, 530 B.R. 707 (Bankr. E.D. Ark. 2015). … [B]oth held that a debt incurred by overpayment of government benefits because a debtor failed to disclose a change in employment status was nondischargeable under § 523(a)(2)(A). *Appling*, 138 S. Ct. at 1763 n.4.

*Mcharo*, 611 B.R. at 662 (internal citations cleaned up).

Thus, Section 523(a)(2)(A), by its very terms, allows Sandstone to plead an omission-based claim, and it has done so.

**2. Sandstone's Allegations that the Debtor Swindled It Out of Millions of Dollars State a Section 523(a)(6) Nondischargeability Claim.**

Section 523(a)(6) provides a separate basis for a determination of nondischargeability. Sandstone has pled claims that the Debtor defrauded it out of millions of dollars. *See* § IV.B, *supra*. In fact, Sandstone's allegations establish not only that the Debtor induced Sandstone to enter into a loan that he never intended would be paid back (*see* § IV.B, *supra*), but that he then implemented

a series of transfers between and among himself, his confederates, and entities he controlled to ensure that Sandstone would not be paid as required under the fraudulently-procured NGI Note and Guaranty. *See*, *e.g.*, FAC ¶¶ 34-37, 44-49. These allegations establish that the Debtor acted "with substantial certainty that it would result in financial harm to Plaintiff and with the intent to cause such harm" (*id.* ¶ 91)—a charge that, contrary to the Debtor's contention, is not a "threadbare recital" (MPA at p. 13), but rather a statement of the only reasonable conclusion to draw from the Debtor's conduct. The Court should therefore reject the Debtor's contention that Sandstone has not sufficiently pled willfulness and malice.

**E. <u>Sandstone Has Sufficiently Pled its Fraudulent and Voidable Transfer Claims and Related Nondischargeability Claims.</u>**

**1. The State Law Claims Are Sufficiently Pled.**

Sandstone has pled sufficient detail regarding the transfers that form the basis for its fraudulent and voidable transfer claims. The Debtor argues that Sandstone has not sufficiently pled "the transfer or the debt on which they depend" or a "factual basis connecting him to the first transferee's transfer" (MPA at p. 14),[4] but that argument does not withstand a review of the Amended Complaint.

RAD Urban's Guaranty establishes Sandstone's right to payment from RAD Urban. FAC ¶¶ 95, 105. Both the voidable and fraudulent transfer claims expressly reference that debt as their basis. *Id.* Further, the Amended Complaint alleges that the Debtor formed the R2 Entities; that the Debtor then caused a transfer of "significant assets from RAD Urban to [the R2 Entities];" and that the R2 Entities then "transferred funds to Debtor and Alexis Miller." *Id.* ¶¶ 45-46. The Amended Complaint also expressly alleges that the Debtor is a subsequent transferee. *Id.* ¶¶ 98,

---

[4] In the portion of his brief directed to Sandstone's claims for nondischargeability based on his fraud and fraudulent concealment, the Debtor attacks a purported nondischargeability claim based on "transfers of [the Debtor's] <u>own</u> property." MPA at p. 12. There is no such claim. The fraudulent transfer-based nondischargeability claims in the Amended Complaint are based on transfers where the initial transferor was <u>RAD Urban</u>, not the Debtor. *See* FAC ¶¶ 49 n.1, 114-20. The Debtor is indeed "liable as the beneficiary" or transferee of these transfers, but contrary to his contentions (MPA at p. 12), these transfers were of RAD Urban's property, not his. Read in the context of the rest of the Amended Complaint, Paragraph 89 of the Amended Complaint simply alleges that the Debtor used his controlled entities to move assets around for his own benefit—not that the Debtor was the transferor in the transactions at issue.

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496



Case: 26-04037 Doc# 26 Filed: 11/04/26 Entered: 11/04/26 22:51:54 Page 20 of 24

108. Additionally, it alleges that the relevant transfers from RAD Urban were not supported by reasonably equivalent value, and that they occurred while RAD Urban was insolvent or caused that entity's insolvency. *Id.* ¶¶ 96-97, 106-07.

Thus, the alleged fraudulent transfer debt is not merely RAD Urban's unpaid Guaranty obligation—it is the Debtor's receipt of RAD Urban funds that could, and should, have been used to repay Sandstone in satisfaction of RAD Urban's obligations under the Guaranty. *Id.* And Sandstone's allegations establish (i) the persons and entities involved in the relevant transfers (*id.* ¶¶ 96, 98, 106, 108); (ii) that the R2 Entities were first transferees and the Debtor and his wife were subsequent transferees (*id.*); (iii) the approximate time frame of the transfers, *i.e.*, following NGI's default on the NGI Note and RAD Urban's default on the Guaranty (*id.* ¶¶ 45-48); (iv) that at least some of the assets involved were "funds," *i.e.*, cash (*id.*); and (v) that the Debtor controlled the entities involved and worked in concert with the other individuals involved. *Id.* ¶¶ 1, 45-48. These allegations are sufficient to plead voidable and constructive fraudulent transfer claims because such claims are not subject to Rule 9(b), since no element of those claims requires an "alleg[ation] [of] fraud." *See* Fed. R. Civ. P. 9(b); *see also*, *e.g.*, *Takiguchi v. MRI Int'l, Inc.*, No. 2:13-cv-01183-JAD-VCF, 2015 U.S. Dist. LEXIS 50962, at *6 (D. Nev. Apr. 10, 2015) ("The weight of authority is that Rule 9 applies to claims of actual fraudulent transfer but not to claims of constructive fraudulent transfer." (collecting cases)).

With respect to its actual fraudulent transfer claims, the Amended Complaint sets forth substantial allegations about the Debtor and his controlled entities' schemes to delay, hinder, and defraud creditors. These allegations go well beyond a "general[]" allegation of fraudulent intent, which Rule 9(b) expressly permits. Fed. R. Civ. P. 9(b). Among other things, the Debtor established 63 Holdings and the 63 Trust immediately upon the NGI Note's maturity, then began transferring his assets to them, and ultimately funneled them back to himself. *See* FAC ¶¶ 35-36. He also diverted cash in which NGI had an interest to himself and RAD Urban. *See id.* ¶ 38. He also attempted (unsuccessfully) to divert cash that would have gone to Sandstone via its interest in two other companies to NGI, so as to effectively pay Sandstone with money he had misappropriated from it. *Id.* ¶¶ 39-43. And, of course, he formed the R2 Entities, and after he and

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

RAD Urban defaulted on the Guaranty, then set about transferring significant assets from RAD Urban to the R2 Entities and funds from the R2 Entities to himself and his wife. *Id.* ¶¶ 43-46.

These facts establish a basis for Sandstone's allegations that the challenged voidable or constructively fraudulent transfers from RAD Urban to the R2 Entities, and subsequent transfers to the Debtor, were undertaken with actual intent to hinder, delay, or defraud creditors, and were thus actually fraudulent transfers. They also give the Debtor sufficient notice to enable him to prepare a responsive pleading. His argument to the contrary is simply a demand for "every conceivable detail incident to the fraud," which Rule 9(b) does not require. *Foisie*, *supra*, 967 F.3d at 50; *see also* § IV.A, *supra* (discussing Rule 9(b) authorities).[5] Accordingly, Sandstone's seventh and eighth claims for relief are sufficient on both a constructive fraudulent or voidable transfer theory and an actual fraudulent transfer theory. *See* Cal. Civ. Code § 3439.04(a) (setting forth elements of UVTA voidable transfer claim); *Kelleher v. Kelleher*, No. 13-cv-05450-MEJ, 2014 U.S. Dist. LEXIS 36330, at *16 (N.D. Cal. Mar. 19, 2014) ("[T]he elements for a fraudulent transfer claim under common law are the same as under [California Civil Code] section 3439."). The Court should therefore reject the Debtor's challenge to Sandstone's state law fraudulent and voidable transfer claims. *See* MPA at p. 14.

**2. The Nondischargeability Claims Are Sufficiently Pled.**

The Debtor attacks Sandstone's nondischargeability claims based on an assertion that Sandstone fails to identify the "transfer or debt on which they depend" or a "first transferee," but the ninth and tenth claims expressly identify as their basis his liability for his receipt of fraudulent transfers from RAD Urban, or subsequent transfers traceable to those transfers, including via the R2 Entities (*i.e.*, the first transferee). *See* FAC ¶¶ 115, 118; *see also* § IV.E.1, *supra* (discussing voidable and fraudulent transfer claims).

---

[5] Moreover, the principle that a plaintiff need only give adequate notice sufficient to enable preparation of a responsive pleading "applies with special force when—as in this case—the plaintiff's claims concern transactions between the defendant and a third party and many, if not all, of the facts missing from the complaint are in the exclusive possession of those other parties." *Foisie*, 967 F.3d at 51 (citing *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 142 F.3d 1041, 1051 (7th Cir. 1998)).

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496



Case: 26-04037 Doc# 26 Filed: 11/04/26 Entered: 11/04/26 22:51:54 Page 22 of 24

The Debtor also argues that Sandstone relies on constructive avoidability to establish nondischargeability (*see* MPA at p. 14), but that argument likewise fails. The Amended Complaint pleads actual fraudulent intent in the alternative to constructive-fraudulent transfer liability. FAC ¶¶ 96, 106. Its supporting allegations include the Debtor's formation and control of the R2 Entities, the diversion of RAD Urban's assets through those entities, and his threat to drive the depleted RAD Urban into bankruptcy. *Id.* ¶¶ 45-47. The FAC further alleges that the Debtor knowingly and willingly received the transfers with the intent to hinder, delay, or defraud RAD Urban's creditors, including Sandstone. *Id.* ¶ 118. These allegations, and more generally, Sandstone's above-described allegations supporting its actual fraudulent transfer claim (*see* § IV.E.1, *supra*), are sufficient to state a valid Section 523(a)(2)(A) nondischargeability claim based on transfers by RAD Urban following its default on the Guaranty. The Supreme Court has squarely held that "the phrase 'actual fraud' in § 523(a)(2)(A) … encompass[es] fraudulent conveyance schemes, even when those schemes do not involve a false representation." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 366 (2016).

Further, Sandstone's allegations underlying its fraudulent transfer and fraud claims (*see* §§ IV.B, IV.E.1, *supra*), establish that the Debtor undertook his fraudulent transfer scheme—including the transfers of RAD Urban property upon which Sandstone's voidable and fraudulent transfer and related nondischargeability claims are based—with specific intent to retain the proceeds of his fraud and prevent payment to Sandstone as required under the Guaranty. Accordingly, Sandstone's allegations establish that the Debtor undertook his fraudulent transfer scheme, including the RAD Urban transfers, with "subjective intent to cause harm or knowledge that harm is substantially certain to result from his actions," which suffices to plead Section 523(a)(6) nondischargeability. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1145 n.3 (9th Cir. 2002). Sandstone has therefore sufficiently pled claims for nondischargeability based on fraudulent transfers from RAD Urban.

**F. <u>If the Court Is Inclined to Grant the Motion, It Should Grant Leave to Amend.</u>**

Should the Court conclude that any portion of the Amended Complaint is insufficiently

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496



Case: 26-04037 Doc# 26 Filed: 11/04/26 Entered: 11/04/26 22:51:54 Page 23 of 24

pled, it should grant leave to amend. "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear … that the complaint could not be saved by amendment." *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012). Here, to the extent the Court concludes that more detailed allegations are required regarding any particular subject, Sandstone should be given the opportunity to provide more detailed allegations. Although the Debtor is sufficiently on notice regarding the basis of Sandstone's claims, if needed, Sandstone can plead additional facts relating to the Debtor's duty to disclose and his fraudulent omissions, more detail about discussions relating to the NGI Note and Guaranty, and/or additional details about transfers by RAD Urban. Similarly, if the Court believes that any information and belief-based allegation is not supported by a sufficiently clear statement of the basis for Sandstone's information and belief, Sandstone can supply that information. Sandstone must have the opportunity to plead those facts before any claim can be dismissed without leave to amend.

## V. **CONCLUSION**

For the foregoing reasons, the Motion should be denied in its entirety. To the extent the Court grants any aspect of the Motion, Sandstone should be given an opportunity to further amend its pleading.

Dated: November 4, 2026

SHARTSIS FRIESE LLP

By: */s/ Ivo Keller*
IVO KELLER

Attorneys for Creditor
SANDSTONE GROUP, LLC

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496



Case: 26-04037 Doc# 26 Filed: 11/04/26 Entered: 11/04/26 22:51:54 Page 24 of 24