SHARTSIS FRIESE LLP
IVO KELLER (Bar #245909)
DIEGO B. FLORES (Bar #324603)
425 Market Street, Eleventh Floor
San Francisco, CA 94105-2496
Telephone: (415) 421-6500
Facsimile: (415) 421-2922
Email: ikeller@sflaw.com
Email: dflores@sflaw.com

BAKER BOTTS L.L.P.
CHERYL A. CAULEY (Bar #252262)
1001 Page Mill Road, Bldg. 1, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
Email: cheryl.cauley@bakerbotts.com

BAKER BOTTS L.L.P.
KARAN SINGH DHADIALLA (Bar #296313)
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300
Email: karan.dhadialla@bakerbotts.com

Attorneys for Creditor
SANDSTONE GROUP, LLC



UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>RANDALL DAVID MILLER,<br><br>Debtor. | Case No. 26-40698 WJL<br><br>Chapter Number: 7<br><br>Adv. Proc. No. 26−04037<br><br>**SANDSTONE GROUP, LLC'S OPPOSITION TO CERTAIN NON-DEBTOR DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY, FRAUDULENT TRANSFERS, AND STATE LAW CLAIMS** |
| SANDSTONE GROUP, LLC, a California limited liability company,<br><br>Plaintiff, | |

v.

RANDALL MILLER, an individual; RAD URBAN INC., a Delaware corporation; ROBERT MILLER, individually and in his capacity as trustee of the 63 Holdings Trust; 63 REALTY HOLDINGS, LLC, a Wyoming limited liability company; ALEXIS MILLER, an individual; R2 BUILDING, LLC, a Delaware limited liability company; R2 BUILDING, INC., a Delaware corporation; MICHAEL G. KASOLAS, only in his capacity as Chapter 7 Trustee; and DOES 1-20, inclusive,

Defendants.

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1
II. BACKGROUND ..... 2
III. LEGAL STANDARD ..... 5
IV. ARGUMENT ..... 5
- A. Sandstone's Claims Provide Sufficient Notice to the Non-Debtor Defendants of its Allegations. ..... 5
- B. Sandstone's Aiding and Abetting Fraud Claim is Not an Estate Claim. ..... 9
- C. Sandstone Has Sufficiently Pled a Fraud Claim Against RAD Urban. ..... 11
- D. Sandstone Has Sufficiently Pled its Fraudulent Concealment Claim. ..... 13
- E. Sandstone Has Sufficiently Pled its Aiding and Abetting Claim. ..... 14
- F. Sandstone Has Sufficiently Pled its Fraudulent and Voidable Transfer Claims. ..... 15
- G. Sandstone Does Not Object to Dismissing Doe Defendants, but Such Dismissal Cannot Cut Off Sandstone's Right to Amend to Include New Defendants Identified in Discovery. ..... 17
- H. If the Court Is Inclined to Grant the Motion, It Should Grant Leave to Amend. ..... 18

V. CONCLUSION ..... 19


Case: 26-04037 Doc# 27 Filed: 11/04/26 Entered: 11/04/26 22:53:43 Page 3 of 24

## TABLE OF AUTHORITIES

**Federal Cases**

*Ahcom, Ltd. v. Smeding*, 623 F.3d 1248 (9th Cir. 2010) ........ 10

*Amalgamated Bank v. Facebook, Inc. (In re Facebook, Inc. Sec. Litig.)*, 87 F.4th 934 (9th Cir. 2023) ........ 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 5, 14

*Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047 (9th Cir. 2011) ........ 7

*Clinton v. Sec. Ben. Life Ins. Co.*, 63 F.4th 1264 (10th Cir. 2023) ........ 6

*Dreamstone Entm't v. Maysalward Inc.*, No. 2:14-cv-02063-CAS(SSx), 2014 U.S. Dist. LEXIS 81084 (C.D. Cal. June 11, 2014) ........ 7

*Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27 (1st Cir. 2020) ........ 6, 17

*Harris v. County of Orange*, 682 F.3d 1126 (9th Cir. 2012) ........ 18

*In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776 (N.D. Cal. 2017) ........ 6

*John-Charles v. California*, 646 F.3d 1243 (9th Cir. 2011) ........ 6

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ........ 5

*Kelleher v. Kelleher*, No. 13-cv-05450-MEJ, 2014 U.S. Dist. LEXIS 36330 (N.D. Cal. Mar. 19, 2014) ........ 17

*Kleidman v. Pearlman (In re Pearlman)*, No. CC-26-1005-LSG, 2026 Bankr. LEXIS 1558 (B.A.P. 9th Cir. June 22, 2026), ........ 10

*Langille v. Berthel Fisher & Co. Fin. Servs.*, No. 2:19-cv-00454-KJM-AC, 2020 U.S. Dist. LEXIS 122857 (E.D. Cal. July 10, 2020) ........ 6

*Moore v. Kayport Package Express*, 885 F.2d 531 (9th Cir. 1989) ........ 5

*Navarro* v. *Block*, 250 F.3d 729 (9th Cir. 2001) ........ 5

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) ........ 6, 9

*Pearson v. Port of Morrow*, No. 2:24-cv-362-SI, 2026 U.S. Dist. LEXIS 236877 (D. Or. Oct. 16, 2026) ........ 17

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ........ 8

*Takiguchi v. MRI Int'l, Inc.*, No. 2:13-cv-01183-JAD-VCF, 2015 U.S. Dist. LEXIS 50962 (D. Nev. Apr. 10, 2015) ........ 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ........ 5

*U.S. ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) ........ 7

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496



Case: 26-04037 Doc# 27 Filed: 11/04/26 Entered: 11/04/26 22:53:43 Page 4 of 24

*U.S. v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016). .......... 9

**State Cases**

*LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997) .......... 13

*Tenzer v. Superscope, Inc.*, 39 Cal.3d 18 (1985) .......... 11

*Uecker v. Zentil*, 244 Cal. App. 4th 789 (2016).......... 9

*Warner Constr. Corp. v. City of Los Angeles*, 2 Cal.3d 285 (1970) .......... 13

**Federal Statutes**

11 U.S.C. §§ 523 .......... 1

**State Statutes**

Cal. Civ. Code § 3439.04(a) .......... 17

**Federal Rules**

Federal Rule of Civil Procedure 8 .......... 5

Federal Rule of Civil Procedure 9(b) .......... passim

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496



Case: 26-04037 Doc# 27 Filed: 11/04/26 Entered: 11/04/26 22:53:43 Page 5 of 24

Plaintiff and Creditor Sandstone Group, LLC ("Sandstone") submits this Opposition to Certain Non-Debtor Defendants RAD Urban, Inc. ("RAD Urban"), Robert Miller, individually and as trustee of the 63 Holdings Trust (the "63 Trust"), 63 Realty Holdings, LLC ("63 Holdings"), and Alexis Miller's Motion to Dismiss Plaintiff's First Amended Complaint for Determination of Dischargeability Under 11 U.S.C. §§ 523(a)(2) and (a)(6), Fraudulent Transfers, and State Law Claims (the "Motion," DN 18).[1]

## I. INTRODUCTION

Debtor and Defendant Randall Miller (the "Debtor") and his controlled entities falsely promised Sandstone they would repay a $2 million loan and fraudulently concealed material information that, if known to Sandstone, would have prevented Sandstone from entering into the loan transaction. The Debtor, his controlled entities, and his affiliates (including all of the Defendants) then implemented a series of transfers and transactions to ensure that the Debtor could retain his ill-gotten funds and Sandstone would not be repaid. Following the Debtor's bankruptcy filing, Sandstone initiated this action seeking to have the Debtor's related debts deemed nondischargeable. Sandstone also asserts state law claims for breach of guaranty, fraud, and fraudulent concealment against the Debtor and others, an aiding and abetting claim against certain Defendants, as well as state law voidable and fraudulent transfer claims based on transfers by one of the Debtor's controlled entities and related nondischargeability claims.

In the Motion, the Non-Debtor Defendants assert that Sandstone's aiding and abetting claim belongs to the Debtor's bankruptcy estate and is insufficiently pled. But Sandstone's aiding and abetting claim cannot belong to the bankruptcy estate as a matter of law, and Sandstone has pled facts sufficient to support liability. The Non-Debtor Defendants also argue that Sandstone's fraud, fraudulent concealment, and fraudulent transfer claims are not pled in sufficient detail under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").[2] Those challenges also fail because Rule 9(b),

---

[1] Moving parties RAD Urban, Robert Miller, the 63 Trust, 63 Holdings, and Alexis Miller are herein collectively referred to as the Non-Debtor Defendants.

[2] Unless otherwise indicated, references to "Rules" herein are to the Federal Rules of Civil Procedure.

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496



Case: 26-04037 Doc# 27 Filed: 11/04/26 Entered: 11/04/26 22:53:43 Page 6 of 24

as relevant here, requires only that claims sounding in fraud be alleged with sufficient particularity to give the defendant notice of the allegations and enable the defendant to prepare an answer and defense, taking into account that some information may be uniquely in the defendant's possession and unavailable to the plaintiff. The Non-Debtor Defendants do not come close to establishing that the Amended Complaint's allegations fall short of that standard. Additionally, as to Sandstone's constructive fraudulent transfer claims, Rule 9(b) does not apply at all, and Sandstone's allegations give the Non-Debtor Defendants sufficient notice of the claims against them, in any case.

Accordingly, the Court should deny the Motion in its entirety.

## II. BACKGROUND

In its First Amended Complaint ("FAC" or the "Amended Complaint," DN 12), Sandstone alleges that in or about March 2019, the Debtor guaranteed a $2 million loan that Sandstone made to NGI East Bay Portfolio, LLC ("NGI")—an entity which the Debtor controlled—pursuant to a promissory note dated March 25, 2019 (the "NGI Note"). FAC ¶¶ 1, 17. The Debtor and RAD Urban both signed a written guaranty of the NGI Note (the "Guaranty"), which obligated them to perform NGI's payment obligations under the NGI Note (*id.* ¶¶ 19-20), and which was a material inducement to Sandstone lending under the NGI Note. *Id.* ¶ 71.

Unbeknownst to Sandstone, the Debtor never intended that the funds NGI borrowed would be paid back, whether by NGI or by the Debtor or RAD Urban, and the Debtor and his entities also failed to disclose other information that would have been crucial for Sandstone to understand the risks it was taking in the NGI Note transaction. *See, e.g., id.* ¶¶ 31, 59-60. Also unbeknownst to Sandstone, at the time it lent to NGI, "NGI and RAD Urban were insolvent, and RAD Urban had to borrow money from NGI, which in turn had to borrow money from Plaintiff, including in order to meet financial obligations as they came due." *See, e.g.*, *id.* ¶ 72. The Debtor was aware of these facts, but concealed them in order to induce Sandstone to lend under the NGI Note. *See, e.g.*, *id.*

When the NGI Note came due, the Debtor and his controlled entities failed completely to perform: neither the Debtor nor RAD Urban has paid a dime under the Guaranty, and NGI's only payment on the NGI Note came in connection with its own bankruptcy proceedings in this Court—in other words, under the Court's watchful eye, where Debtor could not simply abscond with the

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496



Case: 26-04037 Doc# 27 Filed: 11/04/26 Entered: 11/04/26 22:53:43 Page 7 of 24

money. *Id.* ¶¶ 23-24. Further, the Debtor, his affiliated entities, and his confederates implemented a series of transfers and transactions aimed at keeping creditors, including Sandstone, from reaching their ill-gotten assets. For example:

- Beginning in or about May 2020, after the Debtor, NGI, and RAD Urban had defaulted on the NGI Note and Guaranty, the Debtor created the 63 Trust with his brother, Robert Miller, as Trustee; then conveyed his home into the 63 Trust with the assistance of his wife, Alexis Miller; and then liquidated the asset so as to hide his assets and place an additional party between creditors and those assets. *Id.* ¶ 35.
- Also in or about May 2020, the Debtor created 63 Holdings and then worked with Robert Miller and Alexis Miller in 2021 to acquire real property via the 63 Trust and transfer it to 63 Holdings. *Id.* ¶ 37. Again, this was done to hide the Debtor's assets from creditors and enable the Debtor to retain his ill-gotten gains. *See id.*
- In 2021, the Debtor fraudulently attempted to dissolve two companies that, together with NGI, held equity stakes in a property in Berkeley, California (the "Dwight Property"), so as to ensure that proceeds from that property's sale would go exclusively to NGI. *Id.* ¶¶ 39-42. Since Sandstone held interests in those other companies, the Debtor's scheme was essentially an attempt to pay Sandstone with money misappropriated from Sandstone. *See id.* Although Sandstone caught the Debtor red-handed in this particular scheme and was able to prevent the Debtor from completing it (*id.* ¶ 42), the scheme itself is further evidence of the Debtor's fraudulent intent with respect to the other facts alleged in the Amended Complaint.
- To further avoid RAD Urban's financial responsibilities, the Debtor formed two other entities:R2 Building, Inc., a Delaware corporation ("R2 Inc."), and R2 Building, LLC, a Delaware limited liability company ("R2 LLC," and together with R2 Inc., the "R2 Entities"). *Id.* ¶ 45. After forming the R2 Entities, the Debtor transferred significant assets from RAD Urban to them, and the R2 Entities in turn transferred funds to the Debtor and Alexis Miller, while RAD Urban was insolvent and in an effort to keep assets out of creditors' hands. *Id.* ¶¶ 45-48.

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496


Case: 26-04037 Doc# 27 Filed: 11/04/26 Entered: 11/04/26 22:53:43 Page 8 of 24

Thus far, the Debtor's efforts have succeeded: Other than the above-referenced payment incident to NGI's bankruptcy, Sandstone has not been paid anything under the NGI Note or Guaranty, and it is currently owed an amount in excess of $2.98 million. *Id.* ¶ 24.

Based on these factual allegations, Sandstone asserts ten claims for relief:

- Sandstone's first claim, for breach of guaranty, is based on allegations that the Debtor and RAD Urban breached the Guaranty. *See* FAC ¶¶ 50-57; *see also* FAC ¶¶ 17-24. This claim is asserted against the Debtor and RAD Urban, as well as against the R2 Entities, which are named as RAD Urban's "alter egos, continuations, and/or successors-in-interest." *Id.* ¶ 55.
- Sandstone's second and third claims, for fraud and fraudulent concealment, are based on allegations that the Debtor and RAD Urban defrauded Sandstone in connection with the NGI Note and Guaranty. *See id.* ¶¶ 58-76. These claims are asserted against the R2 Entities as "alter egos, continuations, and/or successors-in-interest to RAD Urban" (*id.* ¶¶ 68, 76), as well as the Debtor and RAD Urban. *Id.* ¶¶ 58-76.
- Sandstone's fourth claim is against the R2 Entities, Robert Miller, 63 Holdings, and Alexis Miller, for aiding and abetting the Debtor's fraud. *See id.* ¶¶ 77-82.
- Sandstone's seventh and eighth claims seek to recover from RAD Urban, the R2 Entities, the Debtor, and Alexis Miller based on fraudulent and/or voidable transfers made by RAD Urban to those Defendants. *See id.* ¶¶ 94-113.
- Sandstone's fifth, sixth, ninth, and tenth claims seek determinations that certain of the Debtor's debts to Sandstone are nondischargeable. *See id.* ¶¶ 83-93, 114-120.

Through the Motion, the Non-Debtor Defendants challenge Sandstone's second through fourth, seventh, and eighth claims for relief based on assertions that Sandstone lacks standing to bring its aiding and abetting claim and has not pleaded sufficient factual detail, including under Rule 9(b), with respect to its other claims. *See generally* Memorandum of Points and Authorities in Support of Motion ("MPA," DN 18-1).

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

## III. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of a claim. To survive a motion to dismiss, a complaint must only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In adjudicating a motion to dismiss, a court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro* v. *Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citation omitted).

Rule 8 provides that a claim suffices so long as the plaintiff provides "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), and Rule 9(b) imposes a heightened pleading standard for certain types of allegations. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

"Where fraud is not an essential element of a claim, only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). Thus, "[t]o the extent a party does not aver fraud, the party's allegations need only satisfy the requirements of Rule 8(a)(2)." *Id.* "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989).

## IV. ARGUMENT

### A. Sandstone's Claims Provide Sufficient Notice to the Non-Debtor Defendants of its Allegations.

The Non-Debtor Defendants devote several pages of their brief to argument that Sandstone

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

has not sufficiently pled its claims under Rule 9(b). *See* MPA at 8-11. But the Non-Debtor Defendants make no effort to connect the purported lack of detail to the sufficiency of any claim as a whole, even though, as explained below, that is the appropriate focus under Rule 9(b). *See id.* Instead, the Non-Debtor Defendants invoke Rule 9(b) generally and invite the Court to develop their analysis of its applicability to each claim for them. The Court accordingly may disregard these arguments. *See, e.g., John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011) (finding that a party "waived" an argument by "fail[ing] to develop [it]"). And, in any event, the Amended Complaint provides sufficient detail to put the Non-Debtor Defendants on notice of Sandstone's claims and the basis for its fraud allegations, meeting Rule 9(b)'s requirements.

Rule 9(b) requires only that "allegations of fraud [be] specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (citations omitted); *accord Amalgamated Bank v. Facebook, Inc. (In re Facebook, Inc. Sec. Litig.)*, 87 F.4th 934, 947 (9th Cir. 2023). A complaint can thus "satisfy Rule 9(b)'s requirements when its allegations are sufficiently particularized when 'taken as a whole.'" *Clinton v. Sec. Ben. Life Ins. Co.*, 63 F.4th 1264, 1280 (10th Cir. 2023) (quoting *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1257 (10th Cir. 2016)); *accord In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 795 (N.D. Cal. 2017) ("Viewing the complaint as a whole, and taking into account Rule 9(b)'s instruction that 'knowledge . . . may be alleged generally,' it is plausible that [defendant] knew of and failed to disclose information contrary to those representations."). "When in doubt, the court must ultimately be guided by the question of 'how much detail is necessary to give adequate notice to an adverse party and to enable that party to prepare a responsive pleading[?]'" *Langille v. Berthel Fisher & Co. Fin. Servs.*, No. 2:19-cv-00454-KJM-AC, 2020 U.S. Dist. LEXIS 122857, at *11 (E.D. Cal. July 10, 2020) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1298 (4th ed. 2019)).

Rule 9(b) does not require a "blow-by-blow account" or for a plaintiff to "allege every conceivable detail incident to the fraud." *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 50 (1st Cir. 2020). Thus, although courts sometimes describe Rule 9(b) as requiring that pleadings

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496



Case: 26-04037 Doc# 27 Filed: 11/04/26 Entered: 11/04/26 22:53:43 Page 11 of 24

state "the who, what, when, where, and how of the misconduct charged" (*see*, *e.g.*, *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation omitted)), the requisite particularity is ultimately "case- and context-specific." *U.S. ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017); *see also*, *e.g.*, *Dreamstone Entm't v. Maysalward Inc.*, No. 2:14-cv-02063-CAS(SSx), 2014 U.S. Dist. LEXIS 81084, at *9 (C.D. Cal. June 11, 2014) ("[W]hile some cases hold that a plaintiff must identify the 'who, what, when, where, and how' of the alleged fraud, these cases do not articulate a rigid checklist," citing *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)).

Here, taken as a whole, Sandstone's fraud-based allegations are sufficiently particularized to put the Non-Debtor Defendants on notice of their misconduct. The Amended Complaint includes numerous allegations regarding the nature of the fraud for which Sandstone seeks to hold the Non-Debtor Defendants liable. *See* § II, *supra*. In their Motion, the Non-Debtor Defendants appear to concede as much; notably, they do not claim to lack sufficient notice about the substance of Sandstone's claims such that they cannot meaningfully answer. Rather, the thrust of their argument is that Sandstone theoretically could assert more detail in support of several of its allegations. *See* MPA at 8-10. For example, the Non-Debtor Defendants argue that the Amended Complaint

> alleges only that, at some unspecified point during "the negotiation of the NGI Note and Guaranty," Mr. Miller "represented" that RAD Urban "was in good financial condition" and that an unidentified "Westbrook" entity would lend "on the same terms." [FAC] ¶¶ 28-29. It never identifies when any statement was made, who at Sandstone received it, whether it was written or oral, or the words used.

MPA at 10.

This representative excerpt highlights the weakness of the Non-Debtor Defendants' argument. The "'Westbrook' entity" <u>is</u> identified (as Westbrook), and the quoted allegation <u>does</u> identify the timing of the Debtor's statement regarding Westbrook (during the negotiation of the NGI Note and Guaranty). Further, the Non-Debtor Defendants make no effort to connect the purported lack of detail to the sufficiency of any claim. *See id.* at 8-11. They merely point out that pleading with greater particularity is theoretically possible, but advance no meaningful argument that the incremental particularity is actually needed to give adequate notice and enable preparation


Case: 26-04037 Doc# 27 Filed: 11/04/26 Entered: 11/04/26 22:53:43 Page 12 of 24

of a responsive pleading or defense. *See* MPA at 8-11.

Similarly, the Non-Debtor Defendants attack certain of Sandstone's information and belief-based allegations, but ignore allegations that show the basis of Sandstone's information and belief. They point to Sandstone's allegation that Debtor "formed 63 [Holdings] 'apparently for the purpose' of shielding assets" and that "the 63 Trust acquired property 'presumably with the funds provided by Debtor,'" but ignore Sandstone's allegations that the Debtor formed 63 Holdings and the 63 Trust at about the time the NGI Note and Guaranty went into default and immediately set about funneling assets through them. *See* MPA at 9; FAC ¶¶ 34-35. Similarly, they criticize Sandstone's allegation that "the R2 Building enterprise 'appears to be' a continuation of RAD Urban," but ignore allegations that the R2 Entities share personnel and an address with RAD Urban, and RAD Urban transferred significant assets to the R2 Entities. *See* MPA at 9; FAC ¶¶ 45-46. And the Non-Debtor Defendants' criticism of Sandstone's allegation that the Debtor and Alexis Miller "received sale proceeds" and "disburs[ed] [such] funds to affiliated entities or persons" ignores Sandstone's allegations regarding the Debtor's overall scheme to retain the proceeds of his fraud, and the role of the Debtor and Alexis Miller's home in that scheme. *See* MPA at 9; FAC ¶¶ 34-46.

The Non-Debtor Defendants also argue that the Amended Complaint impermissibly "alleges collectively that '[t]he R2 Entities, Robert Miller … , 63 [Holdings], and Alexis Miller knew' of [Debtor's] fraud and 'gave substantial assistance or encouragement to it…, without differentiating what each defendant knew, when each learned it, or what specific assistance each is alleged to have provided." MPA at 9 (citation omitted). In other words, the Non-Debtor Defendants essentially contend that Sandstone must plead various matters that are uniquely in their knowledge with exacting particularity—which, as explained above, Rule 9(b) does not require.

Further, the Non-Debtor Defendants' invocation of language in *Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) stating that a pleading must "inform each defendant separately of the allegations surrounding his alleged participation in the fraud," 476 F.3d at 765-66, misses the mark. That case attributed no "specific misconduct" to two defendants. *See id.* at 766. Here, by contrast, the Amended Complaint specifically alleges multiple ways that the Non-Debtor

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

Defendants assisted Debtor in making and receiving various transfers aimed at allowing him to retain the proceeds of his fraud. *See* FAC ¶¶ 34-37, 44-49. The Ninth Circuit recognizes that "[t]here is no flaw in a pleading" that uses "collective allegations … to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." *U.S. v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016). This is precisely such a situation, yet the Non-Debtor Defendants fail to grapple with this authority.

The Non-Debtor Defendants, moreover, do not explain why the above-discussed purported pleading defects render them unable to respond to any claim. They also fail to address Ninth Circuit authority "h[olding] that the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge. In such situations, plaintiffs can not be expected to have personal knowledge of the relevant facts." *Neubronner*, 6 F.3d at 672 (citations omitted). This is precisely such a situation: Sandstone has limited visibility into the Debtor's, Alexis Miller's, and their affiliates' dealings and the above-discussed matters the Non-Debtor Defendants complain are insufficiently pleaded are uniquely within those parties' and the Debtor's knowledge. Thus, the Non-Debtor Defendants' argument that Sandstone's claims theoretically could include additional detail does not properly address whether Sandstone's claims pass muster under Rule 9(b), and the Court should disregard it. Sandstone's claims are sufficiently pled.

**B. <u>Sandstone's Aiding and Abetting Fraud Claim is Not an Estate Claim.</u>**

The Non-Debtor Defendants challenge Sandstone's fourth claim for relief, for aiding and abetting fraud, based on the contention that it belongs to the Debtor's bankruptcy estate and consequently Sandstone cannot assert it. MPA at 11-13. That contention is transparently incorrect: the Debtor could not have sued the Non-Debtor Defendants for aiding and abetting his own fraud, including because California recognizes "[t]he doctrine of *in pari delicto*[, which] dictates that when a participant in illegal, fraudulent, or inequitable conduct seeks to recover from another participant in that conduct … the law will aid neither…." *Uecker v. Zentil*, 244 Cal. App. 4th 789, 792 n.1 (2016) (citation omitted). As a result, the estate has no aiding and abetting fraud claim based on the Non-Debtor Defendants' conduct in assisting the Debtor's fraud against Sandstone.

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496



Case: 26-04037 Doc# 27 Filed: 11/04/26 Entered: 11/04/26 22:53:43 Page 14 of 24

The Non-Debtor Defendants seek to elide this reality by arguing, in essence, that Sandstone's aiding and abetting fraud claim would entitle Sandstone to relief akin to the relief available on a fraudulent transfer claim. *See* MPA at 11-13. But they do not cite a single authority holding that a claim belongs to a bankruptcy estate simply because there exists an estate claim that would enable similar relief. *See id.*

The one non-fraudulent transfer case that the Non-Debtor Defendants do cite, *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248 (9th Cir. 2010), involved allegations "of general conduct" by which the plaintiff expressly alleged that the defendants "diverted corporate assets to the detriment of *all creditors*." 623 F.3d at 1251 (emphasis in original). The Non-Debtor Defendants' other case, *Kleidman v. Pearlman (In re Pearlman)*, No. CC-26-1005-LSG, 2026 Bankr. LEXIS 1558 (B.A.P. 9th Cir. June 22, 2026), is completely inapposite: there, a plaintiff sued the debtor and his wife prepetition, alleging that the debtor fraudulently transferred assets to the wife. 2026 Bankr. LEXIS 1558, at *1. Following the debtor's bankruptcy filing, the plaintiff maintained the litigation and opposed a stay violation motion asserting that "his postpetition litigation conduct was targeted at [the] nondebtor [wife]." *Id.* at *1-2. *Kleidman* thus on its face involved a fraudulent transfer claim based on transfers by the debtor.

Sandstone's aiding and abetting claim, by contrast, alleges that the Non-Debtor Defendants aided and abetted the Debtor's fraud on Sandstone, to the detriment of Sandstone. FAC ¶¶ 77-82. It alleges no harm to any other creditor.[3] Accordingly, only Sandstone could bring this claim based on these allegations. Along similar lines, the Non-Debtor Defendants' argument that "any cognizable, non-estate claim is confined to RAD Urban" (MPA at 13) fails because the Non-Debtor Defendants' conduct in aiding and abetting Debtor's fraud harmed Sandstone, and that harm is specific to Sandstone, not a "generalized, asset-depletion injury that belongs to the estate." *Id.*

[3] Although the Amended Complaint does allege (at paragraph 34) that the Debtor's actions shielded his assets "from Sandstone and other creditors," it does not allege that this conduct harmed all creditors; or, indeed, that any other creditors were harmed by it.



SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

### C. <u>Sandstone Has Sufficiently Pled a Fraud Claim Against RAD Urban.</u>

Sandstone's second claim for relief, for fraud, is based on allegations that the Debtor, and NGI and RAD Urban through the Debtor, falsely represented to Sandstone that they intended to perform on the NGI Note and Guaranty, and that Westbrook desired to lend to NGI on the same terms as Sandstone and would in fact lend on the same terms. *See* FAC ¶¶ 58-63.[4] This claim is based on specific representations the Debtor made and allegations that amount to circumstantial evidence of the Debtor's fraudulent intent. The Non-Debtor Defendants' argument that Sandstone has not sufficiently alleged intent fails for at least two reasons.

First, Rule 9(b) expressly provides that "[m]alice, intent, knowledge, and other conditions of a person's mind"—for example, a subjective lack of intent to perform on a contractual promise—"may be alleged generally." Fed. R. Civ. P. 9(b). The plain text of Rule 9(b) thus undercuts the Non-Debtor Defendants' assertion that Sandstone failed to sufficiently plead the Debtor's lack of intent that he and his controlled entities would perform on the NGI Note and Guaranty.

Second, the Non-Debtor Defendants challenge this claim based on a suggestion that Sandstone has somehow failed to allege "something more than nonperformance … to prove [D]efendant's intent not to perform his promise." MPA at 14 (quoting *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 30 (1985)). The Non-Debtor Defendants rely on the California Supreme Court's opinion in *Tenzer* for this point, but they conspicuously omit from their brief *Tenzer*'s express statement that "fraudulent intent must often be established by circumstantial evidence." *Tenzer*, 39 Cal.3d at 30. In fact, *Tenzer* provides examples of circumstances that support a finding of fraudulent intent: "fraudulent intent has been inferred from such circumstances as defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance, or his continued assurances after it was clear he would not perform." *Tenzer*, *supra*, 39 Cal.3d at 30

---

[4] Sandstone's allegations, including its allegations regarding Debtor's representations about Westbrook, also establish a fraud claim and related nondischargeability claim on a fraudulent inducement theory; however, because the Non-Debtor Defendants do not challenge Sandstone's pleading with respect to that theory of recovery, Sandstone does not address it further herein.

(citation omitted).

Sandstone alleges precisely such circumstances, and more. At the time the parties entered into the NGI Note and Guaranty, NGI was "insolvent or nearing insolvency[,] RAD Urban was also insolvent," and "Debtor affirmatively—and, consistent with his lack of intent that he or RAD Urban would ever perform on the Guaranty, dishonestly—represented to Sandstone that RAD Urban was in good financial condition … ." FAC ¶¶ 27-28. Further, RAD Urban made no attempt to perform, and instead actively diverted assets that could have been used to satisfy obligations owed to Sandstone. Specifically, the NGI Note came due in March 2020, NGI only partially performed years later under Bankruptcy Court supervision, and the Debtor and RAD Urban have not performed at all. *Id.* ¶ 23. Rather, shortly following the NGI Note's maturity, the Debtor undertook efforts to transfer assets that could have been used to pay Sandstone (*id.* ¶¶ 34-35), and later diverted funds from a property in which NGI had an interest to himself and RAD Urban, which he controlled. *Id.* ¶¶ 38-42. The Debtor, and RAD Urban through him, even sought to use his nonperformance as a cudgel to obtain a release on their Guaranty liability. *Id.* ¶ 43.

The Debtor also falsely represented to Sandstone that an entity known as "Westbrook" would lend to NGI "side by side and on the same terms" as Sandstone (*id.* ¶ 29), when in reality Westbrook lent on far different terms. *Id.* ¶ 30. Those terms, moreover, were far more favorable than the terms on which Sandstone lent: its note purported to subordinate all other NGI notes to it until the debt's payment in full and would have required that NGI pay Westbrook double what NGI initially borrowed. *Id.* The nature of Westbrook's loan was not within Sandstone's knowledge—and the Debtor's affirmative misrepresentations regarding the terms of that loan establish fraudulent intent and amount to much more than alleging simple "nonperformance." These circumstances also establish the Debtor's and his controlled entities' lack of intent to perform under the NGI Note and Guaranty.

The Non-Debtor Defendants assert in conclusory fashion that the Debtor's "contemporaneous fraudulent intent" cannot plausibly be attributed to RAD Urban (MPA at 14), but that ignores that the Debtor controlled RAD Urban. *See*, *e.g.*, FAC ¶¶ 44-45. They also ignore that Rule 9(b) allows a plaintiff to allege intent "generally." Fed. R. Civ. P. 9(b). Sandstone thus

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

pleads fraudulent intent. Further, the Non-Debtor Defendants' attempt to invoke the economic loss rule (MPA at 14) fails because California law is clear that the economic loss rule <u>does not apply</u> "where the contract was fraudulently induced." *Dhital v. Nissan N. Am., Inc.*, 84 Cal. App. 5th 828, 838 (2022). Consequently, Sandstone has stated a claim for fraud.

**D. <u>Sandstone Has Sufficiently Pled its Fraudulent Concealment Claim.</u>**

The Non-Debtor Defendants also challenge the sufficiency of Sandstone's fraudulent concealment claim. The exact contours of their challenge are muddled: they note that fraudulent concealment claims require a duty to disclose and assert in conclusory fashion that there is "no free-standing duty on a borrower or guarantor to volunteer its financial condition"; complain that "Paragraph[s] 28 to 32 identify neither the individual recipient nor the occasion or means of the alleged partial disclosures"; and argue that none of "Robert Miller, 63 [Holdings] and Alexis Miller … is alleged to have had any relationship with the Plaintiff." MPA at 14-15. The final point, regarding Robert Miller, 63 Holdings, and Alexis Miller, is plainly irrelevant since the fraudulent concealment claim is not asserted against any of those Defendants. *See* FAC ¶¶ 69-76. The Non-Debtor Defendants' other arguments fare no better.

Under California law, a duty to disclose exists in a non-fiduciary relationship where,

> (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; [or] (3) the defendant actively conceals discovery from the plaintiff.

*Warner Constr. Corp. v. City of Los Angeles*, 2 Cal.3d 285, 294 (1970) (citations omitted); *accord LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336-37 (1997) (cited in MPA at 14).

The Amended Complaint alleges just such a situation here. It alleges that (i) "[a]t the time [Sandstone] loaned NGI $2 million under the NGI Note, NGI and RAD Urban were insolvent, and RAD Urban had to borrow money from NGI, which in turn had to borrow money from [Sandstone], including in order to meet financial obligations as they came due"; (ii) the Debtor (who controlled and acted on behalf of RAD Urban) knew these facts and concealed them; and (iii) Sandstone could not reasonably have discovered these facts. FAC ¶ 72; *see also* FAC ¶¶ 1, 25, 28. The Non-Debtor Defendants do not even attempt to explain why these allegations are



SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

Case: 26-04037 Doc# 27 Filed: 11/04/26 Entered: 11/04/26 22:53:43 Page 18 of 24

insufficient to give rise to a duty to disclose.

Likewise, the Non-Debtor Defendants do not attempt to identify the "partial disclosures" in Paragraphs 28 to 32 that they contend are insufficiently pled, or to explain why Sandstone's purported failure to set forth the "individual recipient[,] … occasion or means" of these disclosures renders RAD Urban—the only moving Defendant against whom the fraudulent concealment claim is asserted (*see* FAC ¶¶ 69-76)—unable to answer or defend against the claim. MPA at 14-15. Instead, the Non-Debtor Defendants insist that Sandstone must plead the type of "blow-by-blow account … alleg[ing] every conceivable detail incident to the fraud" that Rule 9(b) does not require. *Foisie*, 967 F.3d at 50. Accordingly, the Motion's challenge to Sandstone's fraudulent concealment claim fails.

### E. Sandstone Has Sufficiently Pled its Aiding and Abetting Claim.

The Non-Debtor Defendants challenge the sufficiency of Sandstone's aiding and abetting claim (*see* MPA at 15-16), but this challenge fares no better than their standing argument directed to that claim. First, the Motion argues that the aiding and abetting claim fails because the underlying fraud and fraudulent concealment claims fail. *See id.* at 15. But those claims are sufficiently pled, as explained above. *See* §§ IV.C, D, *supra*.

Second, the Non-Debtor Defendants complain that "the assistance [Sandstone] alleges bears no connection to the underlying tort" because the asset transfers with which the Non-Debtor Defendants assisted are "unrelated" to the underlying fraud. MPA at 15. But that argument ignores that the asset transfers were specifically intended to ensure that the Debtor and his controlled entities could retain the money they fraudulently obtained from Sandstone. *See* FAC ¶ 80. In other words, the connection between the assistance the Non-Debtor Defendants provided and the underlying fraud is that the assistance allowed the principal tortfeasors to retain the proceeds of their fraudulent conduct, which was part of the overall fraudulent scheme.

Third, the Non-Debtor Defendants incorrectly claim that Sandstone only alleges, without more, that the Debtor, RAD Urban, and the R2 Entities knew they were committing fraud and/or fraudulent concealment, and that this allegation represents an insufficient "threadbare recital" under applicable authority. *See* MPA at 15 (citing *Iqbal*, *supra*, 556 U.S. at 678). Sandstone alleges

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

more. The Non-Debtor Defendants' argument ignores the Amended Complaint's express allegation that the Non-Debtor Defendants actively participated in various property transfers and transactions <u>immediately following</u> the Debtor's and RAD Urban's defaults on the Guaranty, including a multi-step indirect sale of the Debtor and Alexis Miller's home, all for the benefit of the Debtor and his controlled entities. FAC ¶¶ 34-37. Further, Alexis Miller and Robert Miller share close relationships of trust with the Debtor—they are his wife and brother, respectively—and 63 Holdings and the 63 Trust were formed at the Debtor's behest. *See id*. These allegations support an inference that the Non-Debtor Defendants knew of the Debtor and his entities' fraud. Accordingly, the Motion's attacks on Sandstone's aiding and abetting claim all fail.

### F. <u>Sandstone Has Sufficiently Pled its Fraudulent and Voidable Transfer Claims.</u>

Sandstone has pled sufficient detail that forms the basis for its fraudulent and voidable transfer claims. The Non-Debtor Defendants argue that the Amended Complaint lacks sufficient detail about the relevant transfers (*see* MPA at 10-11), but that argument does not withstand a review of the Amended Complaint.

RAD Urban's Guaranty establishes Sandstone's right to payment from RAD Urban. FAC ¶¶ 95, 105. Both the voidable and fraudulent transfer claims expressly reference that debt as their basis. *Id.* Further, the Amended Complaint alleges that the Debtor formed the R2 Entities; that he then caused a transfer of "significant assets from RAD Urban to [the R2 Entities];" and that the R2 Entities then "transferred funds to Debtor and Alexis Miller." FAC ¶¶ 45-46. The Amended Complaint also alleges that Alexis Miller is a subsequent transferee. *Id.* ¶¶ 98, 108. Additionally, it alleges that the relevant transfers from RAD Urban were not supported by reasonably equivalent value, and that they occurred while RAD Urban was insolvent or caused that entity's insolvency. *Id.* ¶¶ 96-97, 106-07.

Sandstone thus has pled (i) the persons and entities involved in the transfers (*id.* ¶¶ 96, 98, 106, 108); (ii) that the R2 Entities were first transferees and the Debtor and his wife Alexis Miller were subsequent transferees (*id.*); (iii) the approximate time frame of the transfers, *i.e.*, following NGI's default on the NGI Note and RAD Urban's default on the Guaranty (*id.* ¶¶ 45-48); (iv) that



SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

at least some of the assets involved were "funds," *i.e.*, cash (*id.*); and (v) that the Debtor controlled the entities involved and worked in concert with the other individuals involved. *Id.* ¶¶ 1, 45-48. These allegations state voidable and constructive fraudulent transfer claims, which are not subject to Rule 9(b) in any respect because no element of those claims requires an "alleg[ation of] fraud." *See* Fed. R. Civ. P. 9(b); *see also*, *e.g.*, *Takiguchi v. MRI Int'l, Inc.*, No. 2:13-cv-01183-JAD-VCF, 2015 U.S. Dist. LEXIS 50962, at *6 (D. Nev. Apr. 10, 2015) ("The weight of authority is that Rule 9 applies to claims of actual fraudulent transfer but not to claims of constructive fraudulent transfer." (collecting cases)).

With respect to its actual fraudulent transfer claims, the Amended Complaint sets forth substantial allegations about the Debtor and his controlled entities' schemes to delay, hinder, and defraud creditors. These allegations go well beyond a "general[]" allegation of fraudulent intent, which Rule 9(b) expressly permits. Fed. R. Civ. P. 9(b). Among other things, the Debtor established 63 Holdings and the 63 Trust immediately upon the NGI Note's maturity, then began transferring his assets to them, and ultimately funneled them back to himself. *See* FAC ¶¶ 35-36. He also diverted cash in which NGI had an interest to himself and RAD Urban. *See id.* ¶ 38. He also attempted (unsuccessfully) to divert cash that would have gone to Sandstone via its interest in two other companies to NGI, so as to effectively pay Sandstone with money he had misappropriated from it. *Id.* ¶¶ 39-42. And, of course, he formed the R2 Entities and then transferred significant assets from RAD Urban to the R2 Entities and funds from the R2 Entities to himself and his wife. *Id.* ¶¶ 45-48.

These facts establish a basis for Sandstone's allegations that the challenged voidable or constructively fraudulent transfers from RAD Urban to the R2 Entities, and subsequent transfers to the Debtor, were undertaken with actual intent to hinder, delay, or defraud creditors, and were thus actually fraudulent transfers. They also give the Non-Debtor Defendants sufficient notice to enable them to prepare a responsive pleading—their argument to the contrary is simply a demand for "every conceivable detail incident to the fraud," which Rule 9(b) does not require. *Foisie*,

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496


Case: 26-04037 Doc# 27 Filed: 11/04/26 Entered: 11/04/26 22:53:43 Page 21 of 24

*supra*, 967 F.3d at 50; *see also* § III, *supra* (discussing Rule 9(b) authorities).[5] Accordingly, Sandstone's seventh and eighth claims for relief are sufficient on both a constructive fraudulent or voidable transfer theory and an actual fraudulent transfer theory. *See* Cal. Civ. Code § 3439.04(a) (setting forth elements of UVTA voidable transfer claim); *Kelleher v. Kelleher*, No. 13-cv-05450-MEJ, 2014 U.S. Dist. LEXIS 36330, at *16 (N.D. Cal. Mar. 19, 2014) ("[T]he elements for a fraudulent transfer claim under common law are the same as under [California Civil Code] section 3439."). The Court should therefore reject the Non-Debtor Defendants' challenge to Sandstone's state law fraudulent and voidable transfer claims.

**G. <u>Sandstone Does Not Object to Dismissing Doe Defendants, but Such Dismissal Cannot Cut Off Sandstone's Right to Amend to Include New Defendants Identified in Discovery.</u>**

The Non-Debtor Defendants also take issue with Sandstone's inclusion of Doe defendants in the Amended Complaint. *See* MPA at 18. It is unclear why this matters to them. In any event, where a pleader,

> cannot ascertain the identity of alleged defendants before the filing of a complaint … "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." This exception, however, is for circumstances when a claimant can allege facts regarding events and conduct by a specific unidentified actor whose name the claimant has been unable to ascertain.

*Pearson v. Port of Morrow*, No. 2:24-cv-362-SI, 2026 U.S. Dist. LEXIS 236877, at *8-9 (D. Or. Oct. 16, 2026) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).

Here, Sandstone is not <u>presently</u> aware of a <u>specific</u> unidentified actor whose name it has been unable to ascertain. However, Sandstone alleges that the Debtor and Non-Debtor Defendants all participated in an extensive shell game using multiple controlled entities to defraud it. Sandstone therefore expects that through discovery and further investigation, it may well learn the

[5] Moreover, the principle that a plaintiff need only give adequate notice sufficient to enable preparation of a responsive pleading "applies with special force when—as in this case—the plaintiff's claims concern transactions between the defendant and a third party and many, if not all, of the facts missing from the complaint are in the exclusive possession of those other parties." *Foisie*, 967 F.3d at 51 (citing *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 142 F.3d 1041, 1051 (7th Cir. 1998)).



Case: 26-04037 Doc# 27 Filed: 11/04/26 Entered: 11/04/26 22:53:43 Page 22 of 24

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496

names of additional individuals and entities who engaged in actionable misconduct as part of that scheme. Thus, although Sandstone does not object to dismissing the Doe defendants at this juncture, no Defendant herein should be able to assert that the dismissal of the Doe defendants somehow precludes Sandstone from further amending its allegations to assert claims against individuals and entities whose actionable conduct comes to light during the pendency of this action.

### H. <u>If the Court Is Inclined to Grant the Motion, It Should Grant Leave to Amend.</u>

Should the Court conclude that any portion of the Amended Complaint is insufficiently pled, it should grant leave to amend. "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear … that the complaint could not be saved by amendment." *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (citation omitted). Here, to the extent the Court concludes that more detailed allegations are required regarding any particular subject, Sandstone should be given the opportunity to provide those allegations. Although the Non-Debtor Defendants are sufficiently on notice regarding the basis of Sandstone's claims, Sandstone can plead additional facts about discussions relating to the NGI Note and Guaranty, and/or additional details about transfers by RAD Urban and the roles of the other Non-Debtor Defendants. Similarly, if the Court believes that any information and belief-based allegation is not supported by a sufficiently clear statement of the basis for Sandstone's information and belief, Sandstone can supply that information. Sandstone must have the opportunity to plead those facts before any claim can be dismissed without leave to amend.

///

///

///

///

///

///

///

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496



Case: 26-04037 Doc# 27 Filed: 11/04/26 Entered: 11/04/26 22:53:43 Page 23 of 24

## V. **CONCLUSION**

For the foregoing reasons, the Motion should be denied in its entirety. To the extent the Court grants any aspect of the Motion, Sandstone should be given an opportunity to further amend its pleading.

Dated: November 4, 2026

SHARTSIS FRIESE LLP

By: *\/s/ Ivo Keller*
IVO KELLER

Attorneys for Creditor
SANDSTONE GROUP, LLC

SHARTSIS FRIESE LLP
425 MARKET STREET
ELEVENTH FLOOR
SAN FRANCISCO, CA 94105-2496



Case: 26-04037 Doc# 27 Filed: 11/04/26 Entered: 11/04/26 22:53:43 Page 24 of 24